
```
Entered on Docket
February 27, 2024
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
```


Signed and Filed: February 27, 2024

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No.
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>TRINITAS ADVANTAGED AGRICULTURE PARTNERS IV, LP, *et al.*,[1]<br><br>Debtors. | Case No. 24-50211 (DM) (Lead Case)<br>Chapter 11<br>(Joint Administration Requested)<br><br>**ORDER AUTHORIZING TERM SHEET FOR DEBTOR-IN-POSSESSION FINANCING ON AN INTERIM BASIS**<br><br>Date: February 22, 2024<br>Time: 1:30 p.m. (Pacific Time)<br>Place: **Tele/Videoconference Appearances Only**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

---

[1] The last four digits of Trinitas Advantaged Agriculture Partners IV, LP's tax identification number are 3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/trinitas. The Debtors' service address is 2055 Woodside Road, Suite 195, Redwood City, CA 94061.

Upon the emergency motion (the "<u>Motion</u>")[2] of Trinitas Advantaged Agriculture Partners IV, LP ("<u>TAAP IV</u>") and the following affiliates of TAAP IV: Trinitas Farming, LLC: Dixon East LLC; Turf Ranch LLC; Rasmussen LLC; Johl LLC; Chiala LLC; Hall Ranch LLC; Porterville LLC; Tule River Ranch, LLC; Dinuba Ranch, LLC; Jeffrey Ranch, LLC; Toor Ranch, LLC; Lamb Ranch, LLC; Fry Road, LLC; Adobe Ranch, LLC; Marucci Ranch, LLC; Ratto Ranch, LLC; and Phelps Ranch, LLC, each of whom is a debtor and debtor-in-possession in the above-captioned chapter 11 cases (each individually a "<u>Debtor</u>," and collectively with TAAP IV, the "<u>Debtors</u>"), pursuant to sections 105, 361, 362, 363, 364, 364(d), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rules 2002-1, 4001-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of California (the "<u>Bankruptcy Local Rules</u>"), and this Court's Guidelines for Cash Collateral and Financing Motions and Stipulations (the "<u>Guidelines</u>') requesting, *inter alia*, authorization, on an interim and final basis, to obtain $30 million of secured, superpriority postpetition financing on the terms detailed in the Motion and approval of the immediate borrowing and use of the Initial Draw of $1 million of financing, on the terms described in the Motion, and good cause appearing therefor, as modified by this Order, and for the reasons stated on the record:

**IT IS HEREBY ORDERED THAT:**

1. The Term Sheet, which was attached as Exhibit B to the Motion and is attached to this Order as **Exhibit 1**, is APPROVED during the interim period (the "<u>Interim Period</u>") from the Petition Date through and including the date of a further order of this Court on the Motion following the Supplemental Hearing (defined below), subject in all respects to the below provisions of this Order, including paragraph 2.

2. Notwithstanding paragraph 1 above, the following provisions of the Term Sheet are NOT APPROVED during the Interim Period:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration, as applicable.

a. Allowance or payment of any Commitment Fee relating to any draws made during or with respect to the Interim Period.

b. All provisions contained in the section of the Term Sheet entitled "Adequate Protection for Prepetition Secured Parties," including, without limitation, any waiver of marshalling or rights and remedies under Bankruptcy Code sections 506(c) and 552(b).

3. Notwithstanding paragraph 2 above, this Order does not make any findings as to the propriety or impropriety of the proposed Commitment Fee under the Term Sheet and is without prejudice to any further request of the Debtors to approve the Commitment Fee at the Supplemental Hearing or the Final Hearing on the Motion.

4. The term "Professionals," as used in the Term Sheet, shall include any and all professionals retained by any official committee of unsecured creditors appointed in these Chapter 11 Cases who are entitled to compensation from the Debtors' estates and whose retention is approved by this Court.

5. The Debtors are authorized to draw, pursuant to the Term Sheet, the funds designated in the Budget for "Legal and Professional Fees," and to set aside such funds in a segregated account for purposes of the Carve-Out, as provided under the Term Sheet. For the avoidance of doubt, the Debtors are not authorized to pay any Professionals during the Interim Period.

