**Exhibit B**

**Redline – Proposed Interim Order**

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**KELLER BENVENUTTI KIM LLP**

1

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal Bar. No. 194116)

2
(tkeller@kbkllp.com)
JANE KIM (Cal. Bar No. 298192)

3
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)

4
(jrichards@kbkllp.com)
425 Market Street, 26th Floor

5
San Francisco, California 94105
Telephone: (415) 496-6723

6
Facsimile: (650) 636-9251

7
*Proposed Attorneys for Debtors and*
*Debtors in Possession*

8

**IN THE UNITED STATES BANKRUPTCY COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN ~~JOSE~~FRANCISCO DIVISION**

| | |
|---|---|
| 11 In re: | Case No. 24-~~50210 ( )~~50211 DM) (Lead Case) |
| 12 ————————————————TRINITAS | Chapter 11 |
| 13 ~~FARMING, LLC,~~ADVANTAGED AGRICULTURE PARTNERS IV, LP *et al.*,1 | (Joint Administration Requested) |
| 14 | **[PROPOSED] INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED, SUPERPRIORITY, POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SETTING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF** |
| 15 ——— | |
| 16 ——Debtors. | |
| 17 | |
| 18 | |
| 19 | Date: ~~February 21~~March 7, 2024 |
| 20 | Time: ~~10:00~~11:30 a.m. (Pacific Time) |
| 21 | Place: **Tele/Videoconference Appearances Only** |
| 22 | United States Bankruptcy Court |
| 23 | ~~280 South First Street~~ ~~Courtroom 17, 16th Floor~~ |

24
1 ———The last four digits of Trinitas ~~Farming, LLC's~~Advantaged Agriculture Partners, LP's tax

25
identification number are ~~8883~~3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete
list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete

26
list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at
https://www.donlinrecano.com/trinitas. The Debtors' service address is ~~1414 East F Street A-102, Oakdale,~~

27
~~California 95361.~~
2055 Woodside Road, Suite 195, Redwood City, CA 94061.

28

43161552

San ~~Jose, California 95113-3099~~Francisco, CA 94102

Upon the ~~emergency~~ motion (the "Motion")[2] of Trinitas Farming, LLC, and the following affiliates: Trinitas Advantaged Agriculture Partners IV, LP; Dixon East LLC; Turf Ranch LLC; Rasmussen LLC; Johl LLC; Chiala LLC; Hall Ranch LLC; Porterville LLC; Tule River Ranch, LLC; Dinuba Ranch, LLC; Jeffrey Ranch, LLC; Toor Ranch, LLC; Lamb Ranch, LLC; Fry Road, LLC; Adobe Ranch, LLC; Marucci Ranch, LLC; Ratto Ranch, LLC; and Phelps Ranch, LLC, each of whom is a debtor and debtor-in-possession in the above-captioned chapter 11 cases (each individually a "Debtor" and collectively the "Debtors") pursuant to sections 105, 361, 362, 363, 364, 364(d), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1, 4001-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Local Rules"), and this Court's Guidelines for Cash Collateral and Financing Motions and Stipulations (the "Guidelines') requesting, among other things:

(i)       authorization for the Debtors to obtain postpetition financing pursuant to the DIP Facility (as defined below), consisting of a senior secured superpriority delayed draw term loan facility (the "DIP Facility"), on the terms and conditions substantially in the form filed in ~~Term Sheet attached as Exhibit B to the Motion~~a notice filed and served by the Debtors at Docket No. 32 (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, ~~the "Term Sheet,"~~including pursuant to this Interim Order, the Final Order or any other order of the Bankruptcy Court,  the "DIP Credit Agreement"), together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, including this Interim Order and the DIP Credit Agreement ~~(once finalized by DIP Lenders and Debtors and approved by this Court)~~ and the Final Order (~~each~~ as

---

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion~~ or~~, the First Day Declaration~~,~~ or the DIP Credit Agreement (defined below), as applicable.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

defined below), collectively, the "DIP Documents"), by and among the Debtors, Rabo AgriFinance, LLC. ("Rabo Ag"), as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and as a lender along with such other entities as may join (individually, a "DIP Lender" and collectively the "DIP Lenders," and, together with the DIP Agent, the "DIP Lenders"), consisting of a new money delayed draw term loan facility in an aggregate principal amount of up to $30,000,000 (the "DIP Facility," the commitments under the DIP Facility, the "DIP Commitments," and the loans made under the New Money DIP Facility, the "DIP Loans"), pursuant to which, (1) upon entry of this order (this "Interim Order") and satisfaction or waiver of the other conditions set forth herein and in the ~~Term Sheet,~~ DIP Credit Agreement, the Debtors shall be entitled to draw on the DIP Commitments, ~~in a single advance~~as provided in the DIP Credit Agreement, the aggregate total of $~~1,000~~6,500,000 (the "Initial Draw") as set forth in the ~~Approved Budget~~InitialBudget (as defined below), which ~~advance~~advances shall be subject to the terms and conditions of the DIP Credit Agreement~~, which it is contemplated will be approved at a further interim hearing on the Motion to be held on or about February 28, 2024, when the Debtors will seek entry of a further Second Interim Order approving further advances of up to $5,500,000 ( the "Second Interim Order") to be made in accordance with the DIP Credit Agreement~~ and the other DIP Documents; and (2) following entry of the Final Order and satisfaction or waiver of the other conditions set forth therein and in the DIP Documents, make further advances for a total of up to $30 million, all in accordance with the DIP Documents, in the form of weekly draws of the DIP Commitments as set forth in the Approved Budget (as defined below);

(ii)     authorization for the Debtors to execute, deliver, and enter into the DIP Documents ~~(including the Term Sheet but excluding the DIP Credit Agreement, for which the Debtors will seek approval in the Second Interim Order),~~ . (and to perform all of the Debtors' obligations thereunder, and such other and further acts as may be required in connection with the DIP Documents;

(iii)     authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Lenders pursuant to and in accordance with the DIP Documents,

including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, backstop fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the respective DIP Lenders (including the reasonable fees, expenses and other charges of each of the DIP Lenders' attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting obligations of the Debtors of any kind under the DIP Documents (such obligations, the "<u>DIP Obligations</u>");

(iv)     authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility (collectively, the "<u>DIP Loan Proceeds</u>") as expressly provided in the DIP Documents and solely in accordance with this Interim Order and the Approved Budget (as defined below), subject to permitted variances and other exclusions set forth in the DIP Documents and this Interim Order, to: (a) pay costs, fees, and expenses related to the above-referenced cases (the "<u>Chapter 11 Cases</u>"), including professional fees, and in connection with the DIP Facility, including, without limitation, payment of interest, fees, and expenses owed to the DIP Lenders and the DIP Agent; (b) grant the adequate protections of the Prepetition Obligations (as defined below) as provided for in this Interim Order; and (c) provide financing for working capital and general corporate purposes (including capital expenditures) of the Debtors;

(v)     the grant and approval of superpriority administrative expense claim status in these Chapter 11 Cases, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Agent, for the benefit of itself and the other DIP Lenders, in respect of all DIP Obligations, subject only to the Carve-Out (as defined below);

(vi)     authorization to grant the DIP Lenders valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), and any Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be subject only to Permitted Third Party Liens (as defined below) and the Carve-Out;

(vii)    authorization for the Debtors to use, among other things, solely in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Documents and this Interim Order) and the limitations provided herein and in the DIP Documents, any Cash Collateral in which any of the Prepetition Lenders (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of their respective interests in the Prepetition Collateral ("Diminution in Value"), including, without limitation, as a result of (a) the incurrence of the DIP Obligations, (b) the Debtors' use of Cash Collateral, (c) the subordination of the Prepetition Obligations to the Carve-Out, (d) any other diminution in value of the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (e) the priming of the Prepetition Liens (as defined below) by the DIP Liens on the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(viii)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Documents to the extent hereinafter set forth;

(ix)    subject to entry of the Final Order granting such relief, a waiver of (a) any rights of the Debtors' and their Estates' (as defined below) ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and (c) any rights of the Debtors under the equitable doctrine of marshaling or any other similar doctrine with respect to any DIP Collateral or Prepetition Collateral;

(x)(ix)    the Court's waiver of any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) and providing for immediate effectiveness of this Interim Order;

(xi)(x)    the scheduling of (a) a further interim hearing (the "Supplemental Interim Hearing") on or about February 28, 2024, to consider and approve further interim relief, and (b)the scheduling of a final hearing on the Motion (the "Final Hearing") to consider entry of a final order

granting the relief requested in the Motion on a final basis (the "Final Order"), and approving the form of notice with respect to the Final Hearing; and

(xii)(xi)      granting the Debtors such other and further relief as is just and proper, to the extent such other and further relief is not inconsistent with the express terms of this Order.

