## Exhibit A-2

**DIP CREDIT AGREEMENT (CHANGED PAGES ONLY)**

**SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

dated as of ~~February~~ March __, 2024,

among

Adobe Ranch, LLC,
Chiala LLC,
Dinuba Ranch, LLC,
Dixon East LLC,
Fry Road, LLC,
Hall Ranch LLC,
Jeffrey Ranch, LLC,
Johl LLC,
Lamb Ranch, LLC,
Marcucci Ranch, LLC,
Phelps Ranch, LLC,
Porterville LLC,
Rasmussen LLC,
Ratto Ranch, LLC,
Toor Ranch, LLC,
Trinitas Advantaged Agriculture Partners IV, LP,
Trinitas Farming, LLC,
Tule River Ranch, LLC, and
Turf Ranch LLC,

as Debtors and Debtors-in-Possession under Chapter 11 of the Bankruptcy Code,

as Borrowers,

and

THE LENDERS PARTY HERETO,

and

RABO AGRIFINANCE LLC,
as Administrative Agent

## TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ........................................................................................................ 1

    Section 1.01    Defined Terms ........................................................................................ 1
    Section 1.02    Terms Generally ................................................................................... 30
    Section 1.03    Accounting Terms; GAAP .................................................................. 30
    Section 1.04    Rates ..................................................................................................... 31
    Section 1.05    Resolution of Drafting Ambiguities .................................................... 31

ARTICLE II THE COMMITMENTS AND LOANS .............................................................. 32

    Section 2.01    The Loans ............................................................................................. 32
    Section 2.02    Borrowings of Loans ............................................................................ 32
    Section 2.03    Borrowing Procedure .......................................................................... 33
    Section 2.04    Evidence of Debt; Repayment of Loans .............................................. 34
    Section 2.05    Commitment Fees ............................................................................... 35
    Section 2.06    Interest on Loans ................................................................................. 35
    Section 2.07    Termination of Commitments ............................................................. 36
    Section 2.08    Optional and Mandatory Prepayments of Loans ................................. 36
    Section 2.09    Inability to Determine Rates; Benchmark Replacement Setting .......... 37
    Section 2.10    Increased Costs; Change in Legality ................................................... 39~~38~~
    Section 2.11    Breakage Payments ............................................................................. 40
    Section 2.12    Payments Generally; Pro Rata Treatment; Sharing of Setoffs ............ 41~~40~~
    Section 2.13    Taxes .................................................................................................... 42
    Section 2.14    Mitigation Obligations; Replacement of Lenders ............................... 45~~44~~
    Section 2.15    as of Funds from the egated accou~~te~~gated Post-Sale Remainder Account ............................................................................................... 47~~46~~

ARTICLE III REPRESENTATIONS AND WARRANTIES ................................................. 48

    Section 3.01    Organization; Powers ......................................................................... 49~~48~~
    Section 3.02    Authorization; Enforceability ............................................................. 49~~48~~
    Section 3.03    No Conflicts; No Default .................................................................... 49
    Section 3.04    Financial Condition; No Material Adverse Effect ............................... 49
    Section 3.05    Properties ............................................................................................. 50~~49~~
    Section 3.06    Intellectual Property ........................................................................... 50
    Section 3.07    Equity Interests and Subsidiaries ........................................................ 51~~50~~
    Section 3.08    Litigation ............................................................................................. 51
    Section 3.09    Material Agreements .......................................................................... 51
    Section 3.10    Federal Reserve Regulations ............................................................... 51
    Section 3.11    Investment Company Act, etc .............................................................. 52~~51~~
    Section 3.12    Use of Proceeds ................................................................................... 52
    Section 3.13    Taxes .................................................................................................... 52
    Section 3.14    No Material Misstatements ................................................................. 52
    Section 3.15    Labor Matters ...................................................................................... 52
    Section 3.16    Agreements with Affiliates ................................................................. 53~~52~~
    Section 3.17    Employee Benefit Plans ..................................................................... 53~~52~~

Case: 24-50211    Doc# 45-2    Filed: 03/07/24    Entered: 03/07/24 09:41:50    Page 3 of 18

~~45810720.1~~ 45810641.1

Section 3.18 Environmental Matters ................................................................................... 53
Section 3.19 Insurance ....................................................................................................... 54
Section 3.20 No Bank Accounts ........................................................................................ 555554
Section 3.21 Anti-Terrorism Law; Foreign Corrupt Practices Act ............................ 555554
Section 3.22 Case; DIP Orders; Secured Super-Priority Obligations .............................. 55
Section 3.23 Commercial Activity; Absence of Immunity ....................................... 575756

ARTICLE IV CONDITIONS PRECEDENT .................................................................................. 57

Section 4.01 Conditions to Effectiveness .......................................................................... 57
Section 4.02 Conditions to the Initial Loans and Withdrawals .............................. 595958
Section 4.03 Conditions to All Loans and Withdrawals .................................................. 59

ARTICLE V AFFIRMATIVE COVENANTS ................................................................................. 60

Section 5.01 Financial Statements, Reports, etc ............................................................... 60
Section 5.02 Litigation and Other Notices ................................................................ 636362
Section 5.03 Existence; Businesses and Properties .......................................................... 64
Section 5.04 Insurance ....................................................................................................... 64
Section 5.05 Obligations and Taxes .................................................................................. 65
Section 5.06 Employee Benefits ................................................................................ 666665
Section 5.07 Maintaining Records; Access to Properties and Inspections; ...................... 66
Section 5.08 Use of Proceeds ............................................................................................ 66
Section 5.09 Compliance with Environmental Laws; Environmental Reports ................ 67
Section 5.10 Additional Collateral .................................................................................... 67
Section 5.11 Security Interests; Further Assurances ........................................................ 67
Section 5.12 Maintenance of Corporate Separateness ...................................................... 68
Section 5.13 Priority of Liens ............................................................................................ 68
Section 5.14 Milestones ..................................................................................................... 69
Section 5.15 Bankruptcy Related Matters. ................................................................ 717170
Section 5.16 Budget Compliance ...................................................................................... 71
Section 5.17 Lender Calls ................................................................................................. 71
Section tstructuring Officer; Broker .......................................................................... 727271
Section 5.19 Material Agreements .................................................................................... 72

