**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and
Debtors in Possession*

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>TRINITAS ADVANCED AGRICULTURE PARTNERS IV, LP, *et al.*,[1]<br><br>Debtors. | Case No. 24-50211 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING AND APPROVING BID PROCEDURES, (B) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING THE NOTICE PROCEDURES, (D) AUTHORIZING ENTRY INTO ONE OR MORE STALKING HORSE AGREEMENTS, AND (E) SETTING A DATE FOR THE SALE HEARING; AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, AND (C) PAYMENT OF BID PROTECTIONS, IF APPLICABLE**<br><br>Date/Time: April 26, 2024, 10:00 a.m. (Pacific Time)<br>Place: **Tele/Videoconference Appearances Only**<br>United States Bankruptcy Court, 450 Golden Gate Avenue, Courtroom 17, 16th Floor, San Francisco, CA 94102 |

---

[1] The last four digits of Trinitas Advanced Agriculture Partners IV, LP's tax identification number are 3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/trinitas. The Debtors' service address is 2055 Woodside Road, Suite 195, Redwood City, CA 94061.

# **TABLE OF CONTENTS**

I.     JURISDICTION AND VENUE ................................................................ 2

II.    SUMMARY OF RELIEF REQUESTED ................................................... 2

III.   BACKGROUND ...................................................................................... 3

    A.     General Background ....................................................................... 3

    B.     Background Regarding the Sale Process .......................................... 3

    C.     Postpetition Marketing of the Property .......................................... 4

IV.    PROPOSED BID AND SALE PROCEDURES......................................... 5

    A.     Property to Be Sold ......................................................................... 5

    B.     The Sale Schedule ........................................................................... 6

    C.     The Bid Procedures ......................................................................... 8

    D.     Stalking Horse Agreement ............................................................ 12

    E.     The Sale Notice Procedures .......................................................... 13

    F.     Procedures for Assumption and Assignment of the Purchased Contracts ........... 15

        1.     Cure Notice Procedures ..................................................... 15

        2.     Effective Date of Assumption and Assignment....................... 19

    G.     Sale Free and Clear of All Liens, Claims, Encumbrances, and Interests.............. 20

V.     ARGUMENT ........................................................................................ 20

    A.     The sale of the assets is a product of the Debtors' reasonable business judgment. ....... 20

    B.     The Bid Procedures are appropriate and will maximize the value received for the Property. ........ 22

    C.     The option to provide for bid protection in the form of a break-up fee and expense reimbursement has become a recognized and necessary practice and is appropriate under the circumstances. .......................... 24

    D.     Notice of the proposed sale is reasonable under the circumstances. .................. 26

    E.     The Successful Bidder should be granted the protection of Bankruptcy Code section 363(m). ...... 27

    F.     The Purchase Agreement is not the subject of collusive bidding under Bankruptcy Code section 363(n). ....... 28

    G.     Sale of the Property should be free and clear of liens, claims, encumbrances, and interests............ 28

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

H.     The assumption and assignment of the Contracts and the Procedures for assumption and assignment should be authorized. ................................................. 30

I.      Credit bidding should be authorized. .................................................................... 32

VI.     REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004 AND 6006 ................... 34

VII.    NOTICE ........................................................................................................................ 34

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

# **TABLE OF AUTHORITIES**

## **CASES**

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*
476 F.3d 665 (9th Cir. 2007) ................................................................ 22, 30

*Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*
103 B.R. 524 (Bankr. D.N.J. 1988) ....................................................... 31

*Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*
432 F.3d 448 (3d Cir. 2006) .................................................................. 33

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
60 B.R. 612 (Bankr. S.D.N.Y. 1986) ..................................................... 30

*EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*
139 B.R. 585 (S.D.N.Y. 1992) ............................................................... 31

*F.D.I.C. v. Castetter*
184 F.3d 1040 (9th Cir. 1999) ............................................................... 30

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*
331 B.R. 251 (N.D. Tex. 2005) .............................................................. 22

*In re 995 Fifth Ave. Assocs.*
96 B.R. 24 (Bankr. S.D.N.Y. 1992) ....................................................... 25

*In re Abbotts Dairies of Pa.*
788 F.2d 143 (3d Cir. 1986) .............................................................. 21, 27

*In re Atlanta Packaging Prods. Inc.*
99 BR. 124 (Bankr. N.D. Ga. 1988) ...................................................... 22

*In re Barnes Bay Dev. Ltd.*
Case No. 11-10792 (PJW) (Bankr. D. Del. May 19, 2011) .................... 23

*In re Bel Air Assocs., Ltd.*
706 F.2d 301 (10th Cir. 1983) ............................................................... 27

*In re Bygaph, Inc.*
56 B.R. 596 (Bankr. S.D.N.Y. 1986) ..................................................... 31

*In re Calpine Corp.*
Case No. 05-60200 (Bankr. S.D.N.Y. Dec. 6, 2006) ............................ 23

*In re Castre*
312 B.R. 426 (Bankr. D. Colo. 2004) .................................................... 21

*In re Conex Holdings LLC*
Case No. 11-10501(CSS) (Bankr. D. Del. Sept. 14, 2011) .................... 23

*In re Continental Airlines, Inc.*
780 F.2d 1223 (5th Cir. 1986) ............................................................... 21

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*In re CXM, Inc.*
    307 B.R. 94 (Bankr. N.D. Ill. 2004) ...................................................................... 26

*In re Dana Corp.*
    Case No. 06-10354 (Bankr. S.D.N.Y. Oct. 19, 2006) ........................................... 23

*In re Delaware & Hudson Ry. Co.*
    124 B.R. 169 (D. Del. 1991) ................................................................................ 21

*In re Delphi Corp.*
    Case No. 05-44481 (Bankr. S.D.N.Y. June 22, 2006) .......................................... 23

*In re East West Resort Dev. V, L.P., L.L.L.P.*
    Case No. 10-10452 (BLS) (Bankr. D. Del. March 31, 2010) ............................... 23

*In re Elliot*
    94 B.R. 343 (E.D. Pa. 1988) ................................................................................ 29

*In re Fin'l News Network, Inc.*
    126 B.R. 152 (Bankr. S.D.N.Y. 1991) ................................................................. 22

*In re Fisker Auto. Hldgs, Inc.*
    No. 13-13087 (KG) (Bankr. D. Del. Jan. 23, 2014) ............................................ 33

*In re Foamex Int'l Inc.*
    09-10560, (Bankr. D. Del. May 27, 2009) ........................................................... 33

*In re Food Barn Stores, Inc.*, 107 F.3d 558 (8th Cir. 1997) ........................................ 22

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*
    No. 2:16-bk-17463-ER, 2016 Bankr. LEXIS 4714 (Bankr. C.D. Cal. July 6, 2016) ............. 33

*In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. Sept. 22, 2009) ...................... 33

*In re Hipcricket, Inc.*
    Case No. 15-10104 (LSS) (Bankr. D. Del., Feb. 11, 2015) .................................. 25

*In re IMRIS, Inc.*
    Case No. 15-11133 (CSS) (Bankr. D. Del. June 16, 2015) ................................... 23

*In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*
    77 B.R. 15 (Bankr. E.D. Pa. 1987) ...................................................................... 21

*In re Integrated Res.*
    147 B.R. 650 (S.D.N.Y. 1992) ....................................................................... 22, 25

*In re Ionosphere Clubs, Inc.*
    100 B.R. 670 (Bankr. S.D.N.Y. 1989) ................................................................. 21

*In re Lajijani*
    325 B.R. 282 (9th Cir. B.A.P. 2005) .................................................................... 22

*In re Lionel Corp.*
    722 F.2d 1063 (2d Cir. 1983) ............................................................................... 21

*In re Marrose Corp.*
    Nos. 89 B 12171-12179 (CB), 1992 WL 33848 (Bankr. S.D.N.Y. 1992) ............ 25

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*In re Orchard Supply Hardware Stores Corp.*
Case No. 13-11565 (CSS) (Bankr. D. Del. Jul. 8, 2013) ........................................................ 23

*In re Oxford Automotive, Inc.*
Case No. 04-74377 (Bankr. E.D. Mich. Jan. 24, 2005) ...................................................... 23

*In re Phoenix Steel Corp.*
82 B.R. 334 (Bankr. D. Del. 1987) ...................................................................................... 21

*In re Pisces Leasing Corp.*
66 B.R. 671 (E.D.N.Y. 1986) ............................................................................................... 27

*In re Point Blank Solutions, Inc.*
Case No. 10-11255 (PJW) (Bankr. D. Del. Oct. 5, 2011) ................................................... 26

*In re Prime Motor Inns Inc.*
166 B.R. 993 (Bankr. S.D. Fla. 1994) ................................................................................. 31

*In re PTC Alliance Corp.*
No. 09-13395 (Bankr. D. Del. Nov. 6, 2009) ...................................................................... 33