6. The requirements for immediate entry of this Interim Order pursuant to Bankruptcy Rule 6003(b) have been satisfied.

7. The requirements of Bankruptcy Rule 6004(a) are waived.

8. Notwithstanding the provisions of Bankruptcy Rules 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all steps necessary or appropriate to carry out this Interim Order.

10. A supplemental hearing (the "Supplemental Hearing") to consider the relief requested in the Motion shall be held on **February 29, 2024**, at **1:30 p.m**. (Prevailing Pacific

Time), and any objections or responses to the Motion may be presented at the Supplemental Hearing.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

<center>**END OF ORDER**</center>

APPROVED AS TO FORM AND CONTENT:

FENNEMORE DOWLING AARON


By: */s/ Jackson Waste*
Jackson Waste
*Attorneys for Rabo AgriFinance LLC*


TRACY HOPE DAVIS
UNITED STATES TRUSTEE


By: */s/ Trevor Fehr*
Trevor Fehr
*Trial Attorney for Tracy Hope Davis*
*United States Trustee for Region 17*

Keller Benvenutti Kim LLP
425 Market Street, 26th Floor
San Francisco, California 94105

# EXHIBIT 1

**Term Sheet**

# Term Sheet for Debtor-in-Possession Financing

*The following is a non-binding summary of the proposed terms and conditions upon which the Lenders identified below (the "**DIP Lenders**") would consider providing a debtor-in-possession financing loan (the "**DIP Loan**") to the Borrowers/Debtors identified below (the "**Debtors**"), in connection with the filing of a chapter 11 petition for each of the Debtors (collectively, the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), pursuant to Bankruptcy Code section 364 in connection with the Bankruptcy Case (the "**Financing Transaction**").*

*This term sheet (the "**Term Sheet**") is non-binding and is for discussion purposes only. This Term Sheet does not purport to summarize all of the terms and conditions that would be contained in definitive documentation for the Financing Transaction. This Term Sheet is confidential and should not be disclosed to any third party other than the parties' respective attorneys, accountants, and financial advisors.*

| DIP Lenders | Rabo AgriFinance LLC, as Administrative Agent and as a DIP Lender, and such other entities, if any, as may later join as DIP Lenders |
|---|---|
| DIP Agent | Rabo AgriFinance LLC, as Administrative Agent (the "**DIP Agent**") |
| Borrowers/Debtors | Adobe Ranch, LLC<br>Chiala LLC<br>Dinuba Ranch, LLC<br>Dixon East LLC<br>Fry Road, LLC<br>Hall Ranch LLC<br>Jeffrey Ranch, LLC<br>Johl LLC<br>Lamb Ranch, LLC<br>Marcucci Ranch, LLC<br>Phelps Ranch, LLC<br>Porterville LLC<br>Rasmussen LLC<br>Ratto Ranch, LLC<br>Toor Ranch, LLC<br>Trinitas Advantaged Agriculture Partners IV, LP<br>Trinitas Farming, LLC<br>Tule River Ranch, LLC<br>Turf Ranch LLC |

| | Terms of DIP Financing |
|---|---|
| DIP Loan | An up to Thirty Million Dollars ($30,000,000) senior secured credit facility (with lien priorities discussed below) in the form of a delayed draw term loan facility (the "**DIP Loan**"; the facility providing the DIP Loan, the "**DIP Facility**"; and the credit agreement governing the DIP Facility, the "**DIP Credit Agreement**"), which, following the entry of an interim order approving the DIP Facility ("the **Interim DIP Order**"), would be available to be drawn in multiple draws, in number no more than to be mutually agreed, for operating and related business expenses; to be made available in amounts and at the times specified in conformance with the Approved Budget (as defined below); and subject to the conditions set forth in the section entitled "Conditions Precedent to Each DIP Loan Draw" below; provided that no more than Six Million Five Hundred Thousand Dollars ($6,500,000) in the aggregate (the "**Interim DIP Order Availability Cap Amount**") shall be available to be drawn under the DIP Facility until the entry of a final order approving the DIP Facility, which order shall be substantially in the same form as the Interim DIP Order, with such modifications as are necessary to convert the Interim DIP Order into a final order; to grant the DIP Lenders protections unavailable on an interim basis; and to include such other modifications as are satisfactory to the DIP Lenders and the Debtors (the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**"). Any amounts drawn under the DIP Facility will permanently reduce the committed amount hereunder, and any amount repaid may not be re-borrowed. The draws under the DIP Facility shall be denominated in US Dollars.<br><br>Notwithstanding anything to the contrary herein, all commitments on the DIP Facility shall terminate and be of no further force or effect upon the Termination Date (as defined below), and no further amounts under the DIP Facility will be available to be drawn under the DIP Facility.<br><br>DIP Lender Expenses. The Debtors shall reimburse DIP Lender all of its reasonable and necessary fees and expenses, including, without limitation, attorneys' and consultants' fees, costs, and expenses incurred (i) in connection with the negotiation and preparation of this Term Sheet and the agreements contemplated herein, and (ii) in connection with the Bankruptcy Case ("**DIP Lender Expenses**"). The DIP Lender Expenses shall be added to the principal amount of the DIP Loan, shall be treated as disbursements and reduce remaining availability under the DIP Facility, and shall be part of the DIP Obligations[1] until paid in full, whether prior to or at maturity. |