The initial hearing on the Motion having been held by the Court on February 21, 2024 (the "Interim Hearing"), and upon The Court held an emergency hearing on the Motion on February 21, 2024, and entered an order at Docket No. 13 (the "First Interim Order"), approving an Initial Draw of $1 million by the Debtors, subject to the terms of the First Interim Order and pending the conclusion of a further hearing duly noticed and held on February 29, 2024, at 1:30 p.m. (the "Second Emergency Hearing"). After the Second Emergency Hearing, the Court entered an order at Docket No. 31 (the "Second Interim Order"), approving a Second Draw of $2,500,000 subject to the terms of the Second Interim Order and pending the conclusion of a further hearing duly noticed and held on March 7, 2024, at 11:30 a.m. (the "Interim Hearing"), to consider approval of the Credit Agreement on an interim basis. Upon the record made by the Debtors at the Interim Hearing, including the Motion, the Declaration of Kirk Hoiberg in Support of Chapter 11 Petitions and First Day Motions (ECFDocket No. [XX])15, Case No. 24-50210) (the "First Day Declaration"):"), any exhibits filed in connection with the foregoing, the filings and pleadings filed in these Chapter 11 Cases, and evidence presented at the Interim Hearing, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' business; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Supplemental Interim Hearing and the Final Hearing; and appropriate and adequate notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "Notice") having been given under the circumstances; and the Notice having been served by

the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the Northern District of California (the "U.S. Trustee"); (b) the Internal Revenue Service; (c) the United States Securities and Exchange Commission; (d) counsel to the DIP Agent; (e) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien in the Debtors' assets; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and the opportunity for the Interim Hearing on the Motion having been appropriate in connection with the Motion and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    Petition Date.  On February 19, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No examiner has been appointed in these Chapter 11 Cases.

B.    Jurisdiction and Venue.  The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Bankruptcy Local Rules 2002-1, 4001-1, and 9013-1.

C. <u>Notice</u>. The Notice was given in the manner described in the Motion. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, and the relief granted under this Interim Order constitutes due and sufficient notice thereof.

D. <u>Parties' Acknowledgments, Agreements, and Stipulations</u>. In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition Lenders for agreeing to provide, or consent to, the DIP Facility, access to Cash Collateral, and subordination of the Prepetition Liens, as provided herein, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral as set forth herein, subject to the rights of the parties-in-interest (other than the Debtors) set forth in paragraph 13 of this Interim Order ~~and subject to entry of the Second Interim Order, the Debtors,~~ the Debtors, for themselves only but not on behalf of their estates, any successor in interest (including, without limitation, a Chapter 7 or Chapter 11 trustee, or any other party in interest), permanently and irrevocably admit, stipulate, acknowledge, and agree as follows:

(i) <u>Prepetition Loans</u>.

(a) On or about November 15, 2022, TAAP IV entered into a loan agreement (the "<u>Loan Agreement</u>") with Rabo Ag, as administrative agent and lender, to provide TAAP IV with a term loan of up to $130 million (the "<u>Term Loan</u>") and delayed draw loans (the "<u>Delayed Draw Loans</u>") of up to $38 million, all upon the terms and conditions set forth therein (the "<u>Loan</u>"). Subsequently, Rabo Ag assigned to Compeer Financial, FLCA, $15 million of Delayed Draw Loan commitment, and assigned to AgAmerica Lending LLC a further $15 million of its Delayed Draw Loan commitment, which AgAmerica Lending subsequently assigned to Federal Agricultural Mortgage Corporation (the foregoing collectively referred to herein as the "<u>Prepetition Lenders</u>"). As of the Petition Date, the Term Loan had been fully disbursed, and $29 million of Delayed Draw Loans were outstanding. The Farm Subsidiaries (collectively in this

capacity, the "Guarantors") guaranteed repayment of the Loan pursuant to the Loan Agreement. Repayment of the Loan is secured by deeds of trust and fixture filings recorded against title to all of the Guarantors' real property. The Loan is also secured by a validly perfected lien in and to all of the Guarantors' other assets ("Prepetition Collateral," and, such security interests and liens on the Prepetition Collateral, the "Prepetition Liens"). The Loan Agreement, the forgoing deeds of trust and all of the other documents entered into in relation to the Loan are hereinafter referred to collectively as the "Prepetition Loan Documents." As of the Petition Date, the Loan balance was $160,826,263.90, comprising the following: $130 million of principal drawn on the Term Loan, plus $1,448,055.56 of interest; and $29 million of Delayed Draw Loans, plus $378,208.33 of accrued interest (including default interest but excluding certain fees and costs) (the "Prepetition Debt") without defense, challenge, objection, claim, counterclaim, or offset of any kind.

(b)    Prepetition Collateral.  To secure the Prepetition Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Lenders' security interests in the Prepetition Collateral (such agreements, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "Prepetition Collateral Documents"). Pursuant to the Prepetition Collateral Documents, the Debtors granted to the Prepetition Lenders, the Prepetition Liens on the Prepetition Collateral.

(c)    Prepetition Debt.  The Prepetition Debt owing to the Prepetition Lenders constitutes the legal, valid, and binding obligation of the Debtors, enforceable against them in accordance with its terms, and neither the Prepetition Debt nor any portion thereof owing to the Prepetition Lenders is subject to avoidance, recharacterization, attack, effect, reduction, set-off, offset, counterclaim, cross-claim, recoupment, rejection, defenses, disallowance, impairment, recovery, subordination (whether equitable, contractual, or otherwise), or any other claim or challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(d) Prepetition Liens. The Prepetition Liens granted to the Prepetition Lenders: (1) constitute legal, valid, binding, enforceable, and properly perfected security interests in and liens on the Prepetition Collateral, (2) were granted to, or for the benefit of, the Prepetition Lenders for fair consideration and reasonably equivalent value, and (3) are not subject to any defense, counterclaim, recharacterization, subordination (whether equitable, contractual, or otherwise), avoidance, recovery, attack, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(ii) No Challenges/Claims. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Debt exist, and neither the Prepetition Liens nor the Prepetition Debt, or any portion of either of the foregoing, is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Lenders or any of their respective members, shareholders, affiliates, agents, attorneys, advisors, professionals, officers, directors or employees related to the respective Prepetition Loan Documents, the Prepetition Debt, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553 (inclusive), or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Debt constitutes allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code. Notwithstanding the foregoing, (a) Debtors' and their Estates have not, and are not waiving (a) any right to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and (c) any rights

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

of the Debtors under the equitable doctrine of marshaling or any other similar doctrine with respect to any DIP Collateral or Prepetition Collateral.

(iii)    Indemnity.  Each of the DIP Lenders and the Prepetition Lenders has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Prepetition Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, pursuant to the terms of the Prepetition Documents, each of the Prepetition Lenders and the DIP Lenders shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto; *provided*, that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph D(iii), in the Prepetition Documents, or in the DIP Documents, to the Debtors' obligation to indemnify and/or hold harmless the Prepetition Lenders or the DIP Lenders, as the case may be.

(iv)    Release.  ~~Subject to paragraph 13 of this Interim Order, the Debtors and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns~~The Debtors, solely on their own behalf, have agreed to provide releases to each of the Released Parties (as defined below) as provided in paragraph ~~30~~27 of this Interim Order.

(v)    Cash Collateral.  The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, whether as Prepetition Collateral, as income, proceeds, products, rents, issues, or profits of Prepetition Collateral, or otherwise, constitutes "cash collateral" of the

Prepetition Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash</u> <u>Collateral</u>").

       E.     <u>Findings Regarding the Postpetition Financing and Use of Cash Collateral</u>.

       (i)     <u>Request for Postpetition Financing</u>. The Debtors have requested from each of the DIP Lenders, and the DIP Lenders are willing, subject to the terms of this Interim Order~~, the Term Sheet and, at the Supplemental Interim Hearing,~~ and satisfaction of the conditions set forth in the DIP Credit Agreement, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the other DIP Documents.