ARTICLE VI NEGATIVE COVENANTS ...................................................................................... 72

Section 6.01 Indebtedness .................................................................................................. 72
Section 6.02 Liens .............................................................................................................. 73
Section 6.03 Sale and Leaseback Transactions ......................................................... 757574
Section 6.04 Investments, Loans and Advances .............................................................. 75
Section 6.05 Mergers and Consolidations ........................................................................ 75
Section 6.06 Asset Sales .................................................................................................... 75
Section 6.07 Acquisitions .................................................................................................. 76
Section 6.08 Dividends ............................................................................................... 777776
Section 6.09 Transactions with Affiliates ................................................................. 777776
Section 6.10 Prepayments of Other Indebtedness; Modifications of Organizational Documents, Acquisition and Certain Other Documents, etc ....................... 77

Section 6.11   Limitation on Certain Restrictions on Subsidiaries ................................... 78
Section 6.12   Business; Employees .............................................................................. 78
Section 6.13   Limitation on Issuance of Capital ............................................. 797978
Section 6.14   Limitation on Accounting Changes; Change of Fiscal Year ............... 797978
Section 6.15   Permitted Accounts ................................................................................. 79
Section 6.16   No Further Negative Pledge ................................................................... 79
Section 6.17   Anti-Terrorism Law; Anti-Money Laundering ........................................ 79
Section 6.18   Embargoed Person ................................................................................... 79
Section 6.19   No Hedging ............................................................................................. 80
Section 6.20   Change of Auditors ................................................................................. 80
Section 6.21   Subsidiaries ............................................................................................. 80
Section 6.22   Change in Name or Location ................................................................... 80
Section 6.23   Additional Bankruptcy Matters ............................................................... 80
Section 6.24   Budget Variance ...................................................................................... 81
Section 6.25   Capital Expenditures ............................................................................... 81

ARTICLE VII OBLIGATIONS JOINT AND SEVERAL; SURETYSHIP WAIVERS ........................ 81

Section 7.01   Obligations Joint and Several .................................................................. 81
Section 7.02   Suretyship Waivers ................................................................................. 81

ARTICLE VIII EVENTS OF DEFAULT ........................................................................................ 85

Section 8.01   Events of Default .................................................................................... 85
Section 8.02   Rescission ............................................................................................... 90
Section 8.03   Application of Proceeds .......................................................................... 90

ARTICLE IX THE ADMINISTRATIVE AGENT .......................................................................... 91

Section 9.01   Appointment ............................................................................................ 91
Section 9.02   Administrative Agent in Its Individual Capacity ..................................... 92
Section 9.03   Exculpatory Provisions ........................................................................... 92
Section 9.04   Reliance by Agent ........................................................................ 949493
Section 9.05   Delegation of Duties ............................................................................... 94
Section 9.06   Successor Administrative Agent ............................................................. 94
Section 9.07   Non-Reliance on Agent and Other Lenders ................................... 959594
Section 9.08   Indemnification ...................................................................................... 95
Section 9.09   Erroneous Payments ..................................................................... 969695
Section 9.10   Withholding Taxes ................................................................................. 97
Section 9.11   Lender's Representations, Warranties and Acknowledgements ............. 98
Section 9.12   Security Documents ................................................................................ 98
Section 9.13   Administrative Agent May File Bankruptcy Disclosure and Proofs of Claim ...................................................................................................... 99

ARTICLE X MISCELLANEOUS ................................................................................................ 100

Section 10.01  Notices .................................................................................................. 100
Section 10.02  Waivers; Amendment ................................................................. 103103102

Section 10.03 Expenses; Indemnity; Damage Waiver ...................................................... 104
Section 10.04 Successors and Assigns .............................................................................. 106
Section 10.05 Survival of Agreement ................................................................ 110110109
Section 10.06 Counterparts; Integration; Effectiveness .................................................... 110
Section 10.07 Severability.................................................................................................. 110
Section 10.08 Right of Setoff; Marshalling; Payments Set Aside..................................... 110
Section 10.09 Governing Law; Jurisdiction; Consent to Service of Process .................... 111
Section 10.10 Waiver of Jury Trial .................................................................... 112112111
Section 10.11 Judicial Reference ....................................................................................... 112
Section 10.12 Headings...................................................................................................... 113
Section 10.13 Interest Rate Limitation............................................................................... 113
Section 10.14 Assignment and Assumption....................................................................... 113
Section 10.15 Waiver of Defenses; Absence of Fiduciary Duties ..................................... 113
Section 10.16 Reinstatement............................................................................... 114114113
Section 10.17 USA Patriot Act .......................................................................................... 114
Section 10.18 DIP Orders................................................................................................... 114

Case: 24-50211   Doc# 45-2   Filed: 03/07/24   Entered: 03/07/24 09:41:50   Page 6 of 18
45810720.1 45810641.1

"**Leases**" means any and all leases, subleases, tenancies, options, concession agreements, rental agreements, occupancy agreements, franchise agreements, access agreements, and any other agreements (including all amendments, extensions, replacements, renewals, modifications, and/or guarantees thereof), whether or not of record and whether now in existence or hereafter entered into, providing for (or affecting) the use or occupancy of all or any portion of any Real Property.