*In re Ravn Air Group, Inc.*
Case No. 20-10755 (BLS) (Bankr. D. Del. June 3, 2020) .................................................. 23

*In re Rock Indus. Mach. Corp.*
572 F.2d 1195 (7th Cir. 1978) ............................................................................................. 27

*In re Sasson Jeans, Inc.*
90 B.R. 608 (S.D.N.Y. 1988) ............................................................................................... 27

*In re Shift Technologies, Inc.*
Case No. 23-30687 (HLB) (Bankr. N.D. Ca. Mar. 7, 2024) .............................................. 25

*In re Shift Technologies, Inc.*
Case No. 23-30687 (HLB) [Dkt. No. 366] (Bankr. N.D. Ca. Jan. 18, 2024) ...................... 23

*In re Source Home Entm't, LLC*
No. 14-115533 (KG) (Bankr. D. Del. July 21, 2014) .......................................................... 33

*In re Stroud Ford, Inc.*
164 B.R. 730, 732 (Bankr. M.D. Pa 1993) ......................................................................... 21

*In re Submicron Sys. Corp.*
432 F.3d 448 (3d Cir. 2006) ................................................................................................ 33

*In re T Asset Acquisition Co., LLC*
Nos. 2:09-31853-ER, 2010 Bankr. LEXIS 4052 (Bankr. C.D. Cal. Jan. 28, 2010) ............. 33

*In re Velti Inc.*
Case No. 13-12878 (PJW) (Bankr. D. Del. Nov. 20, 2013) ............................................... 23

*In re Verity Health Sys. Of Cal., Inc.*
Case No. 2:18-bk-20151-ER (Bankr. C.D. Cal., Apr. 1, 2020) .......................................... 25

*In re Walter*
83 B.R. 14 (9th Cir. 1988) .................................................................................................. 21

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*In re WPRV-TV, Inc.*
  143 B.R. 315 (D.P.R. 1991) ........................................................................................ 22

*Lubrizol Enter. v. Richmond Metal Finishers*
  756 F.2d 1043 (4th Cir. 1985) .................................................................................... 30

*Marin v. Coated Sales, Inc.*
  *(In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) .................................................................................................................... 27

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*
  4 F.3d 1095 (2d Cir. 1993) ......................................................................................... 30

*Stephens Indus., Inc. v. McClung*
  789 F.2d 386 (6th Cir. 1986) ...................................................................................... 21

*Titusville Country Club V. Pennbank (In re Titusville Country Club)*
  128 B.R. 396 (Bankr. W.D. Pa. 1991) ........................................................................ 21

**STATUTES**

11 U.S.C. § 105(a) ......................................................................................... 1, 2, 21

11 U.S.C. § 1107(a) ................................................................................................. 3

11 U.S.C. § 1108 ..................................................................................................... 3

11 U.S.C. § 363 .............................................................................................. passim

11 U.S.C. § 363(b) ........................................................................................ 1, 2, 21

11 U.S.C. § 363(f) ........................................................................................... passim

11 U.S.C. § 363(k) ..................................................................................... 11, 32, 33

11 U.S.C. § 363(m) .......................................................................................... 27, 28

11 U.S.C. § 363(n) ................................................................................................ 28

11 U.S.C. § 365 .............................................................................................. passim

11 U.S.C. § 365(a) ................................................................................................ 30

11 U.S.C. § 365(b) ............................................................................... 15, 18, 19, 31

11 U.S.C. § 365(f) .......................................................................................... 19, 31

11 U.S.C. § 365(k) ............................................................................................... 19

11 U.S.C. § 503(b) ............................................................................................... 26

11 U.S.C. § 506(a) ............................................................................................... 33

28 U.S.C. § 1334 ................................................................................................... 2

28 U.S.C. § 1408 ................................................................................................... 2

28 U.S.C. § 1409 ............................................................................................. 2

28 U.S.C. § 157 ............................................................................................... 2

28 U.S.C. § 157(b) .......................................................................................... 2

## **OTHER AUTHORITIES**

3 *Collier on Bankruptcy* ¶ 365.03 (16th 2023) .......................................... 30

*Collier on Bankruptcy* ¶ 6004.11 (16th 2023) ........................................... 34

General Order 24 (N.D. Cal.) ........................................................................ 2

## **RULES**

B.L.R. 2002-1 ............................................................................................. 1, 2

B.L.R. 5011-1(a) ............................................................................................. 2

B.L.R. 6004-1 ............................................................................................. 1, 2

B.L.R. 6006-1 ............................................................................................. 1, 2

Fed. R. Bankr. P. 2002 ........................................................... 1, 14, 26, 34

Fed. R. Bankr. P. 6004 ........................................................... 1, 2, 20, 34

Fed. R. Bankr. P. 6006 ................................................................. 1, 2, 34

Fed. R. Bankr. P. 9014 ..................................................................... 1, 2

Trinitas Advanced Agriculture Partners IV, LP ("TAAP IV") together with certain of its affiliates who are debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), move this Court pursuant to sections 105(a), 363(b), 363(f), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules") for (i) entry of an order (the "Bid Procedures Order"), substantially in the form attached hereto as **Exhibit A**, (a) authorizing and approving procedures (as appended to the Bid Procedures Order as Exhibit 1, the "Bid Procedures") for the Debtors to sell all, substantially all, or a portion of the Debtors' almond orchards and related assets (the "Portfolio" or the "Property"), (b) approving procedures related to the assumption and assignment of certain executory contracts and unexpired leases (as further described below, the "Purchased Contracts"), (c) approving the form and manner of the sale notice and cure notice (the "Notice Procedures"), (d) authorizing the Debtors to enter into one or more "stalking horse" purchase agreements, subject to higher and better bids, and (e) setting the time, date, and place of a hearing (the "Sale Hearing") to consider the sale and the assumption and assignment of the Purchased Contracts (as defined below); (ii) entry of an order (the "Sale Order") authorizing and approving (a) the sale of the Debtors' right, title, and interest in the Property, free and clear of all liens, claims, encumbrances, and interests (each as described below), pursuant to section 363 of the Bankruptcy Code; (b) the assumption and assignment of certain executory contracts and real property leases pursuant to section 365 of the Bankruptcy Code, and (c) payment of Bid Protections (as defined below), if applicable; and (iii) such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors submit the declaration of Kirk Hoiberg (the "Hoiberg Declaration"), filed concurrently herewith, and respectfully represent as follows:

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   SUMMARY OF RELIEF REQUESTED

Under the DIP Credit Agreement (as defined below), the Debtors are required to file, by March 30, 2024, a motion to seek approval of bidding procedures with respect to the sale of at least twenty percent, by acreage, of the Debtors' Property through an initial sale process.  By this Motion, the Debtors seek to offer for sale all of the Debtors' Property, even though the Debtors ultimately may determine, in their business judgment (in consultation with the Committee (as defined below) and Rabo Ag (as defined below), to sell less than all of the Debtors' Property during this initial sale process, consistent with the DIP Credit Agreement, and sell the remaining Property during one of the other two sale processes contemplated under the DIP Credit Agreement.

First, by this Motion, the Debtors seek entry of the Bid Procedures Order: (a) authorizing and approving the Bid Procedures, (b) approving procedures related to the assumption and assignment of certain executory contracts and unexpired leases, (c) approving the Notice Procedures, (d) authorizing the Debtors to enter into one or more "stalking horse" purchase agreements, subject to higher and better bids, and (e) setting the time, date, and place of the Sale Hearing.

Second, the Debtors request entry of the Sale Order, pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, Bankruptcy Rules 6004, 6006, and 9014, and Bankruptcy Local Rules 2002-1, 6004-1, and 6006-1, authorizing and approving (a) the sale of the Property, free and clear of all liens, claims, encumbrances, and interests, to one or more Successful Bidders (the "Sale"), (b) the assumption and assignment of certain contracts and leases, and (c) the payment of Bid Protections (as defined below), if applicable.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

### III. BACKGROUND[2]

#### A. General Background

On February 19, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), thereby commencing the Chapter 11 Cases. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 7, 2024, the official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 Cases. [Dkt. Nos. 43 and 44]. No trustee or examiner has been appointed in these Chapter 11 Cases.

#### B. Background Regarding the Sale Process

As explained in the First Day Declaration, the Debtors were well-positioned to become profitable ventures. First Day Decl. ¶ 9. However, high interest rates impacting the Debtors' cost of debt servicing, the substantial capital needed to support almond orchards that are not yet at mature production and the concomitant rising cost of capital, and sustained, record-low almond prices all contributed to the Debtors' serious liquidity constraints. *Id*. ¶ 10. The Debtors were unable to raise necessary capital, either through investments from TAAP IV's current limited partners and outside investors, or from potential sales of portions of the Debtors' Portfolio to interested prospective purchasers. *Id*.