---

[1] "**DIP Obligations**" means the due and punctual payment by the Debtors of (i) the unpaid principal amount of and interest on the DIP Loan (including interest accruing after the maturity of the DIP Loan), as and when due, whether at maturity, by acceleration, or otherwise, and (ii) all other monetary obligations of the Debtors to the DIP Agent and the DIP Lenders, including advances, debts, liabilities, obligations, fees, costs, expenses, and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, or fixed or contingent. under the DIP Loan documents and the DIP Orders (including the costs and expenses of the advisors to the DIP Agent and the DIP Lenders).

| | |
|---|---|
| | Maturity Date: The term of the DIP Loan commences upon entry of the Interim DIP Order through the earliest to occur of (a) April 30, 2025, (b) an Event of Default as defined in the DIP Loan documents, (c) ten (10) days after the occurrence of the effective date of any plan of reorganization (a "**Plan**"), (d) the failure of the Final DIP Order to be entered within thirty (30) days after the filing of the Debtors' motion for approval of the DIP Facility (the "**DIP Motion**"), unless otherwise agreed in writing by the DIP Lenders; and (e) the closing of the sale(s) of substantially all of the Debtors' assets (the earliest of the foregoing to occur is the "**Termination Date**"). <br><br> Interim DIP Order: A form of Interim DIP Order acceptable to the DIP Lenders and the Debtors shall be attached to the DIP Credit Agreement. <br><br> Broker(s): The Debtors shall retain one or more qualified brokers acceptable to the DIP Lenders in their sole discretion (the "**Broker(s)**"). The Broker(s) shall be employed with the approval of the Bankruptcy Court to sell the assets of the Debtors (the "**Sale Process**"). Among other reporting covenants, the DIP Credit Agreement will require the Debtors to comply with the following covenants in connection with the Sale Process: <br><br> (a) delivery by the Debtors or their advisors to the DIP Lenders of a confidential weekly report summarizing potential bidders, data site access, indications of interest received, letters of intent received, and such other reasonable and appropriate updates as the DIP Agent may request; <br><br> (b) within one (1) Business Day (as defined below) of receipt, the Debtors will provide to the DIP Lenders or their consultants copies of all indications of interest, letters of intent, or draft purchase agreements received from a third-party bidder; <br><br> (c) the Debtors and their advisors will hold a weekly call with the DIP Agent and/or the DIP Lenders to provide an update on the Sale Process and related topics; and <br><br> (d) weekly provision of an Agricultural Reporting Status Update in a form acceptable to the DIP Lenders, detailing all major cultivation activities, separated by ranch. |
| Interest and Fees: | Interest Rate: SOFR[2] + eight percent (8.00%), payable in arrears. <br><br> Interest Only Payment: The Debtors will make monthly interest payments to the Lender until the Maturity Date, which payments shall be reflected in each Approved Budget (as that term is defined below.) <br><br> Default Rate: Two percent (2.00%) per annum in addition to the then-current interest rate, payable upon demand. <br><br> Commitment Fee: On the date of each borrowing under the DIP Loan, a fee in the amount of one and one-half percent (1.5%) of the amount of such DIP |