       (ii)     <u>Need for Postpetition Financing and Use of Cash Collateral</u>. The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and maintain their business in the ordinary course of business without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their respective vendors, suppliers, and customers, to pay their employees, to pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their Estates for the benefit of all creditors and other stakeholders of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lenders and the use of Cash Collateral as set forth in this Interim Order and the ~~Term Sheet~~<u>DIP Credit Agreement</u> is vital to the preservation and maintenance of the going concern value of the Debtors. Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the orderly continuation of the operation and maintenance of their businesses, minimize the disruption to their business operations and other efforts and activities, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors and other stakeholders of the Estates.

       (iii)     <u>No Credit Available on More Favorable Terms</u>. The Debtors have established that they are unable to procure financing in the form of unsecured credit allowable as

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. As the Debtors assert in the Motion and the First Day Declaration and as demonstrated at the Interim Hearing, the Debtors would not be able to obtain the necessary postpetition financing on more favorable terms than the financing offered by each of the DIP Lenders pursuant to the DIP Documents. The financing offered by each of the DIP Lenders pursuant to the DIP Documents also obviates the need for a further priming fight between the Debtors and the Prepetition Lenders and the costs and risks associated therewith. In light of the foregoing, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time under all of the circumstances of these Chapter 11 Cases, and is therefore in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)     Approved Budget.

(a)     The Debtors ~~has~~have prepared and delivered to the DIP Agent and the DIP Lenders an ~~initial~~updated budget, a copy of which ~~is attached to~~has been filed with the ~~Motion~~Court as ~~Exhibit C~~Docket No. 24, and which the DIP Lenders have accepted as the Initial Budget and as an Approved Budget. ~~For~~All Updated Budgets submitted to, and approved by the DIP Lenders in accordance with the DIP Credit Agreement shall become an Approved Budget for the purposes ~~hereof~~of this Interim Order. Subject to the terms of the DIP Credit Agreement: "Approved Budget" (1) means a budget consisting of a 13-week cash flow forecast, setting forth, among other things, the Debtors' cash, revenue, cash flow, and net operating cash flow, trade payables, ordinary course expenses, total expenses, capital expenditures, vendor disbursements, working capital, and fees and expenses of the DIP Facility and these Chapter 11 Cases during such 13-week period that Debtors are authorized to use proceeds of the DIP Loan, which~~, solely for the purposes of the one-week interim period covered by this order,~~ shall ~~be Exhibit "C" to~~include the ~~Motion~~Interim Budget (subject to permitted variances as set forth in the ~~Term Sheet~~DIP Credit

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Agreement); (2) as to budgets subsequently presented to the DIP Lenders, (i) will be in a form satisfactory to the DIP Lenders (*i.e.*, shall be in the form of Exhibit C to the Motion, with variances as requested or approvedrequired by the DIP Lenders),Credit Agreement, (ii) will commence on the Petition Datefirst day of the next following Budget Compliance Period, and (iii) will have been approved by the Debtors and the DIP Lenders as required by the DIP Credit Agreement. The Approved Budget shall be revised on a six-week cycle (*i.e.*, every six weeks a new 13-week cash flow forecast will be delivered, and variances will be calculated on a cumulative basis based on that six-week period) ("Budgetary Compliance Period").."), all as set forth in the DIP Credit Agreement. Each budget delivered at the request of the DIP Lenders thereafter shall be acceptable to the Debtors and the DIP Lenders, such consent not to be unreasonably withheld (it being understood that if the DIP Lenders do not approve such updated budget within five (5) business days after the delivery thereof, the then-existing Approved Budget shall continue to constitute the applicable Approved Budget and shall continue to be effective, including for testing purposes, until such time as an update or amendment to the Approved Budget is approved by the DIP Lenders.)

(b) TheAs set forth in the DIP Credit Agreement, the Debtors shall maintain a cumulative ledger of line items appearing in the Approved Budget (the "Performance Ledger"). Variance covenants comparing the Performance Ledger to the Approved Budget will be tested weekly, calculated on a cumulative basis from the beginning date of the six-week Budgetary Compliance Period coinciding with the first six weeks included in such Approved Budget ("Cumulative Basis"), requiring (i) the unfavorable variance (as compared to the Approved Budget) of the net of the aggregate receipts and disbursements of the Debtors not to exceed ten percent (10%) on a Cumulative Basis, and (ii) the unfavorable variance (as compared to the Approved Budget) of the aggregate operating disbursements, excluding professional fees and expenses and adequate protection claims, made by the Debtors not to exceed ten percent (10%) on a Cumulative Basis. As used in this Interim Order, "Permitted Variances" means (i) all favorable variances, and (ii) any unfavorable variance permitted in the budget variance covenant.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(c)     As a condition to draws under the DIP Loan, the Liquidity ~~(which term shall be defined in the DIP Credit Agreement) of~~ the Debtors shall not at any time exceed One Million Five Hundred Thousand Dollars ($1,500,000) inclusive of funds in the Segregated Account (as defined below), but excluding funds in the Professional Fees Account (as defined below) and any account holding adequate assurance deposits for utility companies, and subject to the provisions of the DIP Documents relating to the disposition of the proceeds of sales of assets of the Estates.

(d)     The DIP Lenders are relying upon the Debtors' agreement to comply with the terms set forth in the ~~Term Sheet, the~~ DIP Credit Agreement ~~(once approved),~~ the Approved Budget, this Interim Order, and other DIP Documents in determining to enter into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral as set forth herein.

(v)     <u>Certain Conditions to the DIP Facility</u>.  The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) upon delivery of ~~the Term Sheet (and, thereafter~~, the DIP Credit Agreement), the Debtors obtaining Court approval to enter into the DIP Documents and to incur all of the obligations thereunder, and to confer upon the DIP Lenders all applicable rights, powers, and remedies thereunder and under this Interim Order; (b) the Debtors obtaining Court approval of and compliance with the Milestones (each as defined in the ~~Term Sheet~~<u>DIP Credit Agreement</u>), which are hereby approved in all respects; (c) the provision of adequate protection of the Prepetition Lenders interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (d) the DIP Lenders being granted, as security for the prompt payment of the DIP Obligations, perfected security interests in and liens upon substantially all property and assets of the Debtors, including, without limitation, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (1) all property and assets comprising Prepetition Collateral, and (2) all property and assets comprising DIP Collateral; and (e) the DIP Lenders being granted, pursuant to section 364 of the Bankruptcy Code, superpriority administrative expense claims as set forth in

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1    this Interim Order on account of the DIP Obligations, which claims shall be subject to the Carve-

2    Out.

3                    (vi)    Business Judgment and Good Faith Pursuant to Section 364(e). Any credit

4    extended, loans made, and other financial accommodations extended to the Debtors by the DIP

5    Lenders, including, without limitation, pursuant to this Interim Order, have been extended, issued,

6    or made, as the case may be, in "good faith" within the meaning of section 364(e) of the

7    Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the

8    Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as

9    defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in

10   the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal

11   or otherwise.

12                    (vii)   Sections 506(c) and 552(b). The Debtors have agreed as a condition to

13   obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim

14   Order that as a material inducement to the DIP Lenders to agree to provide the DIP Facility and

15   the Prepetition Lenders' consent to the use of Cash Collateral as set forth in this Interim Order,

16   and in exchange for (a) the DIP Lenders' willingness to provide the DIP Facility to the extent set

17   forth herein, (b) the DIP Lenders' and the Prepetition Lenders' agreement to subordinate their liens

18   and superpriority claims to the Carve-Out, and (c) the consensual use of Cash Collateral consistent

19   with the Approved Budget, the terms of the DIP Credit Agreement, and the terms of this Interim

20   Order, each of the DIP Lenders and the Prepetition Lenders are, subject to entry of the Final Order

21   granting such relief, entitled to receive a waiver of (a) any rights of the Debtors' and their Estates

22   ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral

23   and the Prepetition Collateral; (b) any right of the Debtors under the "equities of the case"

24   exception in section 552(b) of the Bankruptcy Code; and (c) any rights of the Debtors under the

25   equitable doctrine of marshaling or any other similar doctrine with respect to any DIP Collateral

26   or Prepetition Collateral.