"**Legal Requirements**" means, as to any Person, the Organizational Documents of such Person, and any treaty, law (including the common law), statute, ordinance, code, rule, regulation, guidelines, license, permit requirement, Order, or determination of an arbitrator or a court or other Governmental Authority, and any interpretation thereof published by the applicable Governmental Authority or administrative procedures relating thereto established by the applicable Governmental Authority, in each case applicable to or binding upon such Person or any of its property, or to which such Person or any of its property is subject, in each case whether or not having the force of law. For purposes of Section 2.13, the term "applicable Legal Requirements" includes FATCA.

"**Lender Advisors**" means Focus Management Group USA, Inc., as advisors to the Lenders or certain members thereof.

"**Lender Expenses**" has the meaning specified in Section 10.03(a).

"**Lenders**" means (a) the financial institutions and other Persons party hereto as "**Lenders**" on the date hereof, and (b) each financial institution or other Person that becomes a party hereto pursuant to an Assignment and Assumption, other than, in each case, any such financial institution or Person that has ceased to be a party hereto pursuant to an Assignment and Assumption, pursuant to Section 10.04(b).

"**Lien**" means, with respect to any property, (a) any mortgage, deed of trust, lien (statutory or other), judgment lien, pledge, encumbrance, claim, charge, collateral assignment, hypothecation, deposit arrangement, security interest, or encumbrance of any kind, including, without limitation, all "liens" as defined by Section 111(37) of the Bankruptcy Code, including any easement, servitude, right-of-way, or other encumbrance on title to Real Property, in each of the foregoing cases whether voluntary or imposed or arising by operation of law, and any agreement to give any of the foregoing, (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease, or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such property, and (c) in the case of securities, any purchase option, call, or similar right of a third party with respect to such securities.

"**Liquidity**" means, as of any date of determination, the sum of all Qualified Cash on such date.

"**Loan**" means a loan made or deemed made by a Lender to Borrowers under Article II, including any ~~PIK~~Loans made in respect of interest, the Commitment Fee, or ~~PIK Interest that has been added to the outstanding principal amount of such Loan as provided herein), as well as any Lender Expense that has been capitalized as provided herein~~Lender Expenses made in accordance with Section 2.03, and each Pre-Closing Date Loan.

"**Loan Documents**" means this Agreement, the Notes (if any), the Security Documents, the DIP Orders, and any other document executed to evidence, secure, or support the Secured Obligations.

"**Margin Stock**" has the meaning assigned to it in Regulation U.

"**Material Adverse Effect**" means (a) a material adverse effect on, or material adverse change in, the condition (financial or otherwise), results of operations, assets, liabilities (contingent or otherwise),

19

45810720.1
45810891.2
Case: 24-50211    Doc# 45-2    Filed: 03/07/24    Entered: 03/07/24 09:41:50    Page 7 of 18

described in clauses (a), (b), (d), (e), (g) and (l) of Section 6.02; *provided*, *however*, upon the date of delivery of each Mortgage under Section 5.10 or 5.11 (if applicable), Permitted Collateral Liens means only those Liens that are (i) excepted as being prior to the Lien of such Mortgage as in the title insurance policy (or commitment) relating to such Mortgaged Property issued by the applicable Title Company, and (ii) otherwise Permitted Liens.

"**Permitted Liens**" has the meaning assigned to it in Section 6.02.

"**Permitted Third Party Liens**" has the meaning assigned to it in the Interim Order or Final Order, as applicable.

"**Permitted Variances**" means (i) all variances that are favorable to the financial condition and the interests of Borrowers and the interests of the Lenders, (ii) any variance (as compared to then Approved Budget) that is unfavorable to the financial condition and the interests of Borrowers or the interests of the Lenders and, in the case of this clause (ii), does not exceed (x) with respect to (A) aggregate receipts and (B) aggregate disbursements of Borrowers, shown on the Approved Budget as the line item labeled "Net Aggregate Receipts and Disbursements", ten percent (10%), tested every week on a cumulative basis since the beginning of the applicable Budget Compliance Period and (y) with respect to operating disbursements (excluding property taxes, professional fees and expenses and adequate protection claims), shown on the Approved Budget as the line item labeled "Aggregate Operating Disbursements", ten percent (10%), tested every week on a cumulative basis since the beginning of the applicable Budget Compliance Period, (iii) any variance resulting from the payment of principal and accrued and unpaid interest in connection with any prepayments made pursuant to Section 2.08 or the payment of any other amounts required to be paid to the Administrative Agent or Lenders under the Loan Documents, (iv) any variance resulting from the payment of expenses authorized to be paid pursuant to any interim cash collateral orders of the Bankruptcy Court and (v) any variance resulting from the payment of expenses of third parties paid in connection with any sale process, including for the preparation of an independent technical report and a market report..

"**Person**" means any natural person, corporation, business trust, joint venture, trust, association, company (whether limited in liability or otherwise), partnership (whether limited in liability or otherwise) or Governmental Authority, or any other entity, in any case, whether acting in a personal, fiduciary, or other capacity.

"**Petition Date**" has the meaning specified in the Preliminary Statements.

"~~PIK Commitment Fee~~" ~~has the meaning assigned to it in Section 2.05(a).~~

"~~PIK Interest~~" ~~has the meaning assigned to it in Section 2.06(d).~~

"**Platform**" has the meaning assigned to it in Section 10.01(d).

"**Post-Petition**" means the time period commencing immediately upon the filing of the Case.

"**Pre-Closing Date Loan**" means each of the Advance, the Second Advance, and any additional disbursement of funds advanced to Borrowers by Lenders prior to the Closing Date.

"**Post-Sale Account Withdrawal Notice**" has the meaning assigned to it in Section 2.15.

"**Preferred Stock**" means, with respect to any Person, any and all preferred or preference Equity Interests (however designated) of such Person, whether now outstanding or issued after the Closing Date.