The Debtors and their secured lender, Rabo Agrifinance, LLC ("Rabo Ag"), began discussions in the middle of 2023 regarding a restructuring of the Debtors' prepetition debt with Rabo Ag (the "Rabo Ag Prepetition Debt") and/or a partial or complete sale of the Portfolio. *Id*. ¶ 32. In the months leading up to the Petition Date, the Debtors also, in consultation with Rabo Ag, continued to seek potential opportunities to sell some of the Portfolio, in order to pay down the Rabo Ag Prepetition Debt and/or use the sale proceeds to fund working capital for the remaining orchards. *Id*. But the Debtors were unable to reach an agreement to sell any portion of the Portfolio on terms that were acceptable to the Debtors and Rabo Ag. *Id*. Ultimately, the

---

[2] Capitalized terms used but not defined in Sections III.A. & III.B. hereof only have the meanings ascribed to them in the *Declaration of Kirk Hoiberg in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Case No. 24-50210, Dkt. 15].

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Debtors, after discussions with their limited partners and Rabo Ag, determined that it was in the best interests of the Debtors and their creditors to file these Chapter 11 Cases, and for Rabo Ag to provide debtor-in-possession financing, to fund an orderly and managed sale process of the Portfolio, as a whole or in lots, to pay off the Rabo Ag Prepetition Debt and satisfy other outstanding debt. *Id*. Accordingly, in connection with their postpetition financing, as memorialized in the Superpriority Secured Debtor-In-Possession Credit Agreement by and between the Debtors and Rabo Ag (the "DIP Credit Agreement"),[3] the Debtors have agreed to certain reasonable milestones with respect to the sale of the Portfolio (the "Milestones"). *Id*. ¶ 40; *see also infra* Section IV.B.

**C.   Postpetition Marketing of the Property**

On March 1, 2024, the Debtors retained MD Graham & Associates, Inc. d/b/a GBB Advisors & Graham and Associates ("Graham & Associates" or the "Broker") as their real estate broker, to assist with the marketing, auction, and sale of the Property in this initial sale process. On March 8, 2024, the Debtors filed the *Debtors' Application for Order Authorizing the Retention of MD Graham & Associates, Inc. d/b/a GBB Advisors & Graham and Associates as Real Estate Broker Effective as of March 1, 2024* [Dkt. No. 58] (the "Application") which was granted on March 22, 2024 [Dkt. No. 101].

Immediately upon its retention by the Debtors, Graham & Associates began the process of marketing the Property for sale. *Declaration of Kirk Hoiberg in Support of Debtors' Motion for Orders (I)(A) Authorizing and Approving Bid Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, (C) Approving the Notice Procedures, (D) Authorizing Entry into One of More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, if Applicable* ("Hoiberg

---

[3] As used herein, the term "Rabo Ag Debt" shall mean and refer to all amounts due under DIP Credit Agreement together with all amounts due to any obligee in connection with the Prepetition Loans, as that term is defined in the DIP Credit Agreement.

Decl.") ¶ 4. As of the date of this Motion, the postpetition marketing process has included the following efforts by the Debtors and the Broker:

- Diligence gathering and coordination between Graham & Associates and the Debtors to compile and prepare offering materials.

- Preparation of opportunity offering collateral, including a teaser, a confidential information memorandum (the "CIM"), and construction of a two-tiered data room set up and maintained by the Debtors, through the Broker (the "Data Room").

  - Interested parties who sign a non-disclosure agreement ("NDA") are given access to "Tier 1" of the Data Room, which includes information on the land and water rights, harvest information, Assessor Parcel Numbers, maps of the ranches that make up the portfolio of the Property, and information about the bankruptcy process.

  - Qualified Bidders (defined below) will be given access to "Tier 2" of the Data Room, which includes appraisals, information on water costs and history, environmental reporting, well information, detailed information on water rights, yield and sales forecasts, sales history, and other information central to the sale process.

- Creation of a high-priority buyer list through a combination of the Broker's proprietary contact database and targeted strategic and financial buyer research unique to this opportunity.

- Multiple rounds of outbound outreach, including direct outreach to high-priority targets.

*Id.*

Although the Debtors' marketing process is still in its early stage, and the Debtors expect that the filing of this Motion, and entry of the Bid Procedures Order, will increase interest and engagement by potential bidders, the Debtors, through the Broker, have already contacted over 150 potential purchasers. *Id.* ¶ 5. Almost ninety potential buyers have signed NDAs, have been granted access to Tier 1 of the Data Room, and are actively engaged in due diligence. *Id.* Graham & Associates also has begun to receive written non-binding indications of interest, and several potential buyers have expressed interest in being a "stalking horse" bidder. *Id.*

## IV.   PROPOSED BID AND SALE PROCEDURES

### A.   Property to Be Sold

In this initial sale process, the Debtors will offer for sale all, substantially all, or some substantial portion of the Property. The Property may be sold in one or more lots to one or more purchasers. The Debtors may ultimately determine that they will not sell all of the Property during

this initial sale process and may, in their business judgment, in consultation with the Committee and Rabo Ag, determine not to sell some of the Property until the second or third sale process contemplated under the Milestones.

### B. The Sale Schedule[4]

This Motion and the Bid Procedures propose the following schedule, consistent with the Milestones in the DIP Credit Agreement, for the major key dates and deadlines to establish an efficient, expedited, and open process for the solicitation, receipt, and evaluation of Qualified Bids (defined below), and the consummation of one or more sales to one or more Successful Bidders (as defined below) (the "Sale") in this initial sale process. These requested dates and deadlines are subject to the Court's availability and approval and may also be modified by the Debtors to the extent permitted under the Bid Procedures, the Bid Procedures Order, and the DIP Credit Agreement.

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Bid Procedures Objection Deadline | April 19, 2024 (or 7 days before Bid Procedures Hearing) | Deadline by which any objections to the Bid Procedures must be filed with the Court and served so as to be actually received by the Objection Notice Parties (as defined below). |
| Bid Procedures Hearing | April 26, 2024 10:00 a.m. (PT) | Date for the hearing to consider the approval of the Bid Procedures. |
| Bid Procedures Order | April 30, 2024 | Last date by which the Court shall have entered the order approving the Bid Procedures, in form and substance acceptable to Rabo Ag, under the DIP Credit Agreement. |
| Cure Notice | May 2, 2024 (or two business days following entry of the Bid Procedures Order) | Date by which the Debtors will serve the Cure Notice upon each counterparty to a Potential Purchased Contract and file a global exhibit listing Cure Amounts (as defined below) for all Potential Purchased Contracts. |

---

[4] The summary of the terms contained in this section is qualified in its entirety by reference to the provisions of the Bid Procedures. Capitalized terms used but not defined in this section only have the meanings ascribed to them in the Bid Procedures unless otherwise indicated.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Sale Notice | May 2, 2024 (or two business days following entry of the Bid Procedures Order) | Date by which the Debtors will file and serve the Sale Notice. |
| Stalking Horse Deadline | May 17, 2024 | Date up to which the Debtors may enter into one or more Stalking Horse Agreements. |
| Bid Deadline | May 17, 2024 | Deadline by which the Debtors must *actually receive* binding Qualified Bids from Qualified Bidders. |
| Cure Objection Deadline | May 23, 2024 4:00 p.m. (PT) | Deadline by which objections to the proposed assumption and assignment of the applicable Potential Purchased Contract (including to the proposed Cure Amounts, if any), must be filed with the Court and served so as to be actually received by the Objection Notice Parties, provided, however, that objections with respect to the Successful Bidder's ability to provide adequate assurance of future performance may be raised at the Sale Hearing. |
| Starting Bid Notice Deadline | May 29, 2024 | The Debtors will provide to all Qualified Bidders participating in the Auction a Starting Bid Notice stating the Starting Bid and the bidding increments for each lot. |
| Auction (if necessary) | May 30, 2024 11:00 a.m. (PT) | Date on which the Debtors will begin the Auction (pursuant to the DIP Credit Agreement, the Auction must have been conducted by May 31, 2024). |
| Auction Results Notice | June 3, 2024 (or one business day after the conclusion of the Auction) | Date by which the Debtors will serve notice of the results of the Auction to all Qualified Bidders, the Committee, Rabo Ag, and all other parties who have timely elected to receive notices related to the sale process. |
| Sale Objection Deadline | June 7, 2024 4:00 p.m. (PT) | Deadline by which Sale Objections must be filed with the Court and served so as to be actually received by the Objection Notice Parties. |
| Sale Reply Deadline | June 12, 2024 | Deadline by which the Debtors and/or the Successful Bidder(s) will file and serve their reply, if any, in support of the Sale Motion. |

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Sale Hearing | June 14, 2024 10:00 a.m. (PT) | Date for the hearing to consider approval of the Sale pursuant to section 363 of the Bankruptcy Code. |
| Sale Order Deadline | Within 3 business days following the Sale Hearing | Date by which the Court shall have entered the Sale Order, pursuant to the DIP Credit Agreement. |

As set forth above and in the Hoiberg Declaration, given the scope of prepetition marketing activities, the extensive marketing process currently underway, the financial condition of the Debtors, and the constraints imposed by the DIP Credit Agreement, the Debtors believe the above timeline is reasonable and will lead to a Sale of all or a portion of the Property at the highest or otherwise best price. *Id*. ¶ 6. The Debtors believe that conducting the Sale as soon as possible is in the best interests of creditors because it will reduce unnecessary administrative, borrowing, and debt-service expense and generate the highest possible net recovery for the estates. *Id*. ¶ 7. The Debtors respectfully submit that the timeline set forth above is reasonable and necessary under the circumstances of these Chapter 11 Cases to maximize the value of the estates. The Debtors' proposed timeline provides an approximately 48-day period between the filing of the Motion and the Bid Deadline (as defined in the Bid Procedures). This timeline will allow potential bidders sufficient time to formulate bids for the Property. Relevant information regarding the Debtors' business and the Property has been made available in the Data Room set up by the Debtors for prospective bidders, allowing prospective bidders (subject to the execution of an acceptable NDA and other requirements set forth in the Bid Procedures) to immediately begin to conduct due diligence on the Property. *Id*. ¶ 4.