---

[2] One-Month Term SOFR, adjusted at the beginning of every month.

| | |
|---|---|
| | Loan draw borrowed on such date, which fee shall be payable in-kind by being capitalized and deemed to have been disbursed so as to reduce remaining availability under the DIP Facility. |
| Use of Proceeds: | Subject to the satisfaction of the other terms and conditions of the DIP Facility, and consistent with the Approved Budget and subject to Permitted Variances, the proceeds of the DIP Facility may be used (a) for working capital and general corporate purposes during the Bankruptcy Case (including payment of fees and expenses in connection with the transactions contemplated hereby, and working capital), and (b) for (i) the funding of a segregated account intended for the payment of the fees and expenses of professionals retained in the Bankruptcy Case (hereafter, "**Professionals**"), and (ii) interest, payments, and expenses associated with the entry into the DIP Credit Agreement and the other documents executed in connection therewith, including reasonable and documented (in summary form) fees and expenses of professionals retained by the DIP Lenders.<br><br>Unless explicitly provided for in and otherwise in accordance with the Approved Budget, such proceeds will not be permitted to be used for (1) repayment of existing pre-petition debt, except as permitted by order of the Bankruptcy Court (and including, among other things, adequate protection payments on the prepetition loans held by the DIP Lenders); (2) payments or transfers to any affiliates; or (3) expenses relating to production of the 2025 crop. |
| Segregated Accounts: | Proceeds of the DIP Facility will be deposited into a segregated escrow account (the "**Segregated Account**") with the DIP Agent, which will be subject to the liens and security interests securing the DIP Facility. The DIP Lenders will fund their respective shares of DIP Loan draws into the Segregated Account, the conditions to each of which are set forth herein and shall be more fully set forth in the DIP Credit Agreement. Funds in the Segregated Account will become available to the Debtors via weekly withdrawals, upon submission of a request for withdrawal specifying the use of proceeds, as provided in the DIP Credit Agreement and subject to the Approved Budget and satisfaction of applicable conditions precedent. It is anticipated that advances under the DIP Facility for deposit into the Segregated Account will coincide with the beginning of each six-week Budgetary Compliance Period.<br><br>If at any time one or more Acceptable Sales (as that term is defined below) have closed and, following application of the proceeds thereof to all amounts owing under the DIP Credit Agreement, the DIP Loan has been repaid in full, then remaining proceeds shall be deposited into a segregated escrow account (the "**Segregated Post-Sale Remainder Account**"). Upon deposit of funds into the Segregated Post-Sale Remainder Account, Debtors shall provide to DIP Lenders for approval a budget (the "**Estimated Remainder Budget**"), in a form reasonably acceptable to DIP Lenders, detailing the Debtors' projected operating cash requirements through and including the remainder of the Bankruptcy Case. An amount equal to the total projected operating costs shown in the Estimated Remainder Budget (that amount, the "**Estimated Remainder Cost**") shall be left in the |