27                    (vii)   Intentionally Omitted.

28

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(viii)    Good Cause.    Good cause has been shown for the entry of this Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business, on-going operations and other applicable activities and efforts, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors and other stakeholders, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility and this Interim Order are fair and reasonable, reflect the Debtors' exercise of their business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility and this Interim Order are the product of reasonable, arms'-length, good faith negotiations between the Debtors, the DIP Lenders, and the Prepetition Lenders, all of whom are commercially sophisticated parties represented by counsel.

(ix)    Adequate Protection.    The Prepetition Lenders are entitled, pursuant to sections 361, 362, 363, 364, and 507(b) of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

(x)    Immediate Entry.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and for waiver of any otherwise applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) of the effectiveness of this Interim Order.  Absent immediate entry and effectiveness of this Interim Order, the Debtors' businesses, properties, and their Estates will be immediately and irreparably harmed.

(xi)    Interim Hearing.    Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties (as hereafter defined).  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances to parties affected, or

potentially affected by the relief granted herein, and no other notice is required for the relief to be granted in this Interim Order.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.**    ***Authorization and Conditions to Financing and Use of Cash Collateral.***

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis to the extent provided in this Interim Order.  Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  <u>The borrowings of the Initial Draw and the Second Draw shall be treated as borrowings under the DIP Facility pursuant to and subject to this Interim Order and any Final Order in all respects.</u>

2.    <u>Authorization of DIP Financing and Use of Cash Collateral</u>.  The Debtors are hereby authorized to (i) borrow under the DIP Facility and use Cash Collateral during the period commencing on the ~~date of this Interim Order~~Petition Date through and including the earlier to occur of (x) the date of entry of the ~~Second Interim~~Final Order, and (y) the occurrence of a DIP Termination Event (as defined below), solely in accordance with, and for the purposes permitted by, this Interim Order, the ~~Term Sheet,~~DIP Credit Agreement and the Approved Budget, and (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Credit Agreement ~~and the Term Sheet~~, all pursuant to the terms and conditions of this Interim Order, the Approved Budget, and the ~~Term Sheet~~DIP Credit Agreement.

3.    <u>Financing Documents</u>.

(a)    *Authorization*.  The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the ~~Term Sheet.~~DIP Credit Agreement.  No obligation, payment, transfer, or grant of security hereunder or, once approved, under the DIP Credit Agreement and DIP Documents, shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including,

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1  without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform

2  Fraudulent Transfer Act, Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance

3  Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim,

4  recoupment, offset, recharacterization, subordination (whether equitable, contractual or

5  otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law,

6  rule, or regulation by any person or entity.

7         (b)    *Approval; Evidence of Borrowing Arrangements*.  ~~All~~Except as set forth

8  herein, all terms, conditions, and covenants set forth in the ~~Term Sheet~~DIP Credit Agreement are

9  approved and shall be binding on the Debtors.  All such terms, conditions, and covenants shall be

10  sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors,

11  the        DIP        Agent,        and        the        DIP        Lenders,        and

12  (ii) the Debtors' agreement to comply with all the terms, conditions, and covenants of the ~~Term~~

13  ~~Sheet~~DIP Credit Agreement for all purposes, including, without limitation, to the extent

14  applicable, the payment of all DIP Obligations arising thereunder, including, without limitation,

15  all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Agent's

16  and each DIP Lender's closing, arranger, and administrative fees, consultant fees, professional

17  fees, attorney's fees and legal expenses, to the extent set forth in the ~~Term Sheet.~~DIP Credit

18  Agreement.  Upon approval and effectiveness thereof, the DIP Credit Agreement and DIP

19  Documents shall evidence the DIP Obligations, which DIP Documents and DIP Obligations shall

20  be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto,

21  including, without limitation, any trustee appointed in these Chapter 11 Cases or any case under

22  chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases (the "Successor

23  Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms

24  of this Interim Order and the ~~Term Sheet~~DIP Credit Agreement.

25         (c)    *Payment of DIP Fees and Other Expenses*.  Any and all fees and expenses

26  payable pursuant to the ~~Term Sheet~~DIP Credit Agreement and the Approved Budget, including

27  the commitment fee described in the ~~Term Sheet~~DIP Credit Agreement (collectively, any and all

28

such fees and expenses, the "DIP Fees"), are hereby approved, and the Debtors are hereby authorized and directed to pay, in cash and on a current basis through automatic draws under the DIP Facility and application of the proceeds of such automatic draws to the payment thereof (which draws, for the avoidance of doubt, may be effected irrespective of whether or not the conditions precedent to draws have been satisfied), all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agent and the DIP Lenders incurred at any time, as provided by this Interim Order and the ~~Term Sheet.~~DIP Credit Agreement. The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. Subject to the Approved Budget, the Debtors are further authorized to reimburse DIP Lenders all of their reasonable and necessary fees and expenses, including, without limitation, attorneys' and consultants' fees, costs, and expenses (consisting of all reasonable fees and expenses of Fennemore Craig, P.C. and Focus Management Group, LLC (together, the "DIP Lender Professionals") incurred (i) in connection with the negotiation and preparation of this DIP Loan and the DIP Documents, and (ii) in connection with the Bankruptcy Case ("DIP Lender Expenses"). The DIP Lender Expenses shall be added to the principal amount of the DIP Loan, shall be treated as disbursements and reduce remaining availability under the DIP Facility, and shall be part of the DIP Obligations until paid in full, whether prior to or at maturity, *provided*, that the DIP Lender Professionals shall provide to the Debtors, the Committee (if appointed), and the U.S. Trustee their invoices by the fifteenth day for the previous monthly period for which fees and costs are requested (the "Invoiced Fees"). The Debtors, the Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within ten (10) days of receipt of the Invoiced Fees by filing with the Court a motion or other pleading, on at least ten (10) business days' prior written notice to the submitting party of any hearing on such motion or other pleadings, setting forth the specific objections to the Disputed Invoiced Fees.

(d)     *Amendments to DIP Documents*. ~~The~~ Except as set forth herein, the terms and conditions of the ~~Term Sheet~~DIP Credit Agreement are approved by this Court, the Debtors and the DIP Lenders may make amendments, modifications, or supplements to the ~~Term Sheet~~DIP

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Credit Agreement (and, upon approval, any DIP Document), and the DIP Agent may waive any provisions in the DIP Documents, without further approval of the Court; *provided*, that any such amendments, modifications, or supplements to any DIP Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder (other than the application of default interest), or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Documents (collectively, the "Material DIP Amendments"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Agent; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"), if and when a Committee is formed; and (iii) the U.S. Trustee; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within three (3) business days following receipt of such Material DIP Amendment must be approved by the Court. For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court from the DIP Lenders for any amendment, modification, supplement, or waiver that materially adversely affects any rights of any Prepetition Lenders hereunder or the treatment of the Prepetition Debts hereunder.

4. <u>Continuation of Prepetition Procedures</u>. Except to the extent expressly set forth in the Prepetition Documents, the ~~Term Sheet~~DIP Credit Agreement, or in "first day" orders, the ~~all~~ prepetition practices and procedures for the collection and disbursement of proceeds of the Prepetition Collateral shall continue.

~~(a)~~ *~~Segregated Account~~*. ~~Notwithstanding the foregoing, except as otherwise specified in the Term Sheet, the proceeds of the DIP Loans when made shall be funded or credited to a non-interest bearing account in the name of the DIP Agent and subject to the sole dominion and control of the DIP Agent and subject to the liens securing the DIP Loan (the "Segregated Account"). The Debtors may, subject to conditions precedent specified in the Term Sheet, withdraw or apply funds from the Segregated Account, not more frequently than once per week,~~

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1

solely to pay (x) one or more disbursements set forth in the then effective Approved Budget

2

(subject to the Permitted Variances thereto), (y) any fees or other amounts due and payable to the

3

DIP Lenders or the DIP Agent and not otherwise satisfied by automatic draw under the DIP Facility

4

and application as provided in the DIP Documents, or (z) such other amounts that are due and

5

payable under the DIP Documents, including to the Professional Fees Account (as defined below).

6

For the avoidance of doubt, the DIP Loans shall be outstanding and accrue interest at the rate set

7

forth in the Term Sheet notwithstanding that the proceeds thereof may be held in the Segregated

8

Account.