# ARTICLE II
# THE COMMITMENTS AND LOANS

Section 2.01   **The Loans.**

(a)   Loans.  On the terms and subject to the conditions hereof and in the DIP Orders, each Lender agrees, following the Interim Order Entry Date and the satisfaction (or waiver) of the conditions to Borrowing set forth in Sections 4.01, 4.02 and 4.03, to make term loans to Borrowers from time to time during the period commencing on the Closing Date and ending on the Maturity Date, in an aggregate principal amount in Dollars for each such Borrowing not to exceed such Lender's unused Commitment (collectively, the "**Loans**") at such time; *provided* that (i) the aggregate principal amount of all Loans made by the Lenders shall not exceed (A) prior to the Final Order Entry Date, Six Million Five Hundred Thousand Dollars ($6,500,000), inclusive of Pre-Closing Date Loans; and (B) following the Final Order Entry Date, the aggregate amount of the Commitments in effect on the Closing Date (immediately prior to any funding thereof); and (ii) the Lenders shall not be obligated to fund more than one (1) Borrowing in any calendar week.

(b)   Loans Generally.  Following the making of any Loan (inclusive of the Pre-Petition Loans) by a Lender, the Commitment of such Lender to make Loans shall be automatically and permanently reduced by the amount of such Loan so made by such Lender, and shall automatically and permanently terminate when reduced to $0.  Each Pre-Petition Loan and, once funded, each other Loan, shall be a "Loan" for all purposes under this Agreement and the other Loan Documents. Amounts borrowed under Section 2.01 and repaid or prepaid may not be reborrowed.  Effective as of the Self-Funding Date, the Commitments, as they relate to the obligation to make further Loans, shall automatically be reduced to $0, and the term "Commitment" shall refer to the obligations of the Lenders to permit Withdrawals from the Segregated Post-Sale Remainder Account in accordance with the provisions of the Loan Documents.

Section 2.02   **Borrowings of Loans.**

(a)   Each Loan shall be made as part of a Borrowing consisting of Loans made by the Lenders ratably in accordance with their applicable Commitments.  Any such Borrowing shall be in an aggregate principal amount that is (i) an integral multiple of $500,000 and not less than $1,000,000, or (ii) equal to the remaining available balance of the Commitments.  Unless the Required Lenders otherwise agree in their sole discretion, no more than one Borrowing may be requested to be made in any ~~Budget Compliance Period~~calendar week.

(b)   Each Lender shall make each Loan to be made by it hereunder on the proposed date thereof by not later than 11:00 a.m. Pacific Time, by wire transfer of immediately available funds to such account as the Administrative Agent may designate from time to time, and upon satisfaction or waiver of the applicable conditions precedent specified herein and receipt by the Administrative Agent of all of the proceeds of the Loans, the Administrative Agent will remit the amounts so received, in like funds, to the Borrower Operating Account except, in the case of the Loans being made on the Initial Credit Extension Date, as provided in the Funding Authorization Letter (which may provide that a portion of such funds be remitted to an account or accounts other than the Borrower Operating Account).

(c)   Unless the Administrative Agent has received written notice from a Lender prior to the date of any Borrowing that such Lender will not make available to the Administrative Agent such Lender's portion of such Borrowing, the Administrative Agent may assume that such Lender has made such portion available to the Administrative Agent on the date of such Borrowing in accordance with Section 2.02(b), and the Administrative Agent may (but shall not be obligated to), in reliance upon such assumption, make available to Borrowers on such date a corresponding amount.  If the Administrative

32

(f) to the extent that the use of proceeds of such requested Loans requires consent from the Required Lenders as provided for herein, a representation and warranty that Borrowers have received such approval; and

(g) that the conditions set forth in Sections 4.03(b), (c), and (d) and, in the case of any Borrowing on or after the Initial Credit Extension Credit Date, (e) are satisfied as of the date of the notice.

Promptly following receipt of a Borrowing Request in accordance with this Section 2.03, the Administrative Agent shall advise each Lender of the details thereof and of the amount of such Lender's Loan to be made as part of the requested Borrowing. Borrowers further authorize the Administrative Agent to make Loans to pay, and to pay directly to the Lenders and/or the Administrative Agent, as applicable: (i) interest accrued on the Loans as and when due and payable hereunder, (ii) the Commitment Fee payable in connection with any Borrowing, or (ii) Lender's Fees, notwithstanding that Borrowers may not have requested a disbursement of such amounts. The Administrative Agent in its sole discretion (unless otherwise directed by the Required Lenders) may (but shall not be obligated to do so) make such disbursements notwithstanding that the Default or Event of Default exists or that any other applicable condition precedent to Borrowings hereunder has not been satisfied. Such disbursements shall constitute Loans, be added to the outstanding principal balance of the Loans, and reduce the remaining availability of the Commitments. The foregoing authorization is irrevocable, and no further direction or authorization from any Borrower is necessary for the Administrative Agent to make such Loans.

**Section 2.04**    **Evidence of Debt; Repayment of Loans.**

(a) Borrowers hereby unconditionally promise to pay to the Administrative Agent, for the account of each Lender, the unpaid principal amount of each Loan (including Loans ~~and all PIK~~in respect of interest, the Commitment ~~Fees~~Fee, ~~PIK Interest, and~~or Lender Expenses ~~capitalized~~made in accordance with Section 2.03 and added to the aggregate outstanding principal amount of Loans of such Lender) on the Maturity Date. On the Maturity Date, all funds in the Borrower Operating Account or the Segregated Post-Sale Remainder Account shall be applied by the Administrative Agent on behalf of Borrowers in accordance with the priorities of payment set forth in Section 8.03.

(b) Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of Borrowers to such Lender resulting from each Loan made by such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time under this Agreement.

(c) The Administrative Agent shall maintain an account in which it will record (i) the amount of each Loan made hereunder, (ii) the amount of any principal or interest due and payable or to become due and payable from Borrowers to each Lender hereunder, and (iii) the amount of any sum received by the Administrative Agent hereunder for the account of the Lenders and each Lender's share thereof.