### C. The Bid Procedures

The Bid Procedures, which are attached to the Bid Procedures Order as **Exhibit 1,** are designed to obtain the highest or otherwise best offer for the Property, while effectuating an efficient sale of the Property. The key provisions of the Bid Procedures to be employed with

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

respect to the proposed Sale of the Property and assumption and assignment of contracts are as follows:[5]

    a. <u>Provisions Governing Qualifications of Bidders</u>. The Bid Procedures set forth the requirements for a Potential Bidder to be deemed a "<u>Qualified Bidder</u>." Those requirements include, but are not limited to, delivery to the Debtors of the following:

        (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors;

        (ii) an expression or indication of interest, letter of intent, or offer (all of which may be non-binding and revocable) that demonstrates, to the Debtors' satisfaction, a bona fide interest in purchasing the Property or a portion of the Property from the Debtors, at a price that meets a minimum threshold for such Property, or portion thereof, as indicated by the Debtors (in consultation with the Committee and Rabo Ag (the "<u>Consultation Parties</u>");

        (iii) sufficient information, as determined by the Debtors (in consultation with the Consultation Parties), to demonstrate proof of financial wherewithal; and

        (iv) if the Potential Bidder is represented by a broker, the broker's retention agreement.

    b. <u>Bid Deadline</u>. A Qualified Bidder that desires to make a Bid will deliver written copies of its Bid to the Debtors, so as to be received not later than **May 17, 2024, at 4:00 p.m. (PT)** (as may be extended as set forth below, the "<u>Bid Deadline</u>").

    c. <u>Provisions Governing Qualified Bids</u>. The Bid Procedures set forth the requirements for a Bid to constitute a "<u>Qualified Bid</u>." Those requirements include, but are not limited to, that the Bid:

        (i) be received by the Bid Deadline;

        (ii) specifically identify the particular property or properties to which it relates, clearly set forth the purchase price to be paid, and identify the executory contracts or unexpired leases that the Qualified Bidder wishes to assume;

        (iii) be binding and irrevocable until, at the earliest, and as further set forth in the Bid Procedures, the Court approves the selection of the Successful Bidder (as defined below);

        (iv) include a duly authorized and executed agreement, with a copy marked to show modifications to either the Purchase and Sale Agreement and Joint Escrow Instructions or the Vacant Land Purchase Agreement and Joint Escrow Instructions, and addendum thereto, which will be provided and filed by the Debtors in advance of the Bid Procedures Hearing (in either case, the "<u>Form Purchase and Sale Agreement</u>");

---

[5] The summary of the Bid Procedures contained in this Motion is qualified in its entirety by reference to the provisions of the Bid Procedures. In the event of any inconsistencies between the provisions of the Bid Procedures and the summary set forth herein, the terms of the Bid Procedures shall govern. Capitalized terms used but not defined in this section only have the meanings ascribed to them in the Bid Procedures.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(v)   be accompanied by an acknowledgement that the Bid is on an as-is, where-is basis, an affirmative statement of the Qualified Bidder's good faith, and evidence of adequate assurance of the Qualified Bidder's ability to perform under the contracts and leases it proposes to be assumed by the Debtors and assigned to the Qualified Bidder; and

(vi)   be accompanied by a deposit in an amount equal to five percent (5%) of the Purchase Price.

The Debtors will determine, in their reasonable business judgment, and in consultation with the Consultation Parties, whether to entertain Bids for the Property that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.

d.   <u>Stalking Horse</u>.  At any time prior to the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may enter into one or more Purchase and Sale Agreements, subject to higher and better bids, which will serve as the "stalking horse" bid for the Property (each, a "<u>Stalking Horse Agreement</u>").  In the event that the Debtors enter into one or more Stalking Horse Agreements, with respect to which the prospective purchaser is not an insider of the Debtors (a "<u>Non-Insider Stalking Horse Agreement</u>"), the Debtors may seek approval at the Sale Hearing of a break-up fee and expense reimbursement of no more than three percent (3%) in the aggregate of the Cash Consideration of such Non-Insider Stalking Horse Agreement (together, the "<u>Bid Protections</u>").

e.   <u>Aggregate Bids and Evaluation of Competing Bids</u>.  The Bid Procedures provide that the Debtors may, in consultation with the Consultation Parties,  aggregate separate bids, subject to the Bid Procedures, and specify factors that the Debtors will consider in evaluating the value of a Qualified Bid, including, but not limited to, the Purchase Price, the net value provided by the Bid, claims likely to be created by such Bid in relation to other Bids, and the speed, certainty, and value of the transactions.

f.   <u>No/Insufficient Qualified Bids</u>.  If the Debtors (i) do not receive any Qualified Bids, or (ii) do not receive Qualified Bids for at least twenty percent (20%), determined on the basis of Gross Acreage (as defined in the Bid Procedures), of the Property, or such other lower threshold as agreed to by Rabo Ag, the Auction shall be cancelled, and the Debtors shall report the same to the Court.

g.   <u>One Qualified Bid</u>.  If the Debtors only receive one Qualified Bid and it is for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, the Debtors may, after consultation with advisors for the Consultation Parties, promptly proceed to seek entry of the appropriate order approving the transaction with such bidder. In addition, if only one Qualified Bid is received and it is for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, the Debtors reserve the right to request, in consultation with advisors for the Consultation Parties, that the Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

h.   <u>Auction</u>.  If the Debtors receive more than one Qualified Bid that, when aggregating all Qualified Bids, is for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, or such other lower threshold as agreed to by Rabo Ag, the Debtors will conduct an auction or auctions (the "<u>Auction</u>") for the Property, which shall be transcribed or recorded on video, at **11:00 a.m. (Pacific time) on May 30, 2024** (the "<u>Auction Date</u>"), at the offices of Keller Benvenutti Kim LLP, located at 425 Market Street, 26th Floor, San Francisco, California, 94105, or such other location, including by virtual meeting, as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Consultation Parties. The Bid Procedures set forth the procedures by which the Auction shall run, which include, but are not limited to:

(i) At least two (2) days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction. At least one (1) day prior to the Auction, the Debtors will provide to all participating Qualified Bidders a copy of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in their reasonable business judgment, in consultation with the Consultation Parties and their respective advisors, is the highest or otherwise best offer (the "Starting Bid"), along with the starting minimum bid increments for each lot to be offered for sale at Auction (the "Starting Bid Notice").

(ii) The Debtors, after consultation with the Consultation Parties and their respective advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids or requiring that Subsequent Bids be the Qualified Bidders' final and best bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bid Procedures, the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"), the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each participating Qualified Bidder at the Auction.

(iii) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"), and (ii) the Debtors determine, in consultation with their advisors and the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined in the Bid Procedures). The Debtors may, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, modify the increment requirements at any time at or prior to the Auction after informing each participating Qualified Bidder.

(iv) For the avoidance of doubt, Rabo Ag will be permitted to credit bid up to the full amount of the Rabo Ag Debt at the Auction, subject to the Committee's right to challenge the nature, extent, validity, priority, perfection, or amount of the Rabo Ag Debt, and subject to § 363(k) of the Bankruptcy Code.