| | |
|---|---|
| | Segregated Post-Sale Remainder Account to be disbursed in accordance with the procedure for DIP Loan disbursements set forth herein, subject to the conditions precedent set forth herein. Any amount in the Segregated Post-Sale Remainder Account beyond the Estimated Remainder Cost shall be applied to the payment of the prepetition obligations owed to DIP Lenders. |
| Milestones | Certain milestones (the "***Milestones***") shall include, without limitation, the following (subject to extension by the DIP Lenders in their sole discretion):<br>■ by the petition date, the Debtors shall have identified the Broker(s);<br>■ no later than thirty (30) days after agreement of the parties to this DIP Term Sheet and the parties' execution of all related documentation, the Bankruptcy Court shall enter the Interim DIP Order;<br>■ no later than sixty (60) days after the parties' execution of all documents evidencing, securing, or supporting the repayment of the DIP Loan (the "***DIP Documents***"), the Bankruptcy Court shall enter the Final DIP Order;<br>■ no later than thirty (30) days after the petition date, the Bankruptcy Court shall enter an order approving employment of the Broker(s);<br>■ no later than March 30, 2024, the Debtors shall file a motion seeking approval of bidding procedures (the "***Bidding Procedures***"), in form and substance reasonably acceptable to the DIP Lenders and consistent with this DIP Term Sheet;<br>■ no later than March 30, 2024, the Debtors shall commence the Sale Process, including the issuance of preliminary offering materials;<br>■ no later than April 30, 2024, the Bankruptcy Court shall have entered the order approving the Bidding Procedures (the "***Bidding Procedures Order***"), in form and substance acceptable to the DIP Lenders;<br>■ no later than May 31, 2024, an auction shall have been conducted, if necessary, for such portion of the Debtors' non-cash consolidated assets as has been agreed to between the Debtors and the Required Lenders (as defined in the DIP Credit Agreement) pursuant to section 363 of the Bankruptcy Code and in accordance with the Bidding Procedures Order (the "***Initial Auction***," and such Milestone, the "***Initial Auction Milestone***");<br>■ no later than June 14, 2024, the Bankruptcy Court shall hold a hearing (the "***Initial Sale Hearing***") regarding approval of the sale pursuant to section 363 of the Bankruptcy Code of all or a portion of the Debtors' non-cash assets (the "***Assets***");<br>■ no later than three (3) Business Days after the Initial Sale Hearing, the Bankruptcy Court shall have entered an order approving the sale of the Assets that either (y) pays the entirety of the DIP Loan and the prepetition debts of the DIP Lenders in full, in cash or (z) is acceptable to the DIP Lenders in their sole discretion (an "***Acceptable Sale***"), to a successful bidder in accordance with the Bidding Procedures Order;<br>■ additional auctions shall occur by December 31, 2024, and March 31, 2025, and each auction shall follow the timeframes and process set forth in the DIP Documents; and |

| | |
|---|---|
| | <ul><li>no later than April 30, 2025, one or more Acceptable Sales shall have closed that either pays the entire pre-petition secured indebtedness and DIP Loan in full, or is otherwise acceptable to the DIP Lenders; *provided* that if regulatory approvals associated with an Acceptable Sale remain pending as of such date, such date shall be automatically extended to the date that is the third (3rd) Business Day (as defined in the DIP Documents) following receipt of all necessary regulatory approvals.</li><li>Debtors shall ensure that the first Acceptable Sale, to occur on the schedule set forth herein, shall provide for the sale of at least twenty percent (20%), by acreage, of the Debtors' total real property holdings. A second Acceptable Sale, occurring on or about December 31, 2024, shall provide for the sale of at least fifty percent (50%) of the Debtors' total real property holdings, by acreage, remaining after the first Acceptable Sale. The final Acceptable Sales, to close on or before April 30, 2025, with all requisite Bankruptcy Court approvals completed by that time, shall provide for the sale of the remainder of the Debtors' real property holdings.</li><li>On or before December 31, 2024, Debtors shall provide documentation reasonably acceptable to DIP Lenders, such as a signed Purchase Agreement from a qualified buyer, to demonstrate to the DIP Lenders' reasonable satisfaction that the final Acceptable Sale will be consummated on or before April 30, 2025, as set forth herein.</li></ul> |
| Prepayments | The DIP Documents will contain mandatory prepayments that are customary for debtor-in-possession financing of this type, including, without limitation, one hundred percent (100%) of the net cash proceeds from (i) non-ordinary course asset sales, (ii) insurance/condemnation events and other extraordinary receipts, and (iii) any incurrence of indebtedness not otherwise permitted under the DIP Documents.<br>The Debtors may, at any time prior to maturity, voluntarily repay the DIP Loan in full or in part; *provided*, that any such prepayment shall be made with all accrued interest, fees, and other amounts outstanding in respect of the DIP Loan. Besides prepaying the DIP Loan, the Debtors may choose to prepay the DIP Lenders' prepetition debt in full, whether through refinancing or through raising new equity or to reinstate the balance of the pre-petition debt. The Debtors shall have the right, at their discretion, to effectuate any of the foregoing by way of a motion or a Plan. |
| DIP Lenders' Collateral, Liens & Priority | Subject only to the Carve-Out (defined below), the DIP Obligations shall:<ul><li>pursuant to section 364f(1) of the Bankruptcy Code, be entitled to superpriority administrative expense status (the "***DIP Superpriority Claims***"), with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 of the Bankruptcy Code;</li><li>pursuant to section 364(c)(2) of the Bankruptcy Code, have a first priority lien on and security interest in all property of the Debtors (other than the Excluded Property defined below) that is not subject to a valid</li></ul> |