9

5.   Indemnification.   The Debtors are authorized to indemnify and hold harmless the

10

DIP Agent, each DIP Lender, and, solely in their capacities as such, each of their respective

11

successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives,

12

agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors,

13

members, managers, shareholders and employees, past, present and future, and their respective

14

heirs, predecessors, successors and assigns, in accordance with, and subject to, the Term SheetDIP

15

Credit Agreement.

16

**II.   *Postpetition Liens; Superpriority Administrative Claim Status.***

17

6.   Postpetition Liens.

18

(a)   *Postpetition DIP Liens*.   To secure performance and payment when due

19

(whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the

20

Debtors to the DIP Lenders of whatever kind, nature, or description, whether absolute or

21

contingent, now existing or hereafter arising, effective and perfected upon the date of this Interim

22

Order and without the necessity of the execution, recordation or filing by the Debtors or the DIP

23

Agent of any mortgages, security agreements, control agreements, pledge agreements, financing

24

statements or other similar documents or instruments, any notation of certificates of title for a titled

25

good or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following

26

security interests and liens are hereby granted to the DIP Agent, for the benefit of itself and the

27

respective DIP Lenders (all property identified in clauses (i)–(iv) below being collectively referred

28

to as the "<u>DIP Collateral</u>"), subject only to payment of the Carve-Out and Permitted Third Party Liens[4] (all such liens and security interests granted to the DIP Agent, for the benefit of itself and the DIP Lenders, pursuant to this Interim Order and the ~~Term Sheet~~DIP Credit Agreement, the "<u>DIP Liens</u>").

(i)     <u>Liens on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code and subject and subordinate in all respects to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition real or personal property of the Debtors, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents and profits thereof, that, on or as of the Petition Date or permitted by section 546(b) of the Bankruptcy Code, is not subject to a valid, perfected and non-avoidable lien, including any property or assets that are not subject to the liens and security interests created under the Prepetition Collateral Documents under any of the Prepetition Documents.  Notwithstanding the foregoing, no security interest or lien securing the DIP Loans, nor any priority claim granted hereunder, shall attach to Excluded Property, or the proceeds of same.

(ii)     <u>Liens Priming Certain Prepetition Lenders' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out and Permitted Third Party Liens, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the Debtors, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition Liens.

---

[4]     For purposes of this Interim Order, "***Permitted Third Party Liens***" shall mean (i) any liens that are senior by operation of law (including liens securing the repayment of real property taxes and any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens; (ii) any liens permitted under the Prepetition Documents; and (iii) any valid, perfected, and non-avoidable mechanics' liens and fixture filings in existence as of the Petition Date.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(iii)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition property of the Debtors that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (including mechanics' liens and fixture filings), in each case other than the Prepetition Liens; *provided*, that nothing in the foregoing shall limit the rights of the DIP Lenders under the DIP Documents to the extent such liens are not permitted thereunder.

(iv)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be (A) subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code, (2) unless otherwise provided for in the ~~Term Sheet~~DIP Credit Agreement or in this Interim Order, or unless otherwise required by applicable non-bankruptcy law, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (3) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (B) subordinated to or made *pari passu* with any other lien or security interest granted by the Debtors under section 363 or 364 of the Bankruptcy Code.

(b)    *DIP Lien Priority in DIP Collateral*.  The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the DIP Liens shall be subject to the Carve-Out and

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Permitted Third Party Liens and shall not extend to the Excluded Property (or the proceeds thereof).

(c)     *Postpetition Lien Perfection.*  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act").  Notwithstanding the foregoing, if the DIP Lenders or the Prepetition Lenders, as applicable, shall, in their sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Lenders or the Prepetition Lenders, as applicable, are authorized to perform such Perfection Act, and the Debtors are authorized and directed to perform such Perfection Act to the extent necessary or required by this Interim Order, the other DIP Documents, or the Prepetition Documents, which Perfection Act or Perfection Acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such Perfection Act in accordance with applicable law.  The DIP Lenders or the Prepetition Lenders, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law.  Should the DIP Lenders or the Prepetition Lenders, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability,

attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)      To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including the DIP Liens and the Prepetition Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the Court; *provided*, *however*, that nothing herein shall excuse the Debtors from payment of any local or recording fees or taxes, if any, required in connection with such liens.  By virtue of the terms of this Interim Order, to the extent that the DIP Lenders or the Prepetition Lenders, as applicable, have filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the name of the Debtors, such filings shall be deemed to properly perfect the liens and security interests granted and confirmed by this Interim Order without further action by the DIP Lenders or the Prepetition Lenders, as applicable.

(e)      Except as provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted by the Debtors in these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

7. DIP Loan Superpriority Administrative Expenses. Subject only to the Carve-Out and the provisions of the ~~Term Sheet~~DIP Credit Agreement relating to Excluded Property, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the ~~Term Sheet~~DIP Credit Agreement, or otherwise, the DIP Agent, for the benefit of itself and the DIP Lenders, is granted an allowed superpriority administrative expense claim against the Debtors pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims against the Debtors of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order granting such relief), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (the "DIP Superpriority Claims").

8. Carve-Out.

(a) Generally. As used in this Interim Order, the "Carve-Out" means (a) fees and expenses incurred by professionals retained by the Debtors or the Committee (hereafter, a "Professional"), but not in excess of amounts therefor provided in the applicable Approved Budget, prior to the earliest of (i) an Event of Default (as described in the ~~Term Sheet~~DIP Credit Agreement), (ii) the termination of the DIP Facility, and (iii) the maturity date of the DIP Facility (the earliest of the foregoing being the "Carve-Out Date"); (b) the sum of $150,000 for payment of such Professionals' costs and expenses incurred after the Carve-Out Date; (c) fees and expenses of a chapter 7 trustee in an amount not to exceed $75,000; and (d) statutory fees of the United States Trustee.

(b) Other Priority Matters.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(i)     For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the ~~Term Sheet~~DIP Credit Agreement, or the Prepetition Documents, the Carve-Out shall be senior to the DIP Obligations, the Prepetition Obligations, and any other claims arising under or in connection with the ~~Term Sheet~~DIP Credit Agreement or the Prepetition Documents (and any and all security interests and liens securing such claims), the DIP Superpriority Claims, the liens and claims securing the DIP Facility, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, the Prepetition Adequate Protection Claims, or the Prepetition Obligations.

(ii)    For the avoidance of doubt, until the indefeasible payment in full in cash of the DIP Obligations occurs or the DIP Facility is otherwise terminated, this Interim Order shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, and all related provisions in respect thereof, and the Prepetition Lenders shall assume any rights and obligations that the DIP Agent previously had with respect to the Carve-Out.

(iii)   Debtors are authorized to fund a separate segregated account consisting of those amounts set forth in the Approved Budget for the payment of fees and expenses of Professionals retained in these Chapter 11 Cases (the "<u>Professional Fees Account</u>"). All funds in the Professional Fees Account shall be considered amounts available to apply against the Carve-Out.

(c)     <u>No Direct Obligation to Pay Allowed Professional Fees</u>. None of the DIP Lenders or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order, the Final Order, or otherwise shall be construed to obligate any of the DIP Lenders or the Prepetition Lenders, in any way, to pay compensation to, or to reimburse expenses of, any

Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)     Reservation of Rights.  Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to these Carve-Out provisions.

9.     Adequate Protection for the Prepetition Lenders.

(a)     *Adequate Protection for Prepetition Lenders*.  The Prepetition Lenders are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Lenders' interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection and solely to the extent of any Diminution in Value, the Prepetition Lenders are hereby granted the following, in each case subject to the Carve-Out (collectively, the "Adequate Protection Obligations"):

(i)     Prepetition Adequate Protection Liens.  Effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act, valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "Prepetition Adequate Protection Liens"), subject and subordinate only to the Carve-Out, the Permitted Third Party Liens, and the DIP Liens.

(ii)     Adequate Protection Payments.  All interest on the Prepetition Debt, including accrued and unpaid interest as of the Petition Date and interest accruing thereafter, which interest shall accrue at the default rate as set forth in the Prepetition Documents and be payable in-kind in arrears on a monthly basis on the last business day of each month by being capitalized.