(d) The entries made in the accounts maintained pursuant to Sections 2.04(b) and (c) shall be *prima facie* evidence of the existence and amounts of the obligations therein recorded absent manifest error; *provided* that the failure of any Lender or the Administrative Agent to maintain such accounts or any error therein shall not in any manner affect the obligations of Borrowers to pay, and perform, the Secured Obligations in accordance with the Loan Documents. In the event of any conflict between the accounts and records maintained by any Lender and the accounts and records of the Administrative Agent in respect of such entries, the accounts and records of the Administrative Agent shall control in the absence of manifest error.

34

(e) Any Lender by written notice to Borrowers (with a copy to the Administrative Agent) may request that Loans made by it be evidenced by a promissory note. In such event, Borrowers shall promptly (and, in all events, within five (5) Business Days of receipt of such request) prepare, execute, and deliver to such Lender a promissory note payable to the order of such Lender (or, if requested by such Lender, to such Lender and its registered assigns) in the form of Exhibit H. Thereafter, the Loans evidenced by such promissory note and interest thereon shall at all times (including after assignment pursuant to Section 10.04) be represented by one or more promissory notes in such form payable to the order of the payee named therein (or, if such promissory note is a registered note, to such payee and its registered assigns).

Section 2.05     **Commitment Fees**. Borrowers shall pay to each Lender on the date of each Borrowing of a Loan, as fee compensation for such Lender having committed to make such Loan on such date, a commitment fee (a "**Commitment Fee**") in an amount equal to one and one-half percent (1.50%) of such Loan made by such Lender on such date. Commitment Fees shall be fully and irrevocably due and payable to each Lender on each date that such Lender makes a Loan pursuant to Section 2.01~~; provided that such Commitment Fee shall be capitalized and added to the aggregate outstanding principal amount of such Loan on such date in lieu of cash payment (and shall be treated as principal of such Loan at all times thereafter) (each such capitalized Commitment Fee, a "PIK Commitment Fee")~~. Commitment Fees shall be fully earned when due and shall not be refundable for any reason whatsoever. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER EXPRESSLY WAIVES THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE OR LAW THAT PROHIBITS OR MAY PROHIBIT THE COLLECTION OF THE COMMITMENT FEE. Borrowers expressly agree that: (A) the Commitment Fee is reasonable and is the product of an arm's length transaction between sophisticated business people, ably represented by counsel; (B) the Commitment Fee shall be payable notwithstanding the then-prevailing market rates at the time payment is made; (C) there has been a course of conduct between the Lenders and Borrowers giving specific consideration in this transaction for such agreement to pay the Commitment Fee; and (D) Borrowers shall be estopped hereafter from claiming differently than as agreed to in this paragraph. Borrowers expressly acknowledge that their agreement to pay the Commitment Fee to the Lenders as herein described is a material inducement for the Lenders to provide the Commitments and provide the Loans.

Section 2.06     **Interest on Loans**.

(a) Subject to the provisions of Section 2.06(c), the Loans comprising each SOFR Borrowing shall bear interest on the outstanding principal amount thereof from the date made or deemed made (including, in the case of Pre-Closing Date Loans, from the date of disbursement) through repayment (whether by acceleration or otherwise) at a rate per annum equal to Term SOFR for the Interest Period in effect for such Borrowing, plus the Applicable Margin in effect from time to time.

(b) Once capitalized and added to the outstanding amount of the Loans on each applicable date set forth in Section 2.05(a) or Section 10.03, such amounts so added to principal shall bear interest as set forth in this Section 2.06.

(c) Upon the occurrence and during the continuance of an Event of Default, upon notification by the Administrative Agent (acting at the direction of the Required Lenders) to Borrowers, all outstanding Obligations shall bear interest at a per annum rate equal to two percent (2%) plus the rate otherwise applicable to Loans as provided in Section 2.06(a) (the rate thus augmented, the "**Default Rate**"), and thereafter such Obligations shall bear interest at the Default Rate to the fullest extent permitted by applicable laws and without further notice, motion, or application to, or hearing before, or order from, the Bankruptcy Court.

35

(d) Accrued interest on the Loans shall be payable in arrears in cash on each Interest Payment Date and at such other times as may be specified herein; ~~provided that interest shall be capitalized and added to the aggregate outstanding principal amount of the Loans on such Interest Payment Date in lieu of cash payment (and shall be treated as advanced hereunder and as principal of the Loans at all times thereafter) (such capitalized interest, "PIK Interest");~~ *provided ~~further~~* that (i) interest accrued pursuant to Section 2.06(c) (including interest on past due interest and interest accruing on the Prepetition Loans at the Default Rate) and all interest accrued but unpaid on or after the Maturity Date shall be payable on demand in cash, (ii) in the event of any repayment or prepayment of all or any portion of the Loans, accrued interest on the principal amount repaid or prepaid shall be payable in cash on the date of such repayment or prepayment. Interest hereunder shall be due and payable in accordance with the terms hereof before and after judgment, and before and after the commencement of any proceeding under any Debtor Relief Law to the extent permitted by applicable law.

(e) All interest hereunder shall be computed on the basis of a year of 360 days and shall be accrue and be payable for the actual number of days elapsed (including the first day, but excluding the last day); *provided* that any Loan that is repaid on the same day on which it is advanced shall, subject to Section 2.12, bear interest for one day. Each determination by the Administrative Agent of an interest rate or fee hereunder shall be conclusive and binding for all purposes, absent manifest error.

**Section 2.07  Termination of Commitments.** To the extent not terminated earlier, the DIP Commitments of each Lender shall terminate immediately and without further action on the Maturity Date. Borrowers may terminate the unused DIP Commitments of the Lenders in full (and not in part) at any time in writing delivered to the Administrative Agent at least three (3) Business Days prior to the date of such termination, and such notice shall be irrevocable.