(v) Each Bid made at the Auction shall be irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if a Bid is selected as the Successful Bid or the Back-Up Bid (as defined below), it shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) 45 days after the Sale Hearing.

i. Reservation of Rights. Except as otherwise provided in the Bid Procedures or the Bid Procedures Order, the Debtors, after consultation with their advisors and the Consultation Parties: (i) may determine after each round of bidding at the Auction which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (ii) may reject, at any time, any Bid that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and stakeholders; (iii) except as otherwise specifically set forth herein, may modify the Bid Procedures or impose, at or

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

prior to the Auction, additional customary terms and conditions on the Sale of the Property; (iv) may extend the deadlines set forth herein, including, without limitation, the Bid Deadline; and (v) may continue or cancel the Auction or Sale Hearing in open court without further notice.

j. Selection of Successful Bid. Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties and their respective advisors, will identify the highest or otherwise best offer or offers for the Property or portions thereof received at the Auction (one or more such Bids, collectively the "Successful Bid" and the bidder(s) making such Bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder, the Back-Up Bidder, if any, and the details of the Successful Bid and Back-Up Bid, if any. Within one (1) business day of the conclusion of the Auction, the Debtors will serve written notice of the results of the Auction to all Qualified Bidders, the Committee, Rabo Ag, and all other parties who have timely elected to receive notices related to the sale process. The determination of the Successful Bid and Back-Up Bid by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction, shall be final, subject to approval by the Court. The Debtors' selection of and presentation to the Court of the Successful Bid and, if applicable, the Back-Up Bid will not constitute the Debtors' acceptance of either of such Bids, which acceptance will only occur upon the approval of such bids by the Court at the Sale Hearing.

k. Sale Hearing. The Debtors will seek entry of the Sale Order from the Court at the Sale Hearing to begin on or before June 14, 2024, (or at another date and time convenient to the Court) to, among other things, approve and authorize the sale transaction to the Successful Bidder, and, if applicable, the Back-Up Bidder, on terms and conditions determined in accordance with the Bid Procedures. The Debtors will also seek authorization to pay the broker(s) of the Successful Bidder(s) (the "Successful Bidder's Broker") a commission not to exceed one-and-a-half percent (1.5%) of the final Cash Consideration paid by the Successful Bidder(s) (the "Commission") upon the closing of the Sale to the Successful Bidder(s). The Debtors will pay the Commission from the proceeds of the Sale.

l. Other Procedures. The Bid Procedures also include other provisions, including those relating to Back-Up Bidders, the failure of the Successful Bidder to consummate the transaction, and the return or application of Deposits of the Qualified Bidders.

**D. Stalking Horse Agreement**

To date, the Debtors have not identified a "stalking horse" purchaser, but the Debtors continue to engage with potential bidders to determine whether, in the Debtors' business judgment, it would be beneficial to the estates to enter into one or more Stalking Horse Agreements, for all or a portion of the Property. To the extent the Debtors enter into a Stalking Horse Agreement, the Debtors will do so because they believe that such a Stalking Horse Agreement would provide value to the Debtors' estates by locking in a bidder at a fair price while leaving open the ability to increase recoveries through competitive bidding and inducing other bidders to submit higher or better offers for the Property. In the event that, prior to the Bid Deadline, the Debtors are able to identify a stalking horse bidder that is not an insider of the Debtors and enter into a Non-Insider Stalking Horse Agreement, the Debtors, by this Motion, seek approval of the Bid Protections (as defined in

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

the Bid Procedures) in the form of a break-up fee and expense reimbursement of no more than three percent (3%) of the Purchase Price.

### E.    The Sale Notice Procedures

As stated above, the Debtors request that this Court schedule a Sale Hearing for **June 14, 2024 at 10:00 a.m. (prevailing Pacific Time)**.  The Debtors propose that any objections to the Sale (other than an Assumption Objection (as defined below), which will be governed by the procedures set forth below) (a "Sale Objection") must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, California 94102, together with proof of service, **on or before 4:00 p.m. (prevailing Pacific Time) on June 7, 2024** (the "Sale Objection Deadline") and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the following parties (collectively, the "Objection Notice Parties"): (i) Debtors' counsel, Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., 425 Market Street, 26th Floor, San Francisco, California, 94105, jkim@kbkllp.com, jrichards@kbkllp.com; (ii) counsel to Rabo Ag, Fennemore Dowling Aaron, 8 080 N. Palm Avenue, 3rd Floor, Fresno, California, 93711 (Attn. J. Jackson Waste (jwaste@fennemorelaw.com), Don J. Pool (dpool@fennemorelaw.com), Jerome A. Grossman (jgrossman@fennemorelaw.com), and Anthony A. Austin (aaustin@fennemorelaw.com); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, California, 94102, Attn: Trevor Fehr (Trevor.Fehr@usdoj.gov) and Paul Leahy (Paul.Leahy@usdoj.gov); and (iv) counsel to the Committee, (x) Raines Feldman Littrell LLP, 3200 Park Center Drive, Suite 250, Costa Mesa, California, 92626 (Attn. Robert S. Marticello (rmarticello@raineslaw.com)), (y) Raines Feldman Littrell LLP, 30 North LaSalle Street, Suite 3100, Chicago, Illinois, 60602 (Attn. Mark S. Melickian (mmelickian@raineslaw.com)), and (z) Husch Blackwell LLP, 120 South Riverside Plaza, Suite 2200, Chicago, Illinois, 60606 (Attn. Michael A. Brandess (Michael.brandess@huschblackwell.com)).  Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).  If a Sale

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Objection is not filed and served on or before the Sale Objection Deadline, the Debtors request that the objecting party be barred from objecting to the Sale and not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

The Debtors also request that the Court approve the form of the sales procedures notice (the "Sale Notice"), substantially in the form of <u>Exhibit 2</u> to the Bid Procedures Order.  The Debtors will serve a copy of the Sale Notice on the following parties:  (a) the Objection Notice Parties, (b) any parties requesting notices in this case pursuant to Bankruptcy Rule 2002, (c) all entities reasonably known to have expressed an interest in a transaction with respect to any of the Property during the past nine (9) months, (d) all parties known by the Debtors to assert a lien on any of the Property, (including the county tax collector for each county in which the Property is located), (e) all persons known or reasonably believed to have asserted an interest in any of the Property, (f) all non-Debtor parties to any Potential Purchased Contracts (g) all taxing authorities having jurisdiction over any of the Property, including the Internal Revenue Service (the "IRS"), (h) the Debtors' insurers, (i) all known creditors of the Debtors, (j) all known holders of equity interests in the Debtors, (k) all environmental authorities having jurisdiction over any of the Property, and (l) to the extent not included above, all parties in interest listed on the Debtors' creditor matrix  (collectively with the parties specified in this paragraph, the "Sale Notice Parties").

The Debtors propose to file with the Court and serve the Sale Notice within two (2) business days following entry of the Bid Procedures Order, by first-class mail, postage prepaid on the Sale Notice Parties.  The Sale Notice provides that any party that has not received a copy of the Motion or the Bid Procedures Order that wishes to obtain a copy of the Motion or the Bid Procedures Order, including all exhibits thereto, may obtain such documents at the Debtors' case website (https://www.donlinrecano.com/trinitas) or by calling the restructuring information center at 1 (800) 780-7386 (toll free) for U.S. and Canada-based parties or 1 (212) 771-1128 for International parties, or by submitting an inquiry via e-mail to tfinfo@drc.equiniti.com.

The Debtors submit that the foregoing notice procedures comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bid Procedures, Auction and Sale, and Sale Hearing to the Debtors' creditors and other parties in

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

interest as well as to those who have expressed an interest or are likely to express an interest in bidding on the Property. Based on the foregoing, the Debtors respectfully request that this Court approve these proposed procedures with respect to the Sale Notice.

**F.     Procedures for Assumption and Assignment of the Purchased Contracts**

The Debtors are reviewing their prepetition executory contracts and unexpired leases and will designate certain of those executory contracts and leases as those that a purchaser of the Property may wish to have assumed and assigned to it pursuant to this Motion (collectively, the "Potential Purchased Contracts"). At the Sale Hearing, to facilitate and effect the sale of their Property, the Debtors will seek authorization to assume the Purchased Contracts (that is, those executory contracts and unexpired leases designated by the Successful Bidder(s) for assumption and assignment) and to assign the Purchased Contracts to the Successful Bidder(s).

The Successful Bidder(s) will pay all amounts, if any, necessary to cure all defaults, if any, and to pay all actual or pecuniary losses that have resulted from such defaults under the Purchased Contracts assumed by the respective Successful Bidder(s) at the closing of the respective Sale, as determined by the Court, if necessary (the "Cure Amounts"). The Debtors will prepare a schedule setting forth a good faith estimate as of the Petition Date of all Cure Amounts for all Potential Purchased Contracts (the "Cure Schedule").

**1.     Cure Notice Procedures**

The Debtors will serve the cure notice, substantially in the form of Exhibit 3 (the "Cure Notice") attached to the Bid Procedures Order, upon each counterparty to a Potential Purchased Contract by no later than two business days following entry of the Bid Procedures Order.