| | |
|---|---|
| | and perfected lien existing on the Petition Date (all such property, exclusive of the Excluded Property, the "***Collateral***");<br>■ pursuant to section 364(c)(3) of the Bankruptcy Code, have a lien on and security interest in all Collateral that is subject to a valid, perfected, and unavoidable lien in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date, as permitted by section 546(b) of the Bankruptcy Code ("***Permitted Third Party Liens***"); and<br>■ pursuant to section 364(d)(1) of the Bankruptcy Code, have a first priority, senior priming lien on and security interest in all Collateral, subject and junior to Permitted Third Party Liens. (All of the above is collectively referred to as the "***DIP Lenders' Collateral, Liens & Priority***.")<br><br>Notwithstanding the foregoing, no security interest or lien securing the DIP Obligations shall attach to the avoidance actions under chapter 5 of the Bankruptcy Code ("***Excluded Property***") nor shall proceeds of the Excluded Property be applied to the DIP Lenders' priority claims. |
| Adequate Protection for Prepetition Secured Parties | Subject to the Carve-Out, the DIP Lenders' Collateral, Liens & Priority, and limitations on recourse to Excluded Property, as and for adequate protection the prepetition secured lenders shall receive:<br>■ Adequate protection liens on all Collateral;<br>■ Adequate protection 507(b) superpriority claim;<br>■ Waiver of marshalling, section 506(c), and section 552(b) equity of the cases exception (as of petition date);<br>■ Interest on prepetition obligations in favor of DIP Lenders shall accrue at the contractual default rate;<br>■ All required written financial reporting and other periodic reporting that is provided to the DIP Agent and the DIP Lenders; and<br>■ other customary legal protections, including benefit of the Milestones, subject to the terms hereof. |
| Carve-Out | The DIP Lenders' Collateral, Liens & Priority, and the prepetition secured parties' adequate protection liens and claims, shall be subject and subordinate to payment of (a) the Professional fees incurred, but not in excess of amounts therefor provided in the applicable Approved Budget, prior to the earliest of (i) an Event of Default (as defined in the DIP Credit Agreement), (ii) the termination of the DIP Facility, or (iii) the maturity date of the DIP Facility (the earliest, the "***Carve-Out Date***"); (b) the sum of One Hundred Fifty Thousand Dollars ($150,000) for payment of Professionals' costs and expenses incurred after the Carve-Out Date; (c) fees and expenses of a chapter 7 trustee in an amount not to exceed Seventy-five Thousand Dollars ($75,000); and (d) statutory fees of the United States Trustee (collectively, the *"**Carve-Out**"*). |