(iii)     Adequate Protection Superpriority Claims.  Allowed superpriority administrative expense claims against the Debtors pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Prepetition Adequate Protection Claims"), with priority (subject and subordinate only to the Carve-Out and the DIP Superpriority Claims) over any and all

administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Prepetition Adequate Protection Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors other than the proceeds of Excluded Property (which, for the avoidance of doubt, shall not be applied to satisfy any Prepetition Adequate Protection Claims), subject to the Carve-Out, the Permitted Liens, the DIP Obligations, and the DIP Superpriority Claims.

(b) *Reporting*. The Debtors shall timely provide the Prepetition Lenders with (i) reasonable access to the Debtors' real property, management, books, and records required under the Prepetition Documents, all as provided in the Prepetition Loan Documents, and (ii) copies of all financial reporting provided to the DIP Agent and DIP Lenders pursuant to the DIP Documents substantially simultaneously with such delivery to the DIP Lenders.

(c) <u>Reservation of Rights Regarding Adequate Protection</u>. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lenders; *provided*, that the Prepetition Lenders may request further or different adequate protection, and the Debtors or any other party in interest with standing may contest any such request.

**III.** ***Default; Waivers; Rights and Remedies; Relief from Stay.***

10. <u>DIP Termination Events</u>. The occurrence of an event of default or the "Termination Date" under and as defined in the ~~Term Sheet~~<u>DIP Credit Agreement</u> shall constitute a "DIP Termination Event" hereunder (each, a "<u>DIP Termination Event</u>"), unless waived in writing by the applicable DIP Lenders.

11. <u>Rights and Remedies upon a DIP Termination Event</u>.

(a)     Immediately upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent may: (i) declare all DIP Obligations owing under the DIP Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any letters of credit); (iii) terminate the DIP Facility and any DIP Documents as to any future liability or obligation of the DIP Lenders thereunder, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) terminate and/or revoke the Debtors' rights, if any, under this Interim Order and the ~~Term Sheet~~DIP Credit Agreement to use any Cash Collateral; (v) invoke the right to charge interest at the default rate under the ~~Term Sheet~~DIP Credit Agreement; (vi) freeze monies or balances in the Debtors' accounts (but subject to the Carve-Out); (vii) otherwise enforce any and all rights against the DIP Collateral in the possession of the applicable DIP Agent, including, without limitation, disposition of the DIP Collateral solely for application towards the Carve-Out and the DIP Obligations in accordance with their respective priorities; and (viii) take any other actions or exercise any other rights or remedies with respect to the DIP Collateral permitted under this Interim Order, the ~~Term Sheet~~DIP Credit Agreement, or applicable law; *provided*, that prior to the exercise of any right in clauses (vii) and (viii) of this paragraph, the DIP Agent shall be required to provide five (5) days' written notice to the Debtors, counsel to the Debtors, counsel to the DIP Lenders, the Committee, counsel to the Committee, and the U.S. Trustee (the "<u>DIP Remedies Notice Parties</u>") of the DIP Agent's intent to exercise its rights and remedies (the "<u>DIP Remedies Notice Period</u>"). Notwithstanding the foregoing, the Debtors shall be permitted to use Cash Collateral after a Termination Event to pay outstanding obligations incurred under an Approved Budget then in effect and in accordance with that Approved Budget.

(b)     Upon the occurrence and during the continuation of a DIP Termination Event:

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(i)  the Debtors reserve the right to contest any termination or revocation of their use of Cash Collateral and to seek the Court's approval to use Cash Collateral, and the DIP Agent reserves its respective rights to oppose any such request; and

(ii)  the DIP Agent shall not receive immediate relief from the automatic stay to foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, or occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral. The DIP Agent may only receive relief from the automatic stay with respect to the foregoing enforcement actions following the filing a motion with the Court and a Court order granting relief from the stay under section 362 of the Bankruptcy Code. The Debtors and all other parties in interest reserve the right to oppose any such request for relief from the stay.

(c)  The Debtors (i) shall reasonably cooperate with the DIP Agent in its exercise of rights and remedies, whether against the DIP Collateral or otherwise, and (ii) unless the Court orders otherwise, may not contest or challenge the exercise of any such rights or remedies other than to dispute whether a DIP Termination Event has in fact occurred.

(d)  Unless otherwise ordered by the Court during the DIP Remedies Notice Period, upon the occurrence and during the continuation of a DIP Termination Event, without limiting any of the other rights and remedies of the DIP Agent, and subject to, and in accordance with, the ~~Term Sheet~~DIP Credit Agreement and this Interim Order, (i) the DIP Agent and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights, or other intellectual property of the Debtors to the extent necessary or appropriate to sell, lease, or otherwise dispose of any of the DIP Collateral, including pursuant to any Court-approved sale process, and (ii) enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to the DIP Collateral located thereon, and shall be entitled to all of the Debtors' rights and privileges as lessee or licensee. For the avoidance of doubt, (x) all of the Debtors' obligations under any applicable lease or license shall not be affected, limited, or otherwise modified by the rights granted to the DIP Agent pursuant

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1    to this paragraph, and (y) any affected landlords, lienholders, and/or licensors shall retain all

2    remedies available under applicable non-bankruptcy law.  Nothing herein shall require the

3    Debtors, the DIP Agent or the other DIP Lenders to assume any lease or license under section

4    365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Lenders herein.

5              12.    Modification of Automatic Stay.  The automatic stay provisions of section 362 of

6    the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law

7    are hereby modified without further notice, application, or order of the Court to the extent

8    necessary to (i) permit the DIP Agent to perform any act authorized or permitted under or by virtue

9    of this Interim Order, the DIP Credit Agreement, or the ~~Term Sheet~~DIP Credit Agreement, as

10   applicable, including, without limitation, to (A) implement the postpetition financing

11   arrangements authorized by this Interim Order, (B) take any act to create, validate, evidence, attach

12   or perfect any lien, security interest, right or claim in the DIP Collateral, (ii) assess, charge, collect,

13   advance, deduct and receive payments with respect to the Prepetition Obligations and DIP

14   Obligations (or any portion thereof), including, without limitation, all interest, fees, costs, and

15   expenses permitted under the ~~Term Sheet~~DIP Credit Agreement and apply such payments to the

16   Prepetition Obligations, and (iii) subject to the Remedies Notice Period, take any action and

17   exercise all rights and remedies provided to it by this Interim Order, the ~~Term Sheet~~DIP Credit

18   Agreement, or applicable law.

19   **IV.    *Representations and Covenants.***

20             13.    Effect of Stipulations.

21             (a)    *Binding on the Debtors*.  The Debtors' stipulations, admissions, agreements,

22   and releases contained in this Interim Order, including, without limitation, in paragraph D hereof

23   (collectively, the "Stipulations"), shall be binding upon the Debtors in all circumstances and for

24   all purposes~~, subject to entry of the Second Interim Order.~~..

25             (b)    *No Binding Effect on Third Parties*.  The Stipulations shall not be binding

26   upon ~~all~~any other ~~parties~~partiy in interest, including, without limitation, any statutory or non-

27   statutory committees appointed or formed in these Chapter 11 Cases and any other person or entity

28

acting or seeking to act on behalf of the Debtors' Estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors, in all circumstances and for all purposes unless each of the following three criteria are satisfied:..

(i) Challenge Period. Such committee, trustee, or any other party in interest (subject to in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing and requisite authority granted by the Court, has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 13(b)(i) by no later than the date that is the later of (x) seventy-five (75) days from the entry of this Interim Order and (y) sixty (60) days after the appointment of the Committee (the "Challenge Period").

(ii) Challenge Proceeding. Such adversary proceeding or other appropriate contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "Challenge Proceeding") against the Prepetition Lenders or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative," and, collectively, the "Representatives") in connection with matters related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral.