**Section 2.08  Optional and Mandatory Prepayments of Loans.**

(a) Optional Prepayments. Borrowers shall have the right at any time and from time to time to prepay any Borrowing, in whole or in part, without premium or penalty, subject to the requirements of this Section 2.08; *provided* that each partial prepayment shall be in an amount that is an integral multiple of One Hundred Thousand Dollars ($100,000) and not less than Two Hundred Thousand Dollars ($200,000) or, if less, the outstanding principal amount of such Borrowing.

(b) Material Agreements. Not later than three (3) Business Days following the receipt of any Net Cash Proceeds of any termination payments, damages (including liquidated damages), indemnity payments, or other extraordinary payments under or in respect of any Material Agreement of Borrowers, in excess of Fifty Thousand Dollars ($50,000) individually or One Hundred Thousand Dollars ($100,000) in the aggregate per calendar year, Borrowers shall apply one hundred percent (100%) of such Net Cash Proceeds to make prepayments in accordance with Section 2.08(f).

(c) Asset Sales. Not later than three (3) Business Days following the receipt of any Net Cash Proceeds of any Asset Sale by Borrowers, Borrowers shall apply one hundred percent (100%) of such Net Cash Proceeds to make prepayments in accordance with Section 2.08(f).

(d) Debt Issuance or Equity Issuance. Not later than three (3) Business Days following the receipt of any Net Cash Proceeds of any Debt Issuance or Equity Issuance by Borrowers, Borrowers shall make prepayments in accordance with Section 2.08(f) in an aggregate principal amount equal to 100% of such Net Cash Proceeds.

(e) Casualty Events. Not later than three (3) Business Days following the receipt of any Net Cash Proceeds from a Casualty Event by Borrowers, unless otherwise agreed to in writing by

**Section 2.12   Payments Generally; Pro Rata Treatment; Sharing of Setoffs.**

(a)     Borrowers shall make each payment required to be made by it hereunder or under any other Loan Document (whether of principal, interest, or fees, or of amounts payable under Section 2.10, 2.11 or 2.13, or otherwise) on or before the time expressly required hereunder or under such other Loan Document for such payment (or, if no such time is expressly required, prior to 1 p.m. Pacific Time), on the date when due (except for payments of PIK Commitment Fees, PIK Interest, and/or Lender Expenses to be capitalized in accordance with the provisions hereof), in immediately available funds, without setoff, deduction, or counterclaim.  Any amounts received after such time on any date may, in the discretion of the Administrative Agent, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon.  All such payments shall be made to the Administrative Agent at its account most recently designated by it for such purpose by notice to Borrowers, except that payments pursuant to Sections 2.10, 2.11, 2.13 and 10.03 shall be made directly to the Persons entitled thereto, and payments pursuant to other Loan Documents shall be made to the Persons specified therein.  The Administrative Agent shall distribute any such payments received by it for the account of any other Person to the appropriate recipient promptly following receipt thereof.  If any payment under any Loan Document is due on a day that is not a Business Day, unless specified otherwise, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension, *provided* that, if such extension would cause payment of interest on or principal of Loans to be made in the next succeeding calendar month, such payment shall be made on the immediately preceding Business Day.  All payments under each Loan Document shall be made in Dollars.

(b)     If at any time insufficient funds are received by and available to the Administrative Agent to pay fully all amounts of principal, interest, and fees then due hereunder, such funds shall be applied (1) *first*, to payment of that portion of the Obligations constituting fees, indemnities, expenses, and other amounts (including reasonable fees, charges, and disbursements of counsel to the Administrative Agent) then due and payable to the Administrative Agent in its capacity as such, until payment in full of all such fees has been made, (2) *second,* to payment of interest and fees then due hereunder, ratably among the parties entitled thereto in accordance with the amounts of interest and fees then due to such parties, (3) *third*, to the payment of principal then due hereunder, ratably among the parties entitled thereto in accordance with the amounts of principal then due to such parties, and (4) *fourth*, to the payment of all other Obligations then due hereunder, ratably among the parties entitled thereto in accordance with the amount of such amounts then due to such parties.

(c)     If any Lender, by exercising any right of setoff or counterclaim (including pursuant to Section 10.08) or otherwise (including by exercise of its rights under the Security Documents), obtains payment in respect of any principal of or interest on any of its Loans resulting in such Lender receiving payment of a greater proportion of the aggregate amount of its Loans and accrued interest thereon than the proportion received by any other Lender, then the Lender receiving such greater proportion shall purchase (for cash at face value) participations in the Loans of other Lenders to the extent necessary so that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Loans; *provided* that (i) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest, and (ii) the provisions of this Section 2.12(c) shall not be construed to apply to any payment made by Borrowers pursuant to and in accordance with the express terms of this Agreement or any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans to any Eligible Assignee or participant.  Each Borrower consents to the foregoing and agrees, to the extent it may effectively do so under applicable Legal Requirements, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against any Borrower rights of setoff and counterclaim

(d) subject to the terms of the Interim Order or the Final Order, as applicable, object to, contest, delay, prevent, or interfere with in any material manner the exercise of rights and remedies by the Administrative Agent or the Lenders with respect to the Collateral following the occurrence of an Event of Default (*provided* that Borrowers may contest or dispute whether an Event of Default has occurred);

(e) seek, consent to, or permit to exist, without the prior written consent of the Administrative Agent, at the direction of Required Lenders, any order granting authority to take any action that is prohibited by the terms of this Agreement, the Interim Order, the Final Order, or the other Loan Documents, or refrain from taking any action that is required to be taken by the terms of this Agreement, the Interim Order, the Final Order, or any of the other Loan Documents;