The Cure Notice will (i) state the date, time, and place of the Sale Hearing, (ii) state the date by which any objection to the assumption and assignment of Potential Purchased Contracts (including to the proposed Cure Amounts, if any) must be filed and served and (iii) provide instructions for obtaining a copy of the Motion. The Cure Notice will identify the Cure Amounts, if any, that the Debtors believe are owed to each counterparty to a Potential Purchased Contract in order to cure any defaults that exist under such contract, as required under Bankruptcy Code section 365(b)(1). To the extent there is a contract added to the list of contracts to be assumed by

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

the Successful Bidder pursuant to the Successful Bidder's purchase and sale agreement selected at the Auction, such contract will be deemed a Purchased Contract, and this Motion constitutes a separate motion to assume and assign that contract to the Successful Bidder pursuant to Section 365 of the Bankruptcy Code; each such contract will be listed on an exhibit to the Successful Bidder's purchase and sale agreement, and each counterparty to such contract will be given a separate Cure Notice filed and served by overnight delivery within 24 hours of the conclusion of the Auction and announcement of the Successful Bidder.

The inclusion of a contract, lease, or other agreement on either the Cure Schedule or a Cure Notice shall not (a) constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved; or (b) obligate the Debtors to assume any Potential Purchased Contract listed thereon or the Successful Bidder(s) to take assignment of such Potential Purchased Contract. Only those Purchased Contracts that are included on a schedule of assumed and acquired contracts attached to the final purchase and sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such purchase and sale agreement) will be assumed and assigned to the Successful Bidder upon the closing of such Sale.

If a Purchased Contract is assumed and assigned pursuant to the Sale Order or other order of the Court, then unless the Purchased Contract counterparty properly and timely files and serves an objection to the Cure Amounts contained in the Cure Notice by the Cure Objection Deadline, the Purchased Contract counterparty will receive, from the applicable Successful Bidder, at the time of the assumption and assignment (as specified below), only the Cure Amounts as set forth in the Cure Notice for that Purchased Contract, if any.

If any counterparty objects for any reason to the assumption and assignment of a Potential Purchased Contract (including to the proposed Cure Amount, if any) (an "Assumption Objection"), the Debtors propose that the counterparty must file the objection and serve it so as to be actually received by the Objection Notice Parties by no later than **4:00 p.m. (prevailing Pacific Time) on**

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**May 23, 2024** (the "Cure Objection Deadline"), provided, however, that any counterparty may raise at the Sale Hearing an objection to the assumption and assignment of the Purchased Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Purchased Contract. The Debtors propose that any Assumption Objection must (a) set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Cure Notice, and/or set forth, with specificity, any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder, and state, with specificity the legal and factual basis for the objection; (b) include appropriate documentation in support of the objection; and (c) be filed and served so as to be received by the Cure Objection Deadline.

After receipt of an Assumption Objection, the Debtors will attempt to reconcile any differences in the Cure Amount or otherwise resolve the objection with the counterparty. In the event that the Debtors and the counterparty cannot resolve an Assumption Objection, and the Court does not otherwise make a determination at the Sale Hearing regarding an Assumption Objection, including with respect to a Cure Amount, such Potential Purchased Contract will not be assumed and assigned until the Court's determination as to the Assumption Objection (including the Cure Amount), as further set forth below.

If, following the closing date of the respective Sale, and only to the extent permitted under the purchase and sale agreement that is the Successful Bid, the Successful Bidder designates as a Purchased Contract a contract or lease not included as a Potential Purchased Contract and not previously rejected by the Debtors, the Debtors will promptly serve, at Successful Bidder's expense, a supplemental notice of potential assumption and assignment by electronic transmission, hand delivery, or overnight mail on the counterparty to such impacted Purchased Contract (each, a "Supplemental Purchased Contract Counterparty"), and its attorney, if known, at the last known address available to the Debtors (a "Supplemental Cure Notice"). Each Supplemental Cure Notice will include the same information with respect to listed Contracts as was included in the Cure Notice with respect to the Potential Purchased Contracts.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Any Supplemental Purchased Contract Counterparty may file an objection (a "Supplemental Purchased Contract Objection") to, as applicable, the proposed assumption and assignment of such Purchased Contract, the proposed Cure Amounts (if any), or adequate assurance of future performance by the Successful Bidder. The Debtors propose that all Supplemental Purchased Contract Objections must: (a) set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Supplemental Cure Notice, and/or set forth, with specificity, any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder, and state, with specificity, the legal and factual basis for the objection and, if applicable, what Cure Amounts are required; (b) include appropriate documentation in support of the objection; and (c) be filed and served so as to be actually received by the Objection Notice Parties no later than ten (10) days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

If a Supplemental Purchased Contract Counterparty files a Supplemental Purchased Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an expedited hearing before the Court, and such dispute will be resolved at such expedited hearing or, in the Debtors' discretion, adjourned to a later hearing. If there is no such timely objection, then (a) such Purchased Contract shall be deemed assumed and assigned pursuant to the Sale Order, without further order of the Court and the Supplemental Purchased Contract Counterparty will be deemed to have consented to the assumption and assignment of the Purchased Contract; and (b) the Cure Amounts, if any, set forth on the Supplemental Cure Notice shall be controlling, notwithstanding anything to the contrary in any Purchased Contract or any other document.

The Successful Bidder shall be responsible for paying any Cure Amount for a Purchased Contract that is assumed and assigned and for satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Purchased Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Purchased Contract shall not

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

excuse the Successful Bidder from performance of any and all of its obligations pursuant to the Successful Bidder's purchase and sale agreement. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Purchased Contacts pursuant to section 365(b) of the Bankruptcy Code at the Sale Hearing. Cure Amounts disputed by any counterparty will be resolved by the Court at the Sale Hearing or such later date as may be agreed to or ordered by the Court. Nothing herein or in the Bid Procedures Order shall restrict the ability of the Debtors to reject or terminate a contract or lease that has not been designated as a Purchased Contract as of the closing date, except to the extent provided in the purchase and sale agreement that is the Successful Bid.

## 2. Effective Date of Assumption and Assignment

The Debtors seek authorization and approval to assume and assign the Purchased Contracts at the closing of the respective Sale, or, with respect to Purchased Contracts designated as Purchased Contracts after the closing of the respective Sale, effective as of the date such Purchased Contract is designated a Purchased Contract (such date, the "Designation Date"). However, if the Cure Amount for any Purchased Contract is subject to dispute as of the closing of the respective Sale or the Designation Date, as applicable, then such Purchased Contract will not be assumed and assigned until after the Court determines the Cure Amount. If the Court determines the Cure Amount for such Purchased Contract to be less than or equal to the amount set forth in the Cure Schedule, then the Debtors, by this Motion, seek authorization and approval to assume and assign such Purchased Contract on the date of such determination by the Court, if not stayed.

Except to the extent otherwise provided in the Successful Bidder's sale and purchase agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Purchased Contracts pursuant to Section 365(k) of the Bankruptcy Code.

Pursuant to Section 365(f) of the Bankruptcy Code, the Debtors seek authorization and approval to assume and assign the Purchased Contracts notwithstanding any provision to the contrary in the Purchased Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Upon assumption of the Purchased Contracts by the Debtors and assignment to the Successful Bidder, the Purchased Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of the Bid Procedures Order.

### G. Sale Free and Clear of All Liens, Claims, Encumbrances, and Interests

At the Sale Hearing, the Debtors will seek Court approval of the Sale to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to Section 363 of the Bankruptcy Code, with all liens, claims, interests, and encumbrances to attach to the sale proceeds with the same validity and in the same order of priority as they attached to the Property prior to the Sale, including the assumption by the Debtors and assignment to the Successful Bidder of the Purchased Contracts pursuant to Section 365 of the Bankruptcy Code. The Debtors will also seek an order of the Court prohibiting all persons holding liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, from asserting them against the Successful Bidder under section 363(f) of the Bankruptcy Code. The Debtors will submit and present additional evidence, as necessary, at the Sale Hearing demonstrating that the Sale is fair, reasonable, and in the best interest of the Debtors' estates and all interested parties, and satisfies the standards necessary to approve a sale of substantially all of a debtor's assets. *See infra* Section V.G.

## V. ARGUMENT

### A. The sale of the assets is a product of the Debtors' reasonable business judgment.

In accordance with Bankruptcy Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtors have determined that the Sale of the Property by public auction will enable them to obtain the highest or otherwise best offer for these assets (thereby maximizing the value of the estate) and is in the best interests of the Debtors' creditors. In particular, the Sale will be the result of comprehensive arms' length negotiations, subject to higher or otherwise better offers, and will provide a greater recovery for the Debtors' creditors than would be provided by any other existing alternative.

The Debtors seek to have the Sale approved at the Sale Hearing pursuant to section 363 of the Bankruptcy Code.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Section 363(b)(1) of the Bankruptcy Code provides: "the Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Section 363 does not provide a standard for approving a sale, but the Ninth Circuit has held that the "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification." *In re Walter*, 83 B.R. 14, 16 (9th Cir. 1988). Indeed, virtually all courts have held that approval of a proposed sale of assets of a debtor under section 363 outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor in possession. *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Abbotts Dairies of Pa.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *Titusville Country Club V. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

In determining whether the debtor-in-possession has complied with the sound business judgment rule, the Court must consider whether: (a) there has been "[a]ny improper or bad motive," (b) the "price is fair and the negotiations or bidding has occurred at arm's length" and (c) the sale followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest." *In re Castre*, 312 B.R. 426, 428 (Bankr. D. Colo.