| | |
|---|---|
| Budgets | Budget: The Debtors shall prepare a budget consisting of a 13-week cash flow forecast, setting forth, among other things, the Debtors' cash, revenue, cash flow, and net operating cash flow, trade payables, ordinary course expenses, total expenses, capital expenditures, vendor disbursements, working capital, and fees and expenses of the DIP Facility and the Bankruptcy Case during such 13-week period that Debtors are authorized to use proceeds of the DIP Loan ("**Approved Budget**"). The Approved Budget shall be revised on a six-week cycle (i.e., every six weeks a new 13-week cash flow forecast will be delivered, and variances will be calculated based on that six-week period) ("**Budgetary Compliance Period**"). |
| Conditions Precedent for Each DIP Loan Draw | On the funding date of each DIP Loan draw, including the initial DIP Loan disbursement and withdrawals from the Segregated Account, (i) there shall exist no Default or Event of Default under and defined in the DIP Credit Agreement and the other DIP Documents, (ii) the representations and warranties of the Debtors therein shall be true and correct in all material respects immediately prior to, and after giving effect to, such funding, (iii) the making of such DIP Loan draw shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently, (iv) the Debtors shall be in compliance with the Approved Budget (subject to Permitted Variances (as defined below)) in all respects, (v) the Interim DIP Order shall be in full force and effect and shall not have been vacated, reversed, modified, amended, or stayed in any respect without the consent of the DIP Lenders and the Debtors unless superseded by the Final DIP Order, (vi) the Liquidity (to be defined in the DIP Credit Agreement) of the Debtors prior to giving effect to such funding shall not exceed One Million Five Hundred Thousand Dollars ($1,500,000), and (vii) in the event the Debtors are borrowing amounts in excess of the Interim DIP Order Availability Cap Amount, the Final DIP Order shall be in full force and effect and shall not have been vacated, reversed, modified, amended, or stayed in any respect without the consent of the DIP Lenders and the Debtors. |
| Representations & Warranties | The DIP Documents shall contain representations and warranties usual and customary for facilities of this type, to be applicable to the Debtors and, in each case, with customary exceptions, qualifications, materiality modifiers, and baskets to be agreed upon in the DIP Documents, subject to the approval of the DIP Lenders in their sole discretion, which shall include, but not be limited to, the following: (i) organization and powers, (ii) authorization and enforceability, (iii) no conflicts and no default, (iv) no material adverse effect, (v) properties, (vi) intellectual property, (vii) equity interests and subsidiaries, (viii) litigation, (ix) material agreements, (x) federal reserve regulations, (xi) investment company act, (xii) use of proceeds, (xiii) taxes, (xiv) no material misstatements, (xv) labor matters, (xvi) agreements with affiliates, (xvii) employee benefit plans, (xviii) environmental matters, (xix) insurance, (xx) bank accounts, (xxi) anti-terrorism laws and foreign corrupt practices act, (xxii) the Bankruptcy Case and the secured superpriority obligations, and (xxiii) commercial activity and absence of immunity; *provided*, *however*, that the foregoing shall take into account the pending nature of the Bankruptcy Case. |

| | |
|---|---|
| Affirmative Covenants | The DIP Documents shall contain affirmative covenants usual and customary for facilities of this type, to be applicable to the Debtors and, in each case, with customary exceptions, qualifications, and baskets to be agreed upon in the DIP Documents, subject to the approval of the DIP Lenders in their reasonable discretion, which shall include, but not be limited to, the following: (i) financial statements and reports (including, without limitation, the reports relating to the Sale Process, (ii) upon request by Required Lenders, engagement by Debtors of a chief restructuring officer or other consultant to oversee the Debtors' compliance, budgeting, and financial reporting related to the DIP Facility (the "**Required Consultant**"), (iii) litigation and other notices, (iv) maintenance of existence, businesses, and properties, (v) maintenance of insurance, (vi) payment of obligations and taxes, (vii) employee benefits, (viii) maintaining records and access to properties and inspections, (ix) use of proceeds, (x) compliance with environmental laws and environmental reports, (xi) additional collateral, (xii) security interests and further assurances, (xiii) maintenance of corporate separateness, (xiv) priority of liens, (xv) compliance with the Milestones, subject to the economic adjustment provided herein, (xvi) bankruptcy-related matters, (xvii) budget compliance, (xviii) lender calls, (xix) maintenance of cash collateral system (as may be modified), and (xx) material agreements; *provided*, *however*, that the foregoing shall take into account the pending nature of the Bankruptcy Case. |
| Negative Covenants | The DIP Documents shall contain negative covenants usual and customary for facilities of this type, to be applicable to the Debtors and, in each case, with customary exceptions, qualifications, and baskets to be agreed upon in the DIP Documents, subject to the approval of the DIP Lenders in their reasonable discretion, which shall include, but not be limited to, the following: (i) limitations on indebtedness and incurrence of additional senior or *pari passu* claims, (ii) limitations on liens, (iii) limitations on fundamental changes, (iv) limitations on dispositions of property, (v) limitations on restricted payments, (vi) limitations on investments, (vii) limitations on prepayments and modifications of certain debt instruments or organizational documents, (viii) prohibition against termination of any Required Consultant, (ix) limitations on changes in fiscal periods and accounting changes, (x) limitations on negative pledge clauses, (xi) limitations on clauses restricting subsidiary distributions, (xii) limitations on lines of business, (xiii) limitations on material agreements, (xiv) limitations on capital expenditures, (xv) limitations on sale and leaseback transactions, (xvi) limitations on locations of collateral, (xvii) limitations on acquisitions, (xviii) limitations on issuance of capital stock, (xix) anti-terrorism and anti-money laundering and embargoed persons, (xx) limitations on hedging and speculative transactions, (xxi) limitations on changing auditors, (xxii) limitations on new subsidiaries, (xxiii) limitations on changes of name or location, (xxiv) certain bankruptcy matters, and (xxv) limitations on ability to change the terms of ongoing ordinary course business relationships with third parties; *provided*, *however*, that the foregoing shall take into account the pending nature of the Bankruptcy Case. |