(iii) Final Non-Appealable Order. There is a final non-appealable order in favor of the plaintiff or movant in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(c)     *Failure to File Challenge Proceeding.*  For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of the pleading commencing such Challenge Proceeding.  If no such Challenge Proceeding is timely and properly filed during the Challenge Period, or to the extent the Court does not rule in favor of the plaintiff or movant in any such Challenge Proceeding that is timely and properly filed during the Challenge Period, then: (i) the Stipulations shall be binding on all parties in interest, including, without limitation, the Committee and any trustee; (ii) the obligations of the Debtors under the Prepetition Documents, including the Prepetition Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, reduction, defense, setoff or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; (iv) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Debtors, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' Estates; and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' Estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Lenders arising out of or relating to the Prepetition Documents shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in this paragraph 13) on the Debtors, the Committee, and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction (and solely as to the plaintiff party that timely filed such Challenge and not, for the

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1  avoidance of doubt, any other party in interest). Nothing in this Interim Order vests or confers on

2  any Person (as such term is defined in section 101(41) of the Bankruptcy Code), including the

3  Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases,

4  standing or authority to pursue any claim or cause of action belonging to the Debtors or their

5  Estates, including, without limitation, Challenge Proceedings with respect to the Prepetition

6  Documents, the Prepetition Obligations, or the Prepetition Liens. Any motion seeking standing

7  shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other

8  Challenge Proceeding, and any claim or cause of action or other Challenge Proceeding not

9  included therein shall be deemed forever waived, released, and barred.

10  **V.  *Other Rights and DIP Obligations.***

11      14.  <u>No Modification or Stay of this Interim Order</u>.  The DIP Lenders have acted in good

12  faith in connection with the DIP Facility and this Interim Order, their reliance on this Interim Order

13  is in good faith, and the DIP Lenders are entitled to the protections of section 364(e) of the

14  Bankruptcy Code.

15      15.  <u>Rights of Access and Information</u>.  The Debtors shall comply with the rights of

16  access and information afforded to the DIP Lenders under the ~~Term Sheet~~<u>DIP Credit Agreement</u>

17  and the Prepetition Lenders under the Prepetition Documents.

18      16.  <u>Power to Waive Rights; Duties to Third Parties</u>.

19          (a)  Subject to the terms of the DIP Documents, the DIP Agent shall have the

20  right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim

21  Order that are in favor of the DIP Lenders (as applicable, the "<u>DIP Lender Rights</u>"), and shall have

22  no obligation or duty to any other party with respect to the exercise or enforcement, or failure to

23  exercise or enforce, any DIP Lender Rights.  Any waiver by the DIP Agent of any DIP Lender

24  Rights shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided

25  therein. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute

26  a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to

27  any other party, nor cause or enable any party other than the Debtors to rely upon or in any way

28

seek to assert such delay in or failure to exercise or enforce any DIP Lender Right as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

17. <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral</u>. The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral) or any of the equity interests in the Debtors, other than in the ordinary course, pursuant to the terms of this Interim Order, as permitted by the ~~Term Sheet~~DIP Credit Agreement, or as otherwise ordered by the Court, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Approved Budget and the ~~Term Sheet~~DIP Credit Agreement (including Permitted Variances and exclusions to the Approved Budget permitted thereunder). Cash Collateral shall not be used (i) to finance or otherwise fund any investigation (including discovery proceedings), initiation or prosecution of any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the DIP Lenders, the Prepetition Lenders, or any member thereof, or their respective rights and remedies under or in respect of the DIP Facility, the Prepetition Documents or any interim or final order with respect to the DIP Facility and the Adequate Protection Obligations, (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating (other than to the Carve-Out), in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the DIP Lenders, and the Prepetition Lenders, including, for the avoidance of doubt, (a) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the DIP Obligations or the DIP Liens, or (b) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Obligations or the Prepetition Liens under the Prepetition Documents, (iii) for any purpose that is prohibited under the Bankruptcy Code, this Interim Order, or the Final Order, and (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Approved Budget, without the prior written consent of the DIP Lenders.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

18.   <u>No Waiver</u>.  The failure of the DIP Agent, the DIP Lenders, or the Prepetition Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order, the ~~Term Sheet~~DIP Credit Agreement, the DIP Facility, or the Prepetition Documents, as applicable, shall not constitute a waiver of any of the DIP Agent's, the DIP Lenders', or the Prepetition Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Agent, the DIP Lenders, or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Agent, the DIP Lenders, or the Prepetition Lenders' to: (a) request conversion of these Chapter 11 Cases to cases under chapter 7, dismissal of these Chapter 11 Cases, or the appointment of a trustee in these Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders or the Prepetition Lenders.

19.   <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time before the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors (if applicable), then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the ~~Term Sheet~~DIP Credit Agreement.

20.   <u>Maintenance of Collateral</u>.  Unless the DIP Agent otherwise consents in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations, and (ii) the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtors shall comply with the ~~Term Sheet.~~DIP Credit Agreement.  Upon entry of this

Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the applicable DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

21.  <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Secured Party and each Prepetition Lender, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the ~~Term Sheet~~<u>DIP Credit Agreement</u>, the Prepetition Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party or otherwise inconsistent with the provisions of the ~~Term Sheet~~<u>DIP Credit Agreement</u>, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

22.  <u>Binding Effect; Dismissal</u>.

(a)  All of the provisions of this Interim Order and the ~~Term Sheet~~<u>DIP Credit Agreement</u>, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Lenders and the Prepetition Lenders, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Lenders and the Prepetition Lenders set forth herein, including, without limitation, the Stipulations, subject to paragraph 8 hereof (without each of which the DIP Lenders would not have entered into or provided funds under the DIP Documents and the Prepetition Lenders would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder), provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3),

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting these Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing these Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided*, that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order.

(b)     Nothing in these Chapter 11 Cases may impair the DIP Superpriority Claims, the Prepetition Adequate Protection Claims, and the DIP Lenders' and the Prepetition Lenders' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protection, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect, notwithstanding any dismissal of these Chapter 11 Cases, until the DIP Obligations and the Prepetition Obligations are indefeasibly paid and satisfied in full.  Notwithstanding any such dismissal, the Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)     Except as set forth in this Interim Order, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or the ~~Term Sheet~~DIP Credit Agreement, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and the Carve-Out, or (iii) rights or priorities of any DIP Secured Party, Prepetition Secured Party, or beneficiary of the Carve-Out pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lenders and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted pursuant hereto, including the liens and priorities granted herein.

(d) This Interim Order shall be binding upon the Debtors, all parties in interest in these Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in these Chapter 11 Cases or any Successor Cases, and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim Order shall also inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Lenders, and each of their respective successors and assigns.

23. <u>Discharge</u>. The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Agent otherwise consents in writing.

24. <u>No Priming of the Prepetition Obligations</u>. Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Lenders, the Debtors shall not seek authorization from the Court to obtain or incur any indebtedness or enter into an alternative financing facility other than the DIP Facility (a "<u>Competing DIP Facility</u>") seeking to impose liens on any Prepetition Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Liens held by the Prepetition Lenders; *provided*, *however*, that nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the payment in

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

full of the DIP Obligations and the Prepetition Obligations at the initial closing of such Competing DIP Facility.

~~25.    Section 506(c) Waiver.    Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lenders upon the DIP Collateral, or by the Prepetition Lenders upon the Prepetition Collateral, as applicable) shall be charged against the DIP Lenders or the Prepetition Lenders, or any of the DIP Obligations, the Prepetition Obligations, the DIP Collateral, or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lenders and/or the affected Prepetition Lenders, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).~~

~~26.    Section 552(b) Waiver.    Subject to entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Lenders, the DIP Obligations, the Prepetition Lenders, or the Prepetition Obligations.~~

~~27.    No Marshaling/Application of Proceeds.    Subject to entry of the Final Order granting such relief, in no event shall the DIP Lenders or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the Term Sheet and the Prepetition Documents, as applicable.~~

~~28.~~25. Payment of DIP Lender Fees and Expenses. Consistent with the Approved Budget, the Debtors shall pay, by automatic draw under the DIP Facility and application of the proceeds

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1    of such draw to the payment thereof, (i) the reasonable and documented fees and expenses

2    reimbursable under the DIP Facility, the DIP Credit Agreement, or the ~~Term Sheet~~DIP Credit

3    Agreement, as applicable, whether incurred before or after the Petition Date, and (ii) all reasonable

4    and documented out-of-pocket costs and expenses of the DIP Agent and the DIP Lenders

5    including, without limitation, reasonable and documented fees and disbursements of counsel in

6    connection with the enforcement or preservation of any rights under the DIP Facility, the DIP

7    Credit Agreement, or the ~~Term Sheet.~~DIP Credit Agreement.  With respect to payment of fees and

8    expenses incurred from and after the Petition Date, the DIP Agent and the DIP Lenders shall

9    comply with the procedures set forth in paragraph 3(c) hereof.