(f) except (1) as expressly provided or permitted hereunder (it being understood that any payment made pursuant to the Approved Budget (subject to Permitted Variances) is permitted hereunder), (2) with the prior consent of the Required Lenders in their sole discretion, or (3) as provided pursuant to any other Order of the Bankruptcy Court acceptable to Required Lenders, make any payment or distribution on account of any Indebtedness arising prior to the Petition Date;

(g) make any payment, or set aside funds for the purpose of making any payments, or otherwise transfer any economic value (including the payment of any fees, costs, or expenses of any advisors) to any direct or indirect equity holder of Borrowers solely in its capacity as such (except to the extent such payments are made pursuant to an Order of the Bankruptcy Court); or

(h) without the prior written consent of the Required Lenders, make, enter into, or implement any amendment, waiver, supplement, or other modification to the Farm Services Agreement, any employment agreement, or employee compensation plan, in each case, solely to the extent such agreement or compensation plan relates to an Executive Officer, or pay or cause to be paid any amount provided for in such agreements or plans before the date on which such amount becomes due and payable pursuant to the terms of the such agreements or plans, as applicable, or pay or cause to be paid any bonus, incentive, retention, severance, change of control, or termination payments pursuant to the terms of such agreements or plans, as applicable, including, without limitation, any transaction or other bonus previously awarded but unpaid (it being understood that "**Executive Officer**" means any of the [Chief Executive Officer, Chief Financial Officer, or Principal of the Borrower Representative)].

**Section 6.24** **Budget Variance.** As of any Variance Testing Date for the immediately preceding Budget Compliance Period, not allow any variances to exist from the Approved Budget, except for Permitted Variances.

**Section 6.25** **Capital Expenditures.** Make any Capital Expenditures except to the extent reflected in the Approved Budget (subject to Permitted Variances).

# ARTICLE VII
# OBLIGATIONS JOINT AND SEVERAL; SURETYSHIP WAIVERS

**Section 7.01** **Obligations Joint and Several.** The obligations of all Borrowers in respect of the Loans shall be joint and several.

**Section 7.02** **Suretyship Waivers.** To the extent that the obligations of any Borrower in respect of the Loans render, or are deemed to render, it a guarantor or surety of any other Borrower (any Borrower so deemed to be a guarantor or surety, for purposes of this Section 7.02, a "*Guarantor*"):

percentage of Lenders required to waive, amend, or modify any rights thereunder or make any determination or grant any consent thereunder, without the written consent of each Lender.

(vi) except as expressly permitted in this Agreement or any Security Document, release all or substantially all of the Collateral from the Liens of the Security Documents or alter the relative priorities of the Obligations entitled to the Liens of the Security Documents, except in connection with a "credit bid" undertaken by the Administrative Agent at the direction of the Required Lenders pursuant to Section 363(k), Section 1129(b)(2)(a)(ii), or any other section of the Bankruptcy Code, or any other sale or other disposition of assets in connection with other Debtor Relief Laws, or an enforcement action with respect to the Collateral permitted pursuant to the Loan Documents;

(vii) change Section 10.04(h) without the consent of each Granting Lender all or any part of whose Loans are being funded by any SPC at the time of any such amendment, waiver, or modification;

(viii) change Section 10.04(b) in a manner that further restricts assignments thereunder without the written consent of each Lender;

(ix) permit assignments by Borrowers of their rights or obligations under the DIP Term Facility without the written consent of each Lender;

(x) subordinate the Obligations under the Loan Documents to any other Indebtedness; or

(xi) except as provided by operation of law and otherwise permitted hereunder, amend or modify the Superpriority Claims status of the Obligations under the DIP Orders or under any Loan Document;

*provided*, *further*, that no such agreement shall amend, modify, or otherwise affect the rights or duties of the Administrative Agent without the prior written consent of the Administrative Agent.

(c) Without the consent of any other Person, Borrowers and the Administrative Agent may (at the direction of the Required Lenders) enter into any amendment or waiver of any Loan Document, or enter into any new agreement or instrument, to effect the granting, perfection, protection, expansion, or enhancement of any security interest in any Collateral or additional property to become Collateral for the benefit of the Secured Parties, or as required by applicable Legal Requirements to give effect to, or protect any security interest for the benefit of the Secured Parties, in any property or assets so that the security interests therein comply with applicable Legal Requirements.

**Section 10.03 Expenses; Indemnity; Damage Waiver.**

(a) Subject to review, allowance, and authorization by the Bankruptcy Court, Borrowers agree to pay (i) all reasonable and documented out-of-pocket costs and expenses for the Administrative Agent or any Lender or the Lender Advisors incurred by the Administrative Agent, the Lenders and any of their respective Affiliates, in connection with the structuring, documentation, negotiation, arrangement, and syndication of the credit facilities provided for herein and any credit or similar facility refinancing, extending, or replacing, in whole or in part, the credit facilities provided herein, including the preparation, negotiation, execution, delivery, and administration of this Agreement and the other Loan Documents, or any amendments, modifications, or waivers of the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby are consummated) or any other document or matter requested by Borrowers, (ii) all reasonable and documented out-of-pocket costs and expenses of

creating, perfecting, recording, maintaining, and preserving Liens in favor of the Agent for the benefit of the Secured Parties, including filing and recording fees, expenses, and taxes, stamp or documentary taxes, search fees, title insurance premiums, and reasonable fees, expenses, and other charges of counsel to the Administrative Agent, and (iii) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent or any Lender (including the fees, charges, and disbursements of any counsel or other advisor for the Administrative Agent or any Lender, including the Lender Advisors) in connection with the enforcement or protection of its rights (A) in connection with this Agreement and the other Loan Documents, including its rights under this Section 10.03, or (B) in connection with the Loans made hereunder, including all such reasonable and documented out-of-pocket expenses incurred during any workout, restructuring, or negotiations in respect of such Loans (all of the foregoing, collectively, the "**Lender Expenses**"). Lender Expenses shall be ~~capitalized and~~ paid in cash as provided in Section 2.03, with the amount thereof added to the aggregate outstanding principal amount of the ~~DIP~~ Loans on the date incurred, in lieu of cash payment (and shall be treated as advanced hereunder and as principal of the ~~DIP~~ Loans at all times thereafter).