2004). When applying the rule, "the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (considering the rule in the context of the debtor's decision to reject a contract).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods*., Inc., 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)). As long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

**B.      The Bid Procedures are appropriate and will maximize the value received for the Property.**

To achieve the goal of maximizing the proceeds received by the estate in any proposed sale of property, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should]

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

Procedures to dispose of assets, similar to the proposed Bid Procedures, have been approved in other bankruptcy cases. *See, e.g.*, *In re Shift Technologies, Inc.*, Case No. 23-30687 (HLB) [Dkt. No. 366] (Bankr. N.D. Ca. Jan. 18, 2024); *In re Ravn Air Group, Inc.*, Case No. 20-10755 (BLS) (Bankr. D. Del. June 3, 2020); *In re IMRIS, Inc.*, Case No. 15-11133 (CSS) (Bankr. D. Del. June 16, 2015); *In re Velti Inc.*, Case No. 13-12878 (PJW) (Bankr. D. Del. Nov. 20, 2013); *In re Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. Jul. 8, 2013); *In re Conex Holdings LLC*, Case No. 11-10501(CSS) (Bankr. D. Del. Sept. 14, 2011); *In re Barnes Bay Dev. Ltd.*, Case No. 11-10792 (PJW) (Bankr. D. Del. May 19, 2011); *In re East West Resort Dev. V, L.P., L.L.L.P.*, Case No. 10-10452 (BLS) (Bankr. D. Del. March 31, 2010); *In re Dana Corp.*, Case No. 06-10354 (Bankr. S.D.N.Y. Oct. 19, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. June 22, 2006); *In re Oxford Automotive, Inc.*, Case No. 04-74377 (Bankr. E.D. Mich. Jan. 24, 2005); *see also In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Dec. 6, 2006).

The Debtors believe that the Bid Procedures will establish the parameters under which the value of the Property may be tested at one or more auctions and through the ensuing Sale Hearing during this initial sale process. Such procedures will increase the likelihood that the Debtors' creditors will receive the greatest possible consideration for their assets because they will ensure a competitive and fair bidding process. They also allow the Debtors to undertake an auction in as expeditious and efficient a manner as possible, which the Debtors believe is essential to maximizing the value of the Debtors' estate for their creditors.

The Debtors also believe that the proposed Bid Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the highest or otherwise best offer reasonably available for all or a portion of the Property. In particular, the proposed Bid Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. Further, the Bid Procedures provide the Debtors with the opportunity to consider all

Qualified Bids and to select, in their reasonable business judgment, and after consultation with its legal and financial advisors the highest or otherwise best offer(s) for all or a portion of the Property. Moreover, the Bid Procedures provide the Debtors with the flexibility to modify the Bid Procedures, in consultation with the Consultation Parties, if necessary, to maximize value for the Debtors' estates.

At the same time, a prompt sale process is necessary because of the Milestones to which the Debtors committed under the DIP Credit Agreement. Moreover, to the extent the Debtors are able to sell the Property, or a portion thereof, quickly, the Debtors will reduce their borrowing needs under the DIP Credit Agreement; in other words, the longer that the Debtors must hold onto a portion of the Property, the higher the price that the Debtors will have to obtain for the Property. Finally, as discussed above in detail, the timeline proposed by this Motion is appropriate here because the Debtors engaged in an extensive prepetition marketing process and, postpetition, in a broad-based, comprehensive, and robust marketing process led by Graham & Associates.

In sum, the Debtors believe that the Bid Procedures will encourage bidding for the Property and are consistent with the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, the proposed Bid Procedures are reasonable, appropriate, and within the Debtors' sound business judgment.

### C. The option to provide for bid protection in the form of a break-up fee and expense reimbursement has become a recognized and necessary practice and is appropriate under the circumstances.

The Debtors have formulated a bidding process that the Debtors believe will induce prospective competing bidders to expend the time, energy, and resources necessary to submit a bid, and which the Debtors believe is fair and reasonable and will provide a benefit to the Debtors' estates and creditors. As an inducement to potential Qualified Bidders to participate in the bidding process as a stalking horse bidder, the Debtors request the ability, in consultation with the Consultation Parties, to offer the Bid Protections to one or more Qualified Bidders, so long as such Qualified Bidders are not insiders of the Debtors. The Bid Procedures and, in particular, the proposed Bid Protections, are reasonable and supported by applicable case law.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

The use of bid protections such as these has become an established practice in chapter 11 asset sales involving the sale of significant assets because such bid protections enable a debtor to ensure a sale to a contractually committed bidder at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an enhanced recovery through an auction process. Historically, bankruptcy courts have approved bidding incentives (including bid protections) solely by reference to the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., In re 995 Fifth Ave. Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (holding that bidding incentives may "be legitimately necessary to convince a "white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); *In re Marrose Corp.*, Nos. 89 B 12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) ("bidding incentives are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"). *See also In re Integrated Res.*, 147 B.R. 650, 657-58 (S.D.N.Y. 1992).

In evaluating the appropriateness of a break-up fee, the appropriate question for the Court to consider is "whether the break-up fee served any of three possible useful functions: (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow; or (3) to attract additional bidders." *In re Integrated Resources, Inc.*, 147 B.R. at 662.

The Bid Protections proposed by the Debtors are consistent with the "business judgment rule" and constitute an administrative expense. To the extent the Debtors enter into a Stalking Horse Agreement, such Stalking Horse Agreement will serve as a minimum or floor bid for other bidders. The proposed Bid Protections should be approved as fair, reasonable, and well within the range of bid protections typically approved by bankruptcy courts, which fall within the range of 2 to 5 percent of the purchase price. *See, e.g.*, *In re Verity Health Sys. Of Cal., Inc.*, Case No. 2:18-bk-20151-ER (Bankr. C.D. Cal., Apr. 1, 2020) [Dkt. No. 4398] (approving break-up fee equal to 2.78 percent of purchase price); *In re Shift Technologies, Inc.*, Case No. 23-30687 (HLB) (Bankr. N.D. Ca. Mar. 7, 2024) [Dkt. No. 527] (approving break-up fee equal to 3 percent of purchase price); *In re Hipcricket, Inc.*, Case No. 15-10104 (LSS) (Bankr. D. Del., Feb. 11, 2015) (approving

break-up fee, which, together with expense reimbursement, was 4.3 percent of the purchase price under stalking horse agreement); *In re Point Blank Solutions, Inc.*, Case No. 10-11255 (PJW) (Bankr. D. Del. Oct. 5, 2011) (court approved break-up and expense reimbursement of 3.75 percent or $750,000 in connection with sale of debtor's assets for purchase price of $20,000,000); *In re CXM, Inc.*, 307 B.R. 94, 103-04 (Bankr. N.D. Ill. 2004) (court approved break-up fee in amount equal to the actual expenses that the stalking horse incurred in connection with its bid to buy the Property, subject to a maximum cap of $200,000, which equaled 3% of the cash purchase price of $5,914,000).

Therefore, the Debtors' payment of the Bid Protections (*i.e.*, a break-up fee and expense reimbursement for a Non-Insider Stalking Horse Agreement of no more than three percent (3%), in the aggregate, of the purchase price of such Non-Insider Stalking Horse Agreement) under the conditions set forth in this Motion is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that a stalking horse purchaser will continue to pursue the proposed agreement to undertake the sale of the Property, and therefore constitute administrative expenses with priority pursuant to Bankruptcy Code section 503(b).

### D. Notice of the proposed sale is reasonable under the circumstances.

The Debtors submit that the Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures, the Auction (if necessary), the Sale Objection Deadline, the Sale Hearing, and the Sale.

Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Debtors' assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtors submit that the Notice Procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale by auction to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Property. The proposed time frame between the filing of this

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Motion, the commencement of the bidding process and the Auction will provide interested purchasers sufficient time to participate in the Auction.

### E. The Successful Bidder should be granted the protection of Bankruptcy Code section 363(m).

As will be set forth in further detail at the Sale Hearing, the Debtors also maintain that the Successful Bidder is entitled to the protections afforded by Bankruptcy Code section 363(m).

Specifically, Bankruptcy Code section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), has held that:

> the requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

As the Debtors will demonstrate at the Sale Hearing, over the weeks leading up to the Sale Hearing, the Debtors will have spent a considerable amount of time and resources negotiating the proposed purchase and sale agreement at arm's length, with give and take on both sides. Under

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

the circumstances, this Court should find that the Successful Bidder is entitled to all of the protections of Bankruptcy Code section 363(m).

### F. The Purchase Agreement is not the subject of collusive bidding under Bankruptcy Code section 363(n).

As set forth above, the Debtors have begun to engage with certain prospective bidders at arm's length and in good faith regarding the sale of the Property. Moreover, the Debtors do not believe that any sale pursuant to the Bid Procedures will be the result of collusion or other bad faith between bidders or that the purchase price under the proposed purchase and sale agreement has been or will be controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n).