| | |
|---|---|
| Financial Covenants | The Debtors shall maintain a cumulative ledger of line items appearing in the Approved Budget (the "***Performance Ledger***"). Variance covenants comparing the Performance Ledger to the Approved Budget will be tested weekly, calculated on a cumulative basis from the beginning date of the six-week Budgetary Compliance Period coinciding with the first six weeks included in such Approved Budget ("***Cumulative Basis***"), requiring (i) the unfavorable variance (as compared to the Approved Budget) of the net of the aggregate receipts and disbursements of the Debtors not to exceed ten percent (10%) (on a Cumulative Basis), and (ii) the unfavorable variance (as compared to the Approved Budget) of the aggregate operating disbursements (excluding professional fees and expenses and adequate protection claims) made by the Debtors not to exceed ten percent (10%) (on a Cumulative Basis).<br><br>As used in this DIP Term Sheet, "***Permitted Variances***" means (i) all favorable variances, and (ii) any unfavorable variance permitted in the budget variance covenant. |
| Events of Defaults and Remedies | Customary events of default ("***Events of Default***"), consistent with the terms hereof, as may be modified for the particulars of the Bankruptcy Case, including any Events of Default for the failure to adhere to reporting requirements contained in the DIP Credit Agreement, defaults under covenants (including, without limitation, any variance beyond the Permitted Variances under the then-applicable Approved Budget), resignation or termination of any Required Consultant, appointment of a bankruptcy trustee, examiner, or receiver, invalidity of collateral documents, dismissal or conversion of the Bankruptcy Case, certain other bankruptcy matters, failure to comply materially with the DIP Orders, entry of an order amending, modifying, staying, revoking, or reversing the DIP Orders without the consent of the DIP Lenders, termination of the Interim DIP Order or the Final DIP Order, as applicable, allowance of a claim under section 506(c) of the Bankruptcy Code, filing of a Plan or disclosure statement other than (1) a Plan that is approved by the DIP Lenders, or (2) one that provides for repayment in cash on the effective date of the entirety of the DIP Loan and repayment in cash or reinstatement of the balance of the remaining pre-petition secured debts, payment of prepetition claims other than as permitted by the Bankruptcy Court and included in the Approved Budget or the DIP Documents, entry of an order granting stay relief in respect of any Collateral, granting any superpriority claim that is *pari passu* with or senior to those of the DIP Lenders, and pursuit of a sale that is not an Acceptable Sale, or failure to promptly obtain Bankruptcy Court approval of an Acceptable Sale.<br><br>Upon the occurrence of an Event of Default, the DIP Agent may, and at the direction of the applicable DIP Lenders shall, exercise all rights and remedies provided for in the DIP Documents, and may declare (i) the termination, reduction, or restriction of any further commitment to the extent any such commitment remains, (ii) all obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, and (iii) the termination of the commitments under the DIP Loan as to any future |

|  | liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the liabilities or obligations of the Debtors; *provided*, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Agent shall be required to provide five (5) days' written notice to the Debtors, their bankruptcy counsel, the prepetition trustee, the United States Trustee for the Northern District of California, and any Official Committee of Unsecured Creditors and its counsel. |
|---|---|
| Other Provisions: | The DIP Documents shall include other customary provisions including, without limitation, representations and warranties, affirmative and negative covenants, and provisions relating to indemnification, confidentiality, and assignments/participations. The Debtors shall promptly notify the DIP Lenders of either (i) any material change in volume of farm products being delivered to a processor, or (ii) any change in processor(s) utilized. |

**Court Service List**

*All ECF Participants*