10        ~~29.~~26. Limits on Lender Liability.

11        (a)    In determining to make any loan under the ~~Term Sheet~~DIP Credit

12   Agreement or the DIP Credit Agreement, authorizing the use of Cash Collateral, or in exercising

13   any rights or remedies as and when permitted pursuant to this Interim Order or the ~~Term Sheet~~DIP

14   Credit Agreement, the DIP Lenders and the Prepetition Lenders, as applicable, shall not be deemed

15   to (i) be in control of the operations of the Debtors or to be acting as a "controlling person,"

16   "responsible person," or "owner or operator" with respect to the operation or management of the

17   Debtors, so long as such party's actions do not constitute, within the meaning of 42 U.S.C. §

18   9601(20)(F), actual participation in the management or operational affairs of a facility owned or

19   operated by a Debtors, or otherwise cause liability to arise to the federal or state government or

20   the status of responsible person or managing agent to exist under applicable law (as such terms, or

21   any similar terms, are used in the Internal Revenue Code, WARN Act, the United States

22   Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et*

23   *seq.*, as amended, or any similar federal or state statute), or (ii) owe any fiduciary duty to the

24   Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted

25   to impose or allow the imposition upon any of the DIP Lenders or any of the Prepetition Lenders

26   of any liability for any claims arising from the prepetition or postpetition activities of any of the

27   Debtors and its Affiliates (as such term is defined in section 101(2) of the Bankruptcy Code).

28

(b)     Nothing in this Interim Order or the other DIP Documents shall be construed to permit the Debtors to violate 28 U.S.C. § 959(b).

(c)     As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the other DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

30.27. Release.  Subject to paragraph 13 of this Interim Order, each of the Debtors and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns Each of the Debtors, solely on behalf of themselves, , hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Lenders and each of the Prepetition Lenders, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Obligations and the DIP Obligations, or (ii) the Term Sheet DIP Credit Agreement and the Prepetition Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all Claims (as such term is defined in section 101(5) of the Bankruptcy Code) and any and all causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, setoff rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations and the DIP Obligations, the Prepetition Documents and the ~~Term Sheet~~DIP Credit Agreement, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now has or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. The Debtors are authorized in any payoff letter or similar agreement into which they enter upon payment in full of the DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph ~~30~~27 of the DIP Agent and the applicable DIP Lenders and their respective related parties.

~~31.~~28. Survival.    The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in these Chapter 11 Cases, (b) converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, (c) dismissing these Chapter 11 Cases, (d) any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lenders and the Prepetition Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to this Interim Order and the ~~Term Sheet~~DIP Credit Agreement,

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1    have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or

2    provisions contained in the DIP Facility which survive such discharge by their terms) and all

3    commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the

4    Prepetition Obligations, all of the Adequate Protection Obligations owed to the Prepetition Lenders

5    provided for in this Interim Order and under the Prepetition Documents have been indefeasibly

6    paid in full in cash.

7         32.29. Protections of Rights of the DIP Agent, the DIP Lenders, and the Prepetition

8    Lenders.  The Debtors (and their legal and financial advisors in the case of clauses (ii) through (iv)

9    below) will, whether or not the DIP Obligations (excluding contingent indemnification obligations

10   for which no claim has been asserted) have been indefeasibly paid in full in cash, (i) maintain

11   books, records, and accounts to the extent and as required by the Term SheetDIP Credit Agreement

12   and the Prepetition Documents (and subject to the applicable grace periods set forth therein); (ii)

13   reasonably cooperate with, consult with, and provide to the DIP Agent all such information and

14   documents that the Debtors are obligated (including upon reasonable request by any of the DIP

15   Agent) to provide under the Term SheetDIP Credit Agreement, the Prepetition Documents, or the

16   provisions of this Interim Order; (iii) authorize their independent certified public accountants,

17   financial advisors, investment bankers, and consultants to reasonably cooperate and consult with

18   the DIP Agent (and, so long as an Event of Default has occurred and is continuing, each DIP

19   Lender); (iv) upon reasonable advance notice during regular business hours, permit the DIP Agent,

20   and the DIP Lenders to visit and inspect any of the Debtors' properties, to examine and make

21   abstracts or copies from any of their non-privileged books and records, to tour the Debtors'

22   business premises and other properties, and to discuss their affairs, finances, properties, business

23   operations, and accounts with the Debtors' officers, employees, independent public accountants,

24   and other professional advisors (other than legal counsel) as and to the extent required by the Term

25   SheetDIP Credit Agreement and the Prepetition Documents; (v) permit the DIP Agent to consult

26   with the Debtors' management and advisors on matters concerning the Debtors' business, financial

27   condition, operations, and assets; and (vi) upon reasonable advance notice during regular business

28

hours, permit the DIP Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, and liquidation valuations at reasonable times in respect of any or all of the DIP Collateral or the Prepetition Collateral, in accordance with the ~~Term Sheet~~DIP Credit Agreement and the Prepetition Documents.

33.30. Credit Bidding. Subject to entry of the Final Order, section 363(k) of the Bankruptcy Code, and the express written direction of the DIP Lenders and the terms of the ~~Term Sheet~~DIP Credit Agreement, the DIP Agent, on behalf of itself and the DIP Lenders, shall have the right to credit bid, in accordance with the ~~Term Sheet~~DIP Credit Agreement, up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof) constituting property or assets of the Debtors, whether such sale is effectuated pursuant to section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. Subject to entry of the Final Order and section 363(k) of the Bankruptcy Code, the Prepetition Lenders shall have the right to credit bid, in accordance with the Prepetition Documents, up to the full amount of the Prepetition Obligations (including any claims for Diminution in Value) in any sale of the Prepetition Collateral (or any portion thereof) constituting property or assets of the Debtors.

34.31. No Third Party Rights. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

35.32. No Avoidance. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 13 hereof, with respect to the Prepetition Obligations.

36.33. Reliance on Order. All postpetition advances are made in reliance on this Interim Order.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

37.34. No Modification of Interim Order.  Until and unless the DIP Obligations and the Prepetition Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly, any modification, stay, vacatur, or amendment to this Interim Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any action or inaction of the DIP Agent.

38.35. Payments Free and Clear.  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Lenders, pursuant to the provisions of this Interim Order, any subsequent order of the Court or the Term SheetDIP Credit Agreement, shall, subject to the terms of this paragraph 38, be irrevocable, received free and clear of any claims, charges, assessments, or other liabilities, including, without limitation, subject to entry of the Final Order granting such relief, any such claims or charges arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Carve-Out Trigger Notice, subject to the Carve-Out in all respects.

39.36. Limited Effect.  In the event of a conflict between the terms and provisions of the Term SheetDIP Credit Agreement and this Interim Order, the terms and provisions of this Interim Order shall govern.

40.37. Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

41.38. Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003, and any stay otherwise arising under such sections or under any other Bankruptcy Rule is hereby waived.

42.39. General Authorization.  The Debtors, the DIP Lenders, and the Prepetition Lenders are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

43.40. Retention of Exclusive Jurisdiction.  The Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Credit Agreement, and the ~~Term Sheet~~DIP Credit Agreement.

~~44.    Supplemental Interim Hearing.  The Supplemental Interim Hearing on the Motion shall be held on February ___, 2024, at ___:___.m, prevailing Pacific Time.  Not later than two business days after the date of this Interim Order, notice of the Motion, if not previously served, and the Supplemental Interim Hearing shall be filed with the Court, and served on the Notice Parties.  Oppositions may be filed through 4:00 pm prevailing Pacific Time on the day before the Supplemental Interim Hearing.  In the event no objections to entry of the Second Interim Order on the Motion are timely received, the Court may enter such Second Interim Order without the need for a hearing.~~

~~45.~~    Final Hearing.  The final hearing (the "Final Hearing") on the Motion shall be held on March ~~___,~~14, 2024, at ~~___:___~~10:00 a.m., prevailing Pacific Time.  On or before five (5) business days prior to the Final Hearing at 4:00 p.m. Pacific Time, any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served on the Notice Parties. In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter such Final Order without the need for the Final Hearing.

1    41.

2

3                                    **END OF ORDER**

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

43161552