(b) Borrowers agree to indemnify the Administrative Agent, each Lender, and each of their respective Related Persons (each such Person being called an "**Indemnitee**") against, and to hold each Indemnitee harmless from, all reasonable out-of-pocket costs and any and all losses, claims, damages, liabilities, fees, fines, penalties, actions, judgments, suits, and related expenses, including reasonable Advisors fees, charges, and disbursements, incurred by, imposed on, or asserted against any Indemnitee, directly or indirectly, arising out of, in any way connected with, or as a result of (i) the execution, delivery, performance, administration, or enforcement of the Loan Documents or any agreement or instrument contemplated therein, or the performance by the parties thereto of their respective obligations thereunder, (ii) any actual or proposed use of the proceeds of the Loans, (iii) any claim, litigation, investigation, or proceeding relating to any of the foregoing, whether or not any Indemnitee is a party thereto, (iv) any actual or alleged presence or Release or threatened Release of Hazardous Materials, on, at, under, or from any property owned, leased, or operated by Borrowers at any time, or any Environmental Claim or threatened Environmental Claim related in any way to Borrowers, (v) any past, present, or future non-compliance with, or violation of, Environmental Laws or Environmental Permits applicable to any Borrower, or any Borrower's business, or any property presently or formerly owned, leased, or operated by any Borrower or its predecessors in interest, (vi) the environmental condition of any property owned, leased, or operated by any Borrower at any time, or the applicability of any Legal Requirements relating to such property, whether or not occasioned wholly or in part by any condition, accident, or event caused by any act or omission of any Borrower, (vii) the imposition of any environmental Lien encumbering any Real Property, (viii) the consummation of the Transactions and the other transactions contemplated hereby, or (ix) any actual or prospective action, claim, suit, litigation, investigation, inquiry, or proceeding relating to any of the foregoing, whether based on contract, tort, or any other theory, whether brought by a third party or by any Borrower, or otherwise, and regardless of whether any Indemnitee is a party thereto (all of the foregoing, collectively, the "**Indemnified Liabilities**"); *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities, or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted, in whole or in part, from the gross negligence, bad faith, or willful misconduct of such Indemnitee.

(c) The provisions of this Section 10.03 shall remain operative and in full force and effect regardless of the expiration of the term of this Agreement, the consummation of the Transactions and the other transactions contemplated hereby, the repayment of the Loans and any other Obligations, the release of all or any portion of the Collateral, the expiration of the Commitments, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Administrative Agent or any Lender. All amounts due under this Section 10.03 shall be accompanied by reasonable documentation with respect to any reimbursement, indemnification, or other amount requested.

are in addition to other rights and remedies (including other rights of setoff) that such Lender may have. Each Lender agrees to notify Borrowers and the Administrative Agent promptly after any such setoff and application; *provided*, *however*, that in no event shall the failure to give such notice affect the validity or enforceability of any such setoff, subject to the Remedies Notice Period. Neither the Administrative Agent nor any Lender shall be under any obligation to marshal any assets in favor of any Borrower or any other Person or against or in payment of any or all of the Obligations. To the extent that any Borrower makes a payment or payments to the Administrative Agent or Lenders (or to the Administrative Agent, on behalf of Lenders), or the Administrative Agent or Lender enforces any security interests or exercises any right of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, and/or required to be repaid to a trustee, receiver, or any other party under any Debtor Relief Law or any equitable cause, then, to the extent of such recovery, the obligation or part thereof originally intended to be satisfied shall be revived and continue in full force and effect as if such payment or payments had not been made or such enforcement or setoff had not occurred.

**Section 10.09** **Governing Law; Jurisdiction; Consent to Service of Process.**

(a) This Agreement and the other Loan Documents and any claim, controversy, dispute, or cause of action (whether sounding in contract law or tort law or otherwise) based upon, arising out, of or relating to this Agreement or any other Loan Document (except, as to any other Loan Document, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed and enforced in accordance with the laws of the State of California, without giving effect to any choice of law principles, other than mandatory principles that are not permitted to be waived, that would apply the laws of another jurisdiction and, to the extent applicable, the Bankruptcy Code.

(b) Each of the Borrowers and the Secured Parties hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have or abstains from jurisdiction, the courts of the State of California and of the United States District Court of the Northern District of California, and any appellate court from any thereof, in any action or proceeding arising out of or relating to any Loan Document, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in the Bankruptcy Court and, if the Bankruptcy Court does not have or abstains from jurisdiction, such California State court or, to the extent permitted by applicable Legal Requirements, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable Legal Requirements. To the extent not required to be brought in Bankruptcy Court, nothing in this Agreement or any other Loan Document or otherwise shall affect any right that the Administrative Agent or any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against Borrowers or its properties in the courts of any jurisdiction, and hereby submits to the jurisdiction of any such court.

(c) Borrowers and Secured Parties hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable Legal Requirements, any objection that they may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in Section 10.09(b). Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable Legal Requirements, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d) Each party to this Agreement irrevocably consents to service of process in any action or proceeding arising out of or relating to any Loan Document in the manner provided for notices

111

# ANNEX I

## Commitments

| Lender | Commitment |
|---|---|
| Rabo AgriFinance LLC | $30,000,000 |

Annex I

45810720.1
4083089.1

Case: 24-50211    Doc# 45-2    Filed: 03/07/24    Entered: 03/07/24 09:41:50    Page 18 of 18