As will be set forth in further detail at the Sale Hearing, the Sale has and will have been negotiated, proposed, and entered into without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor, as will be demonstrated at the Sale Hearing, any Successful Bidder, have or will have engaged in any conduct that would cause or permit the proposed purchase and sale agreement to be avoided under Bankruptcy Code section 363(n).

### G. Sale of the Property should be free and clear of liens, claims, encumbrances, and interests.

Pursuant to section 363(f) of the Bankruptcy Code, the Debtors seek authority to sell and transfer the Debtors' right, interest, and title in the Property to the Successful Bidder free and clear of all liens, claims, encumbrances, and interests, except as set forth in the proposed purchase and sale agreement, with such liens, claims, encumbrances, and interests, to attach to the proceeds of the Sale of the Property, subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this Section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the requirements is met).

With respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1) to (5) has been satisfied. Those holders of liens, claims, encumbrances, or interests who did not object or who withdraw their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of liens, claims, encumbrances, or interests who do object fall within one or more of the other subsections of Bankruptcy Code section 363(f), including that such holder could be compelled to accept a money satisfaction of such interest, which satisfies section 363(f)(5).

A sale free and clear of liens, claims, encumbrances, or interests is necessary to maximize the value of the Property. A sale of the Property other than one free and clear of all liens, claims, encumbrances, or interests would yield substantially less value for the Debtors' estates, with less certainty than the transaction contemplated in the Form Purchase and Sale Agreement. Therefore, the transaction contemplated by the Form Purchase and Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest. A sale free and clear of liens, claims, encumbrances, or interests is particularly appropriate under the circumstances, because any lien, claim, encumbrance, or interest in, to or against the Debtors' right, interest, and title in the Property that exists immediately prior to the closing of any sales will attach to the sale proceeds allocated to the Debtors with the same validity, priority, force, and effect as it had at such time, subject to the rights and defenses of the Debtors or any party in interest. The Debtors submit that holders of liens, claims, encumbrances, or interests, if any, will be adequately protected by the availability of the proceeds of the sale to satisfy their liens, claims, encumbrances, or interests.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**H.** **The assumption and assignment of the Contracts and the Procedures for assumption and assignment should be authorized.**

Bankruptcy Code section 365(a) authorizes a debtor in possession, "subject to the court's approval," to "assume or reject any executory contract or unexpired lease of the debtor." Courts review a debtor's decision to assume an executory contract under the "business judgment standard." *See, e.g.*, *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (applying the Ninth Circuit's interpretation of the business judgment rule in evaluating a rejection decision under section 365(a)); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (applying business judgment rule in context of assumption of a contract).

As a general matter, the business judgment rule is satisfied in the Ninth Circuit where a company's directors acted on an informed basis, in good faith, with the honest belief that the actions taken were in the best interests of the company. *See, e.g., F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would"); *see also, e.g.*, *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

In applying the business judgment rule under section 365(a), "the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Grp.*, 476 F.3d at 670; *see also* 3 *Collier on Bankruptcy* ¶ 365.03 (noting that the *In re Pomona Valley Med. Group* court's broad reading of the business judgment rule in the context of executory contract rejection "presumably [applied to] assumption as well"). The court should approve the decision to reject or assume a contract under section 365 unless it finds that the decision "is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Pomona Valley Med. Grp.*, 476 F.3d at 670 (quoting *Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

If there has been a default under an unexpired lease, section 365(b)(1) requires that, before a debtor in possession may assume that lease, it must cure the default or provide adequate assurance that it will promptly do so (section 365(b)(1)(A)); compensate, or provide adequate assurance that it will promptly compensate, the other party for any actual pecuniary loss it suffered from the default (section 365(b)(1)(B)); and provide adequate assurance of future performance under the lease (section 365(b)(1)(C)).

Under section 365(f)(1), the debtor in possession may assign an unexpired lease, so long as the requirements of subsection (f)(2) are met. Under section 365(f)(2), the debtor in possession may assign an unexpired lease so long as it assumes the lease "in accordance with the provisions of this section" (section 365(f)(2)(A) and provides "adequate assurance of future performance by the assignee . . ., whether or not there has been a default in [the] lease" (section 365(f)(2)(B).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

To the extent any defaults exist under any Purchased Contract, any such default will be promptly cured, or adequate assurance that such default will be cured will be provided, by the Successful Bidder prior to the assumption and assignment. If necessary, the Debtors will submit facts prior to or at the Sale Hearing to show the financial credibility of the Successful Bidder and willingness and ability to perform under the Purchased Contracts. The Sale Hearing will therefore

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the Purchased Contracts, as required under sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

In addition, the Debtors submit that it is an exercise of their sound business judgment to assume and assign the Purchased Contracts to the Successful Bidder in connection with the consummation of the transactions contemplated in the Successful Bidder's purchase and sale agreement, and the assumption, assignment, and sale of the Purchased Contracts to the Successful Bidder are in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Purchased Contracts being assigned to the Successful Bidder are an integral part of the Property being purchased by the Successful Bidder, and accordingly, such assumption, assignment, and sale of the Purchased Contracts are reasonable and enhance the value of the Debtors' estates. The Purchased Court should therefore authorize the Debtors to assume and assign the Purchased Contracts as set forth herein.

The Debtors submit that the cure procedures set forth herein are appropriate, reasonably calculated to provide notice to any affected party, and afford the affected party the opportunity to exercise any rights affected by the Motion, and consistent with Section 365 of the Bankruptcy Code. To the extent that any defaults exist under any Purchased Contracts, any such defaults will be cured pursuant to the Successful Bidder's purchase and agreement. Accordingly, the Debtors submit that the cure procedures for effectuating the assumption and assignment of the Purchased Contracts as set forth herein are appropriate and should be approved.

## I.     Credit bidding should be authorized.

A secured creditor is allowed to "credit bid" the amount of its claims in a sale of assets in which it has a security interest. Bankruptcy Code section 363(k) provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with Bankruptcy Code

section 506(a), section 363(k) allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the creditor's economic value. *See In re Submicron Sys. Corp.*, 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled . . . that creditors can bid the full face value of their secured claims under section 363(k)").

Absent cause for restriction on credit bidding, courts have consistently ruled in favor of reserving a secured creditor's right to credit bid its claim. *See, e.g.*, *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, No. 2:16-bk-17463-ER, 2016 Bankr. LEXIS 4714, at *34 (Bankr. C.D. Cal. July 6, 2016) (order approving Bid Procedures which authorized parties with secured claims to credit bid under section 363(k)); *In re T Asset Acquisition Co., LLC*, Nos. 2:09-31853-ER, 2010 Bankr. LEXIS 4052, at *8 (Bankr. C.D. Cal. Jan. 28, 2010) (same); *In re Source Home Entm't, LLC*, No. 14-115533 (KG) (Bankr. D. Del. July 21, 2014) (same); *In re Fisker Auto. Hldgs, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Jan. 23, 2014) (same); *In re PTC Alliance Corp.*, No. 09-13395 (Bankr. D. Del. Nov. 6, 2009) (order authorizing, but not directing, the administrative agent to credit bid); *In re Hayes Lemmerz Int'l, Inc.* No. 09-11655 (Bankr. D. Del. Sept. 22, 2009) (order authorizing interested party to exercise its right under Bankruptcy Code section 363(k) to make a credit bid); *In re Foamex Int'l Inc.*, 09-10560, (Bankr. D. Del. May 27, 2009) (order authorizing the sale of substantially all of the debtor's assets in a $155 million credit bid over a $151.5 million all-cash bid); *see also Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459-60 (3d Cir. 2006) (citations omitted).

Here, the Bid Procedures provide that Rabo Ag may, if it chooses, credit bid up to the full amount of the Rabo Ag Debt at the Auction. Should Rabo Ag choose to do so, and if Rabo Ag's bid is determined to be the Successful Bid, the Debtors submit that there is no cause for restriction on Rabo Ag's right to credit bid pursuant to the DIP Credit Agreement, and subject to the *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing; (II) Granting Liens and Superpriority Claims; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Setting a Final Hearing; and (VI) Granting Related Relief* [Dkt. No. 104] and/or any final order approving the DIP Credit Agreement.

## VI. **REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004 AND 6006**

Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally Collier on Bankruptcy* ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id*.

In light of the Debtors' financial constraints and because of the potentially diminishing value of the Property, the Debtors must close the Sale promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

## VII. **NOTICE**

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Trevor Fehr and Paul Leahy); (ii) proposed counsel for the Committee; (iii) Rabo Ag; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. No previous request for the relief sought herein has been made by the Debtors to this or any other court. In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein.

Dated: March 29, 2024          **KELLER BENVENUTTI KIM LLP**

By: */s/ Jane Kim*
         Jane Kim

*Proposed Attorneys for Debtors and
Debtors in Possession*