KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1                                            **<u>Exhibit A</u>**

2                                        **(Proposed Order)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>TRINITAS ADVANTAGED<br>AGRICULTURE PARTNERS IV, LP, *et al.*,[1]<br><br>Debtors. | Case No. 24-50211 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES, (B) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING THE NOTICE PROCEDURES, (D) AUTHORIZING ENTRY INTO ONE OR MORE STALKING HORSE AGREEMENTS, AND (E) SETTING A DATE FOR THE SALE HEARING** |

Date: April 19, 2024
Time: 10:00 a.m. (Pacific Time)
Place: **Tele/Videoconference Appearances Only**
United States Bankruptcy Court
280 South First Street
San Jose, California 95113-3099

---

[1] The last four digits of Trinitas Advantaged Agriculture Partners IV, LP's tax identification number are 3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/trinitas. The Debtors' service address is 2055 Woodside Road, Suite 195, Redwood City, CA 94061.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Upon the Motion, dated as of March 29, 2024 (the "Motion"),[2] of the above-captioned debtors and debtors in possession (the "Debtors") in the Chapter 11 Cases, pursuant to sections 105(a), 363(b), 363(f), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules") for (i) entry of a Bid Procedures Order (a) authorizing and approving the bid procedures (as appended to the Bid Procedures Order as Exhibit 1, the "Bid Procedures"), (b) approving procedures related to the assumption and assignment of certain executory contracts and unexpired leases, (c) approving the form and manner of the sale notice and cure notice (the "Notice Procedures"), (d) authorizing the Debtors to enter into one or more "stalking horse" purchase agreements, subject to higher and better bids, and (e) setting the time, date, and place of a hearing (the "Sale Hearing") to consider the sale and the assumption and assignment of the Purchased Contracts (as defined below); (ii) entry of an order (the "Sale Order") authorizing and approving (a) the sale of the Debtors' right, title, and interest in the property (the "Property"), free and clear of all liens, claims, encumbrances, and interests (each as described below), pursuant to section 363 of the Bankruptcy Code; (b) the assumption and assignment of certain executory contracts and real property leases pursuant to section 365 of the Bankruptcy Code, and (c) payment of Bid Protections (as defined in the Motion), if applicable; and (iii) such other and further relief as the Court deems just and proper; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

---

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

§§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and the Hoiberg Declaration; and this Court having held a hearing at the above-captioned date and time, with appearances as noted on the record, to consider the relief requested in the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. Those portions of the Motion seeking approval of the Bid Procedures, the Bid Protections, the Notice Procedures, and setting the time, date and place of the Sale Hearing are GRANTED.

2. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these Chapter 11 Cases.

**Bid Procedures**

3. The Bid Procedures attached hereto as **Exhibit 1** are hereby APPROVED, and the Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures.

**The Sale Schedule**

4. The dates and deadlines below are approved, but may also be modified by the Debtors to the extent permitted under the Bid Procedures.

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Bid Procedures Objection Deadline | April 19, 2024 (or 7 days before Bid Procedures Hearing) | Deadline by which any objections to the Bid Procedures must be filed with the Court and served so as to be actually received by the Objection Notice Parties (as defined below). |

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Bid Procedures Hearing | April 26, 2024 10:00 a.m. (PT) | Date for the hearing to consider the approval of the Bid Procedures. |
| Bid Procedures Order | April 30, 2024 | Last date by which the Court shall have entered the order approving the Bid Procedures, in form and substance acceptable to Rabo Ag, under the DIP Credit Agreement. |
| Cure Notice | May 2, 2024 (or two business days following entry of the Bid Procedures Order) | Date by which the Debtors will serve the Cure Notice upon each counterparty to a Potential Purchased Contract and file a global exhibit listing Cure Amounts (as defined below) for all Potential Purchased Contracts. |
| Sale Notice | May 2, 2024 (or two business days following entry of the Bid Procedures Order) | Date by which the Debtors will file and serve the Sale Notice. |
| Stalking Horse Deadline | May 17, 2024 | Date up to which the Debtors may enter into one or more Stalking Horse Agreements. |
| Bid Deadline | May 17, 2024 | Deadline by which the Debtors must *actually receive* binding Qualified Bids from Qualified Bidders. |
| Cure Objection Deadline | May 23, 2024 4:00 p.m. (PT) | Deadline by which objections to the proposed assumption and assignment of the applicable Potential Purchased Contract (including to the proposed Cure Amounts, if any), must be filed with the Court and served so as to be actually received by the Objection Notice Parties, provided, however, that objections with respect to the Successful Bidder's ability to provide adequate assurance of future performance may be raised at the Sale Hearing. |
| Starting Bid Notice Deadline | May 29, 2024 | The Debtors will provide to all Qualified Bidders participating in an Auction a Starting Bid Notice stating the Starting Bid and the bidding increments for each lot. |
| Auction (if necessary) | May 30, 2024 11:00 a.m. (PT) | Date on which the Debtors will begin the Auction (pursuant to the DIP Credit Agreement, the Auction must have been conducted by May 31, 2024). |

| Event | Date or Proposed Date | Deadline |
|---|---|---|
| Auction Results Notice | June 3, 2024<br><br>(or one business day after the conclusion of the Auction) | Date by which the Debtors will serve notice of the results of the Auction to all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to receive notices related to the sale process. |
| Sale Objection Deadline | June 7, 2024<br><br>4:00 p.m. (PT) | Deadline by which Sale Objections must be filed with the Court and served so as to be actually received by the Objection Notice Parties. |
| Sale Reply Deadline | June 12, 2024 | Deadline by which the Debtors and/or the Successful Bidder(s) will file and serve their reply, if any, in support of the Sale Motion. |
| Sale Hearing | June 14, 2024<br><br>10:00 a.m. (PT) | Date for the hearing to consider approval of the Sale pursuant to section 363 of the Bankruptcy Code. |
| Sale Order Deadline | Within 3 business days following the Sale Hearing | Date by which the Court shall have entered the Sale Order, pursuant to the DIP Credit Agreement. |

**Sale Notice Procedures**

5.     The Sale Notice, substantially in the form attached to hereto as **Exhibit 2**, is sufficient to provide effective notice to all interested parties of the Bid Procedures, the Auction, the Sale contemplated under the Bid Procedures, and the assumption and assignment of the Purchased Contracts, pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and is hereby approved.

6.     Within two business days following entry of this Bid Procedures Order, the Debtors (or their agent) shall serve the Sale Notice, by first-class mail, postage pre-paid, upon (a) the Objection Notice Parties (as defined below), (b) any parties requesting notices in this case pursuant to Bankruptcy Rule 2002, (c) all entities reasonably known to have expressed an interest in a transaction with respect to any of the Property during the past nine (9) months, (d) all parties known by the Debtors to assert a lien on any of the Property, (including the county tax collector for each county in which the Property is located), (e) all persons known or reasonably believed

to have asserted an interest in any of the Property, (f) all non-Debtor parties to any Potential Purchased Contracts, (g) all taxing authorities having jurisdiction over any of the Property, including the IRS, (h) the Debtors' insurers, (i) all known creditors of the Debtors, (j) all known holders of equity interests in the Debtors, (k) all environmental authorities having jurisdiction over any of the Property, and (l) to the extent not included above, all parties in interest listed on the Debtors' creditor matrix.

**Sale Objection Procedures**

7.      Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale of the Purchased Property ("Sale Objection") shall file a formal objection that complies with the procedures set forth in the Motion.  Each Sale Objection shall state the legal and factual basis of such objection and may be orally supplemented at the Sale Hearing.

8.      Any and all written objections as contemplated by this Order (other than an Assumption Objection (as defined below), which will be governed by the procedures addressing Assumption Objections set forth below) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, California 94102, together with proof of service, **on or before 4:00 p.m. (prevailing Pacific Time) on June 7, 2024** (the "Sale Objection Deadline") and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the following parties (collectively, the "Objection Notice Parties"): (i) Debtors' counsel, Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., 425 Market Street, 26th Floor, San Francisco, CA 94105, jkim@kbkllp.com, jrichards@kbkllp.com; (ii) counsel to the Administrative Agent, Fennemore Dowling Aaron, 8080 N. Palm Avenue, 3rd Floor, Fresno, California 93711 (Attn. J. Jackson Waste (jwaste@fennemorelaw.com), Don J. Pool (dpool@fennemorelaw.com), Jerome A. Grossman (jgrossman@fennemorelaw.com), and Anthony A. Austin (aaustin@fennemorelaw.com); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, California 94102, Attn: Trevor Fehr (Trevor.Fehr@usdoj.gov) and Paul Leahy (Paul.Leahy@usdoj.gov); and (iv) counsel to the Creditors' Committee, (x) Raines

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Feldman Littrell LLP, 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626 (Attn. Robert S. Marticello (rmarticello@raineslaw.com)), (y) Raines Feldman Littrell LLP, 30 North LaSalle Street, Suite 3100, Chicago, IL 60602 (Attn. Mark S. Melickian (mmelickian@raineslaw.com)), and (z) Husch Blackwell LLP, 120 South Riverside Plaza, Suite 2200, Chicago, IL 60606 (Attn. Michael A. Brandess (Michael.brandess@huschblackwell.com)).

9.      Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).  All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived, or otherwise resolved.

**Assumption and Assignment Procedures**

10.      The procedures relating to assumption and assignment of the Purchased Contracts set forth below (the "Contract Procedures"), including the form of cure notice attached hereto as **Exhibit 3** (the "Cure Notice"), are hereby authorized, approved, and made part of this Order as if fully set forth herein.

11.      The Debtors will serve the Cure Notice upon each counterparty to a Potential Purchased Contract by no later than two business days following entry of the Bid Procedures Order.  The Cure Notice will identify the amounts, if any, that the Debtors believe are owed to each counterparty to a Potential Purchased Contract in order to cure any defaults that exist under such contract as required under Bankruptcy Code section 365(b)(1).

12.      To the extent there is a contract added to the list of contracts to be assumed by the Successful Bidder pursuant to the Successful Bidder's purchase and sale agreement selected at the Auction, each such contract will be listed on an exhibit to the Successful Bidder's purchase and sale agreement, and each counterparty to such contract will be given a separate Cure Notice filed and served by overnight delivery within 24 hours of the conclusion of the Auction and announcement of the Successful Bidder

13.      The inclusion of a contract, lease, or other agreement on either the Cure Schedule or a Cure Notice shall not (a) constitute or be deemed a determination or admission by the Debtors

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

and their estates or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved; or (b) obligate the Debtors to assume any Potential Purchased Contract listed thereon or the Successful Bidder(s) to take assignment of such Potential Purchased Contract. Only those Purchased Contracts that are included on a schedule of assumed and acquired contracts attached to the final purchase and sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such purchase and sale agreement) will be assumed and assigned to the Successful Bidder upon the closing of such Sale.

14. If a Purchased Contract is assumed and assigned pursuant to the Sale Order or other order of the Court, then unless the Purchased Contract counterparty properly and timely files and serves an objection to the Cure Amounts contained in the Cure Notice by the Assumption Objection Deadline, the Purchased Contract counterparty will receive, from the applicable Successful Bidder, at the time of the assumption and assignment (as specified below), only the Cure Amounts as set forth in the Cure Notice, if any.

15. If any counterparty objects for any reason to the assumption and assignment of a Potential Purchased Contract (including to the proposed Cure Amount, if any) (an "Assumption Objection"), the Debtors propose that the counterparty must file the objection and serve it so as to be actually received by the Objection Notice Parties by no later than **4:00 p.m. (prevailing Pacific Time) on May 23, 2024** (the "Cure Objection Deadline"), provided, however, that any counterparty may raise at the Sale Hearing an objection to the assumption and assignment of the Purchased Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Purchased Contract. Any objection must (a) set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Cure Notice, and set forth any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder and state, with specificity, the legal and factual

basis for the objection; (b) include appropriate documentation in support of the objection; and (c) be filed and served so as to be received by the Cure Objection Deadline.

16. If, following the closing date of the respective Sale, and only to the extent permitted under the purchase and sale agreement that is the Successful Bid, the Successful Bidder designates as a Purchased Contract a contract or lease not included as a Potential Purchased Contract and not previously rejected by the Debtors, the Debtors will promptly serve, at Successful Bidder's expense, a supplemental notice of potential assumption and assignment by electronic transmission, hand delivery, or overnight mail on the counterparty to such impacted Purchased Contract (each, a "Supplemental Purchased Contract Counterparty"), and its attorney, if known, at the last known address available to the Debtors (a "Supplemental Cure Notice"). Each Supplemental Cure Notice will include the same information with respect to listed Contracts as was included in the Cure Notice with respect to the Potential Purchased Contracts.

17. Any Supplemental Purchased Contract Counterparty may file an objection (a "Supplemental Purchased Contract Objection") to, as applicable, the proposed assumption and assignment of such Purchased Contract, the proposed Cure Amounts (if any), or adequate assurance of future performance by the Successful Bidder. All Supplemental Purchased Contract Objections must: (a) set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Supplemental Cure Notice, and/or set forth, with specificity, any reason that the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder, and state, with specificity, the legal and factual basis for the objection and, if applicable, what Cure Amounts are required; (b) include appropriate documentation in support of the objection; and (c) be filed and served so as to be actually received by the Objection Notice Parties no later than ten (10) days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

18. If a Supplemental Purchased Contract Counterparty files a Supplemental Purchased Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

expedited hearing before the Court, and such dispute will be resolved at such expedited hearing or, in the Debtors' discretion, adjourned to a later hearing. If there is no such timely objection, then (a) such Purchased Contract shall be deemed assumed and assigned pursuant to the Sale Order, without further order of the Court and the Supplemental Purchased Contract Counterparty will be deemed to have consented to the assumption and assignment of the Purchased Contract; and (b) the Cure Amounts, if any, set forth on the Supplemental Cure Notice shall be controlling, notwithstanding anything to the contrary in any Purchased Contract or any other document.

19. The Successful Bidder shall be responsible for paying any Cure Amount for a Purchased Contract that is assumed and assigned and for satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Purchased Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Purchased Contract shall not excuse the Successful Bidder from performance of any and all of its obligations pursuant to the Successful Bidder's purchase and sale agreement. Cure Amounts disputed by any counterparty will be resolved by the Court at the Sale Hearing or such later date as may be agreed to or ordered by the Court. Nothing herein shall restrict the ability of the Debtors to reject or terminate a contract or lease that has not been designated as a Purchased Contract as of the Closing Date, except to the extent provided in the purchase and sale agreement that is the Successful Bid.

**The Stalking Horse Agreement(s)**

20. Subject to the Bid Procedures and approval at the Sale Hearing (as to which all parties' rights are reserved), the Debtors' entry into one or more Stalking Horse Agreements, subject to higher and better bids, is authorized, provided, however, that any Bid Protections shall be subject to Court approval at the Sale Hearing.

**Other Relief Granted**

21. The Auction is scheduled for **11:00 a.m. on May 30, 2024**, at the offices of Keller Benvenutti Kim LLP, located at 425 Market Street, 26th Floor, San Francisco, California 94105, or such other location, including by virtual meeting, as shall be timely communicated to all

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

entities entitled to attend the Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties.

22.     A hearing (the "Sale Hearing"), at which the Debtors shall seek approval of the Successful Bid (as defined in the Bid Procedures) shall be held in this Court on **June 14, 2024 at 10:00 a.m. (PT)**.  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

23.     Rabo Ag will be permitted to credit bid up to the full amount of the Rabo Ag Debt at the Auction, subject to the Committee's right to challenge the nature, extent, validity, priority, perfection, or amount of the Rabo Ag Debt, and subject to § 363(k) of the Bankruptcy Code.

24.     The failure of the Committee to object to a bid put forth by Rabo Ag or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection, or amount of Rabo Ag's alleged liens, security interests, and claims or (b) release Rabo Ag from any causes of action which can be brought by or on behalf of the Debtors' estates.

25.     All entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of the Court with respect to all matters related to the terms and conditions of the transfer of Property, the Auction, and any transaction contemplated herein.

26.     In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

27.     Nothing in this Bid Procedures Order or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

28.     This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Bid Procedures Order.

29.     This Bid Procedures Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Bid Procedures

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Bid Procedures Order.

**END OF ORDER**

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**Exhibit 1**

**(Bid Procedures)**

# BID PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities as set forth in the Asset Purchase Agreement (the "Sale").

Trinitas Advantaged Agriculture Partners IV, LP together with certain of its affiliates who are debtors and debtors in possession (collectively, the "Debtors") in the chapter 11 cases proceeding in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Court") under the caption *In re Trinitas Advantaged Agriculture Partners IV, LP, et al.*, Case No. 24-50211 (DM) (the "Chapter 11 Cases"), have established the following procedures (the "Bid Procedures") to govern the sale of all, substantially all, or a portion of the Debtors' portfolio of almond ranches and operations (collectively, the "Property"), subject to Court approval:

a. <u>Provisions Governing Qualifications of Bidders</u>.  Unless otherwise ordered by the Court, for cause shown, or as otherwise determined by the Debtors, in order to participate in the bidding process for all or some of the Property, prior to the Bid Deadline (as defined below), each person who wishes to participate in the bidding process for all or some of the Property (a "Potential Bidder") must deliver the following, **by electronic mail** to the Debtors as follows: (i) Trinitas Advantaged Agriculture Partners IV, LP, and the other Debtors, Attn: Ryon Paton, ryon.paton@trinitaspartners.com; (ii) Debtors' counsel: Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., jkim@kbkllp.com, jrichards@kbkllp.com; (iii) Debtors' financial advisors: Arch + Beam, Attn: Matthew English and Michael Bloom, menglish@arch-beam.com, mbloom@arch-beam.com; and (iv) Debtors' Broker, Graham & Associates, Attn: Bradley Bickers and Landon Fernandes, brad@gbbadvisors.com, landon@mdgre.com:

   (i) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors;

   (ii) an expression or indication of interest, letter of intent, or offer (all of which may be non-binding and revocable) that demonstrates, to the Debtors' satisfaction, a bona fide interest in purchasing the Property or a portion of the Property from the Debtors, at a price that meets a minimum threshold for such Property, or portion thereof, as indicated by the Debtors (in consultation with the Consultation Parties, as defined below);

   (iii) sufficient information, as determined by the Debtors (in consultation with the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee") and Rabo Agrifinance, LLC ("Rabo Ag," and together with the Creditors' Committee, the "Consultation Parties")), to demonstrate proof of financial wherewithal, including:

      (A) <u>Disclosure of Identity</u>.  Fully disclose the identity of each Potential Bidder, including any principal or representative that will be bidding for the Property on behalf of the Potential Bidder or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as any of Debtors' creditors or Insiders (as defined under 11 U.S.C. § 101) associated with the Potential Bidder;

(B) <u>Proof of Financial Wherewithal</u>. Demonstration (to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties) of sufficient financial wherewithal to be able to close on a purchase of the Property, which may include:

(1) current audited financial statements and latest unaudited financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Property, current audited financial statements and latest unaudited financial statements of the equity holders of the potential bidder who will guarantee the obligations of the potential bidder;

(2) current financial bank statements, screenshot(s) of bank account balance(s), a letter from the bank of the potential bidder indicating the availability of the funds;

(3) written evidence of a firm, irrevocable commitment for financing; and/or

(4) such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtors and their financial advisors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale; and

(iv) if the Potential Bidder is represented by a broker, the broker's retention agreement.

A Potential Bidder that has executed a confidentiality agreement and has otherwise complied with the requirements described above, and that the Debtors determine in their reasonable business judgment, after consultation with their counsel, financial and other advisors, and the Consultation Parties, is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale of the Property (the "<u>Sale</u>"), will be deemed a "<u>Qualified Bidder</u>."

For the sake of clarity, the fact that a bidder has been deemed a "Qualified Bidder" does <u>not</u>, by itself, entitle such bidder to participate at the Auction. In order to participate in the Auction or any other overbidding process pursuant to these Bid Procedures, a Qualified Bidder must also submit, by the Bid Deadline, a Bid that is determined to be a Qualified Bid, as defined in, and in accordance with, these Bid Procedures.

b. <u>Bid Deadline</u>. A Qualified Bidder that desires to make a Bid (as defined below) will deliver written copies of its Bid **by electronic mail** to the Debtors and Debtors' counsel at the addresses set forth in (a) above, so as to be received not later than **May 17, 2024, at 4:00 p.m. (PT)** (as may be extended as set forth herein, the "<u>Bid Deadline</u>"). As soon as practicable after receipt of a Bid, but in no event more than 24 hours after receipt of a Bid, Debtors' counsel shall provide copies of the Bid and all related documents to counsel for each of the Consultation Parties. The Debtors, in consultation with the Consultation Parties, may extend the Bid Deadline to address any inadequacies in an otherwise sufficient Bid submitted by the Bid Deadline.

c. <u>Provisions Governing Qualified Bids</u>. An offer, solicitation, or proposal (each, a "<u>Bid</u>") that is submitted in writing by a Qualified Bidder and satisfies each of the following

requirements, as determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, shall constitute a "Qualified Bid":

(i) *Property*. Each Bid must state that the applicable Qualified Bidder offers to purchase all or a portion of the Property, upon the terms and conditions substantially as set forth in the form of either the Purchase and Sale Agreement and Joint Escrow Instructions or the Vacant Land Purchase Agreement and Joint Escrow Instructions, and addendum thereto, which will be provided by the Debtors and filed by the Debtors in the Chapter 11 Cases in advance of the hearing on these Bid Procedures (in either case, the "Form Purchase and Sale Agreement"), including without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure, or upon alternative terms and conditions that the Debtors, in consultation with the Consultation Parties, reasonably determine are no less favorable than the terms and conditions of the Form Purchase and Sale Agreement. Each Bid must specifically identify the particular property or properties to which it relates.

(ii) *Purchase Price; Minimum Bid*. Each Bid must clearly set forth the purchase price to be paid (the "Purchase Price") along with (a) the gross acreage of the Property being purchased (the "Gross Acreage"), (b) the purchase price per acre (the "Purchase Price Per Acre"), calculated by dividing the Purchase Price by the Gross Acreage, and (c) the purchase price allocated by ranch, to facilitate bid comparisons by the Debtors, the Consultation Parties, and each of their respective advisors. The Purchase Price shall include: (a) cash in an amount not less than any minimum bid amount previously identified by the Debtors for the Property or relevant portion thereof (the "Cash Consideration"); (b) all amounts that are necessary to cure any defaults owed under any contract or unexpired lease that the Qualified Bidder identifies in the Bid for assumption and assignment (the "Cure Amounts"); (c) estimated Cultural Costs (as defined in the Form Purchase and Sale Agreement to be paid at closing (with such actual accrued Cultural Costs with respect to the 2024 crops to be measured until the date of closing, unless Buyer identifies a different date for such measurement), in accordance with the "Cultural Cost Budget" shared by the Debtors in the data room maintained by the Debtors and their professionals; and (d) all other estimated prorations and other expenses to be paid by Buyer at closing. The Debtors reserve the right to set and/or adjust any minimum bid amounts with respect to the Property and any portion thereof at any time within their discretion (in consultation with the Consultation Parties) in order to maximize the value of the Assets.

(iii) *Closing Date*. Each Bid must require that the Sale close by the date that is fourteen (14) days after the entry of a Sale Order by the Bankruptcy Court, but in no event later than July 1, 2024.

(iv) *Binding and Irrevocable*. Each Bid must be unconditional and irrevocable, subject only to Bankruptcy Court approval, and include a letter, signed by an authorized representative of the Qualified Bidder who has authority to bind the Qualified Bidder, stating that the Qualified Bidder's Bid is irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) (x) with respect to the Successful Bidder only, 45 days after the Sale Hearing, subject to further extensions as may be agreed to

pursuant to the applicable purchase agreement, and (y) with respect to the Back-Up Bidder only, the Back-Up Bid Expiration Date (as defined below).

(v) *Marked Agreement*. Each Bid must include a duly authorized and executed Purchase and Sale Agreement and Joint Escrow Instructions or Vacant Land Purchase Agreement and Joint Escrow Instructions, and addendum thereto, which agreement shall include, among other things, the Purchase Price for the Property expressed in U.S. Dollars, the Gross Acreage to be purchased, the Purchase Price Per Acre, and the purchase price allocated by ranch, and which must be accompanied by all exhibits and schedules thereto, as well as such additional ancillary agreements as may be required by the Qualified Bidder, with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the Form Purchase and Sale Agreement (collectively, a "Marked Agreement"), and the proposed order for approval of the Sale by the Court proposed by the Qualified Bidder ("Proposed Sale Order"). To be deemed a Qualified Bid, a Bid may not contain additional termination rights, covenants, financing or due diligence contingencies, shareholder, board of director or other internal approval contingencies, or closing conditions, other than as may be included in the Form Purchase and Sale Agreement (it being agreed and understood that such Bid shall modify the Form Purchase and Sale Agreement as needed to comply in all respects with the Bid Procedures Order, and will remove provisions that apply only to the stalking horse bidder, if any, such as the Bid Protections).

(vi) *As-Is, Where-Is*. Each Bid must include an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Property prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in the Marked Agreement; and (d) is not entitled to any expense reimbursement or break-up fee in connection with its bid unless expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline.

(vii) *Affirmative Statement*. Each Bid shall be accompanied by an affirmative statement that: (i) the Qualified Bidder submitting such Bid has acted in good faith consistent with section 363(m) of title 11 of the United States Code (the "Bankruptcy Code") and not in any manner prohibited by section 363(n) of the Bankruptcy Code; (ii) the Qualified Bidder submitting such Bid has and will continue to comply with the Bid Procedures and any Order approving the Bid Procedures; and (iii) the Qualified Bidder submitting such Bid waives any substantial contribution (administrative expense) claims under section 503(b) of the Bankruptcy Code related to the bidding for the Debtors' assets or otherwise participating in the Auction, except as expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline.

(viii) *Authorization*. Each Bid must include evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with

respect to the submission, execution, delivery, and closing of the transactions contemplated by the Marked Agreement and the Sale.

(ix) *Deposit*. Each Bid must be accompanied by a cash deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check, or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to five percent (5.0%) of the Purchase Price, which the Debtors shall hold in trust, to be dealt with as provided for under "Deposits" herein.

(x) *Executory Contracts*. Each Bid must identify with particularity which executory contracts or unexpired leases the Qualified Bidder wishes to assume, include an acknowledgment and representation that the Qualified Bidder will assume the Debtors' obligations under such executory contracts and unexpired leases, including all Cure Amounts, and identify with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing.

(xi) *Adequate Assurance*. Each Bid must include evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future under the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

(xii) *Consent to Jurisdiction*. Each Bid must state that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court.

(xiii) *Additional Information*. Each Bid must contain any other information reasonably requested by the Debtors.

(xiv) *Bid Deadline*. Each Bid must be received by the Bid Deadline.

The Debtors will determine, in their reasonable business judgment, and in consultation with the Consultation Parties, whether to entertain Bids for the Property that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. The Debtors reserve the right, in consultation with the Consultation Parties, to continue to negotiate the terms of any Qualified Bid with the applicable Qualified Bidder after the Bid Deadline and prior to the Auction.

d. Stalking Horse. At any time prior to the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may enter into one or more Purchase and Sale Agreements, subject to higher and better bids, which will serve as the "stalking horse" bid for the Property or portions thereof (each, a "Stalking Horse Agreement"). In the event that the Debtors enter into one or more Stalking Horse Agreements, with respect to which the prospective purchaser is not an insider of the Debtors (a "Non-Insider Stalking Horse Agreement"), the Debtors may seek approval at the Sale Hearing of a break-up fee and expense reimbursement of no more than three percent (3%) in the aggregate of the Cash Consideration of such Non-Insider Stalking Horse Agreement (together, the "Bid Protections"). Promptly upon entering into a Stalking Horse Agreement, the Debtors shall notify all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to continue to receive notices related to the sale process, of the Debtors'

entry into a Stalking Horse Agreement and provide them with a copy of such Stalking Horse Agreement.

e.  Aggregate Bids. The Debtors may, in consultation with the Consultation Parties, aggregate separate bids from unaffiliated persons to create a "Qualified Bid" from a "Qualified Bidder," including at the Auction with respect to bids for separate portions of the Property, to determine the highest or otherwise best Qualified Bid(s); provided that all Qualified Bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

f.  Evaluation of Competing Bids.  A Qualified Bid, and the determination of the highest or otherwise best Qualified Bid(s), will be valued based upon several factors including, without limitation, items such as the Purchase Price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder) provided by such Bid, the claims likely to be created by such Bid in relation to other Bids, the counterparties to the transactions, the proposed revisions to the relevant transaction documents, the portions of the Property included in such Qualified Bid, the effect of the transactions on the estimated overall value to be received by the Debtors' estates for the Property, the effect of the transactions on the value of the ongoing businesses of the Debtors (including ongoing relationships with partners, customers, and suppliers), other factors affecting the speed, certainty, and value of the transactions (including any regulatory approvals required to close the transactions), the transition services required from the Debtors post-closing and any related restructuring costs, and the likelihood and timing of consummating such transactions, each as determined by the Debtors, in consultation with the Consultation Parties.

g.  No/Insufficient Qualified Bids.  If the Debtors (i) do not receive any Qualified Bids, or (ii) do not receive Qualified Bids for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, or such other lower threshold as agreed to by Rabo Ag, the Auction shall be cancelled, and the Debtors shall report the same to the Court.

h.  One Qualified Bid.  If the Debtors only receive one Qualified Bid and it is for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, the Debtors may, after consultation with advisors for the Consultation Parties, promptly proceed to seek entry of the appropriate order approving the transaction with such bidder. In addition, if only one Qualified Bid is received and it is for at least twenty percent (20.0%), determined on the basis of Gross Acreage, of the Property, the Debtors reserve the right to request, in consultation with advisors for the Consultation Parties, that the Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

i.  Auction Process.  If the Debtors receive more than one Qualified Bid that, when aggregating all Qualified Bids, is for at least twenty percent (20.0%), determined on the basis of Gross Acreage, of the Property, or such other lower threshold as agreed to by Rabo Ag, the Debtors will conduct an auction or auctions (the "Auction") for the Property, which shall be transcribed or recorded on video, at **11:00 a.m. (Pacific time) on May 30, 2024** (the "Auction Date"), at the offices of Keller Benvenutti Kim LLP, located at 425 Market Street, 26th Floor, San Francisco, California 94105, or such other location, including by virtual meeting, as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties.  The Auction shall run in accordance with the following procedures:

(i)     The Debtors, the Consultation Parties, and any Qualified Bidder that has timely submitted a Qualified Bid, and each of their respective advisors, shall be permitted to attend the Auction, in person or by virtual meeting, whichever is appropriate at that time.

(ii)    Only Qualified Bidders who timely submitted Qualified Bids will be entitled to make any subsequent Bids at the Auction.

(iii)   If the Qualified Bid of a Qualified Bidder relates only to a portion of the Property, the Debtors will have discretion, in consultation with the Consultation Parties, to consider whether to permit such Qualified Bidder to make subsequent Bids at the Auction for other or more portions of the Property than those that were in the Qualified Bidder's original Qualified Bid.

(iv)    The Debtors reserve the right, in consultation with the Consultation Parties, to conduct one or more Auctions for the Property as a whole, or in lots comprised of portions of the Property.

(v)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale transactions.

(vi)    At least two (2) days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction; provided that in the event a Qualified Bidder elects not to participate in the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the Court's approval of the selection of the Successful Bidder and Back-Up Bidder, or, (ii) if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, the earlier of (x) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (y) 45 days after the Sale Hearing. At least one (1) day prior to the Auction, the Debtors will provide to all Qualified Bidders who have timely submitted a Qualified Bid and timely informed the Debtors that they intend to participate in the Auction a copy of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in their reasonable business judgment, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid"), along with the starting minimum bid increments for each lot to be offered for sale at Auction (the "Starting Bid Notice"). The starting and subsequent minimum bid increments shall be determined by the Debtors in consultation with the Consultation Parties.

(vii)   All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction, and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to participate in the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(viii)  The Debtors, after consultation with the Consultation Parties and each of their respective advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids or requiring that Subsequent Bids be the

Qualified Bidders' final and best bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bid Procedures, the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"), the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each participating Qualified Bidder at the Auction.

(ix) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"), and (ii) the Debtors determine, in consultation with their advisors and the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estates over the Starting Bid or the Leading Bid, as the case may be, of at least the bid increment(s) for the lot(s) bid on as set forth in the Starting Bid Notice, provided that the Debtors shall retain the right, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, to modify the increment requirements at any time at or prior to the Auction after informing each participating Qualified Bidder. After the first round of bidding and between each subsequent round of bidding, the Debtors and the Consultation Parties shall announce the bid or combination of bids (and the value of such bid(s)) that they believe, in consultation with each of their respective advisors to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(x) For the avoidance of doubt, Rabo Ag will be permitted to credit bid up to the full amount of the Rabo Ag Debt at the Auction, subject to the Committee's right to challenge the nature, extent, validity, priority, perfection, or amount of the Rabo Ag Debt, and subject to § 363(k) of the Bankruptcy Code. (As used herein, the term "Rabo Ag Debt" shall mean and refer to all amounts due under that certain Superpriority Secured Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") together with all amounts due to any obligee in connection with the Prepetition Loans, as that term is defined in the DIP Credit Agreement.)

(xi) Each Bid made at the Auction shall be irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if a Bid is selected as the Successful Bid or the Back-Up Bid (as defined below), it shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) 45 days after the Sale Hearing.

j. Reservation of Rights. Except as otherwise provided in the Bid Procedures or the Bid Procedures Order, the Debtors, after consultation with their advisors and the Consultation Parties: (i) may determine after each round of bidding at the Auction which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (ii) may reject, at any time, any Bid that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and stakeholders; (iii) except as otherwise specifically set forth herein, may modify the Bid Procedures or impose, at or

prior to the Auction, additional customary terms and conditions on the Sale of the Property; (iv) may extend the deadlines set forth herein, including, without limitation, the Bid Deadline; and (v) may continue or cancel the Auction or Sale Hearing in open court without further notice.

k. <u>Selection of Successful Bid</u>. Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties and their respective advisors, will (i) review each Qualified Bid and evaluate each Qualified Bid as set forth in the section titled "Evaluation of Competing Bids" herein, (ii) identify the highest or otherwise best offer or offers for the Property or portions thereof received at the Auction (one or more such Bids, collectively the "<u>Successful Bid</u>" and the bidder(s) making such Bid, collectively, the "<u>Successful Bidder</u>"), and (iii) communicate to the Qualified Bidders the identity of the Successful Bidder, the Back-Up Bidder, if any, and the details of the Successful Bid and Back-Up Bid, if any. Within one (1) business day of the conclusion of the Auction, the Debtors will serve written notice of the results of the Auction to all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to receive notices related to the sale process. The determination of the Successful Bid and Back-Up Bid by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction, shall be final, subject to approval by the Court. The Debtors' selection of and presentation to the Court of the Successful Bid and, if applicable, the Back-Up Bid will not constitute the Debtors' acceptance of either of such Bids, which acceptance will only occur upon the approval of such bids by the Court at the Sale Hearing.

l. <u>Sale Hearing</u>. The Debtors will seek entry of the Sale Order from the Court at the Sale Hearing to begin on or before June 14, 2024, (or at another date and time convenient to the Court) to, among other things, approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures. The Debtors reserve the right, in consultation with the Consultation Parties, to seek to continue or reschedule the Sale Hearing to a later date.

   (i) If the Debtors receive one or more additional Qualified Bid(s), then, at the Sale Hearing, the Debtors will seek approval of the Successful Bid, and, at the Debtors' election, the next highest or otherwise best Qualified Bid (the "<u>Back-Up Bid</u>" and, such bidder, the "<u>Back-Up Bidder</u>").

   (ii) The Debtors will sell the Property or portions thereof to the applicable Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Back-Up Bidder) upon the approval of such Successful Bid (or Back-Up Bid if applicable) by the Court at the Sale Hearing.

   (iii) The Debtors may, after consultation with the Consultation Parties, seek authorization to pay the broker(s) of the Successful Bidder(s) (the "<u>Successful Bidder's Broker</u>") a commission not to exceed one-and-a-half percent (1.5%) of the final Cash Consideration paid by the Successful Bidder(s) (the "<u>Commission</u>") upon the closing of the Sale to the Successful Bidder(s). The Debtors will pay the Commission from the proceeds of the Sale. Any proposed Commission must be disclosed by a Qualified Bidder in its Qualified Bid prior to the Bid Deadline.

m. <u>Closing with Back-Up Bidders</u>. Following Court approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Back-Up Bidder will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid of such Back-Up Bidder without further order of the Court. The Back-Up Bid shall

remain open until the earlier of (i) the forty-fifth (45th) calendar day following the conclusion of the Auction or (ii) the consummation of the Sale to the Successful Bidder (the "Back-Up Bid Expiration Date"). Any provision in the Back-Up Bid conditioning such bid on a closing prior to the Back-Up Bid Expiration Date shall be void. All the Qualified Bids other than the Successful Bid and the Back-Up Bid shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and the Back-Up Bid by the Court.

n.  Failure to Close.  If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall:  (i) solely to the extent provided for in the applicable purchase agreement, retain the Successful Bidder's Deposit; (ii) solely to the extent provided for in the applicable purchase agreement, maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the Back-Up Bid, without the need for an additional hearing or Order of the Court.

o.  Deposits.  The Deposit of any Back-Up Bidder shall be retained by the Debtors until the Back-Up Bid Expiration Date and returned to the Back-Up Bidder within five (5) Business Days thereafter or, if the Back-Up Bid becomes the Successful Bid, shall be applied to the Purchase Price to be paid by the Back-Up Bidder in accordance with the terms of the Back-Up Bid.  The Deposits of Qualified Bidders not selected as either the Successful Bidder or Back-Up Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Back-Up Bidder.  The Deposit of the Successful Bidder will be dealt with in accordance with the terms of the Successful Bid.

**Exhibit 2**

**(Sale Notice)**

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and
Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re:<br><br>TRINITAS ADVANTAGED<br>AGRICULTURE PARTNERS IV, LP *et al.*,[1]<br><br>Debtors. | Case No. 24-50211 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**NOTICE OF SALE PROCEDURES,<br>AUCTION DATE, AND SALE<br>HEARING**<br><br>Date: June 14, 2024<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **Tele/Videoconference<br>Appearances Only**<br>United States Bankruptcy Court<br>450 Golden Gate Avenue<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

---

[1] The last four digits of Trinitas Advantaged Agriculture Partners IV, LP's tax identification number are 3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/trinitas. The Debtors' service address is 2055 Woodside Road, Suite 195, Redwood City, CA 94061.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**PLEASE TAKE NOTICE** that on March 29, 2024, the Debtors filed the *Debtors' Motion for Orders (I)(A) Authorizing and Approving Bid Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, (C) Approving the Notice Procedures, (D) Authorizing Entry into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing ad Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, if Applicable* [Docket No. •] (the "Sale Motion").  The Debtors seek, among other things, to sell all, substantially all, or a portion of their property (the "Property") at an auction free and clear of all liens, claims, encumbrances and other interests, and to assume and assign certain leases and executory contracts in connection therewith, pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that on [DATE], the Bankruptcy Court entered an Order [Docket No. •] approving, among other things, the Bid Procedures set forth in Exhibit 1 thereto (the "Bid Procedures Order").[2]  The Bid Procedures Order set the key dates and times related to the Sale of the Property.  All interested bidders should carefully read the Bid Procedures Order and the Bid Procedures.  To the extent that there are any inconsistencies between the Bid Procedures Order (including the Bid Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, an auction (the "Auction") to sell the Property, which shall be transcribed or recorded on video, shall take place at **11:00 a.m. (Pacific time) on May 30, 2024**, at the offices of Keller Benvenutti Kim LLP, located at 425 Market Street, 26th Floor, San Francisco, California 94105, or such other location, including by virtual meeting, as shall be timely communicated to all entities entitled to attend the Auction under the Bid Procedures, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties.

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to continue to receive notices related to the sale process must provide their email address to Keller Benvenutti Kim LLP, Attn: Colin Mitsuoka, by e-mailing cmitsuoka@kbkllp.com by **4:00 p.m.** (prevailing Pacific time) on **May 17, 2024**.

**PLEASE TAKE FURTHER NOTICE** that, within one (1) business day after the conclusion of the Auction, the Debtors will serve notice of the results of the Auction to all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to continue to receive notices related to the sale process, which notice will be made available at the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/trinitas.

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks entry of an order (the "Sale Order") that is expected to provide, among other things, that any Successful Bidder will have no responsibility for, and the Property will be sold free and clear of, any successor liability, including the following:  (a) any liability or other obligation of the Debtors' estates or related to the Property other than as expressly set forth in the Sale Order; or (b) any claims against the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

Debtors, their estates, or any of their predecessors or affiliates. Except as expressly provided in any Sale Order, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' estates' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, joint employer, de facto merger or substantial continuity, whether known or unknown as of the closing date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the closing date, including, but not limited to, liabilities under any collective bargaining agreement or on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Property prior to the closing of the Sale.

PLEASE TAKE FURTHER NOTICE that a hearing will be held to approve the Sale of the Property to the Successful Bidder (the "Sale Hearing") before the Honorable Dennis Montali, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), **on June 14, 2024, at 10:00 a.m. (prevailing Pacific Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. Pursuant to the *Procedures for Noticing and Conducting Hearings in the San Francisco Division of the United States Bankruptcy Court for the Northern District of California (effective September 1, 2023)*, **the hearing shall be conducted by video or teleconference, and the Courtroom will be closed.** The Bankruptcy Court's website provides information regarding how to arrange an appearance at a video or telephonic hearing. If you have questions about how to participate in a video or telephonic hearing, you may contact the court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website at www.canb.uscourts.gov. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that objections to the Sale (other than objections to the assumption and assignment of Purchased Contracts, which are subject to other procedures set forth in the Bid Procedures Order) shall be filed with the Bankruptcy Court and served **so as to be received on or before 4:00 p.m. (prevailing Pacific Time) on June 7, 2024,** (the "Sale Objection Deadline") by: (a) Debtors' counsel, Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., 425 Market Street, 26th Floor, San Francisco, California, 94105, jkim@kbkllp.com, jrichards@kbkllp.com; (b) counsel to the Administrative Agent, Fennemore Dowling Aaron, 8080 N. Palm Avenue, 3rd Floor, Fresno, California, 93711 (Attn. J. Jackson Waste (jwaste@fennemorelaw.com), Don J. Pool (dpool@fennemorelaw.com), Jerome A. Grossman (jgrossman@fennemorelaw.com), and Anthony A. Austin (aaustin@fennemorelaw.com); (c) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, California, 94102, Attn: Trevor Fehr (Trevor.Fehr@usdoj.gov) and Paul Leahy (Paul.Leahy@usdoj.gov); and (d) counsel to the Creditors' Committee, (i) Raines Feldman Littrell LLP, 3200 Park Center Drive, Suite 250, Costa Mesa, California, 92626 (Attn. Robert S. Marticello (rmarticello@raineslaw.com)), (ii) Raines Feldman Littrell LLP, 30 North LaSalle Street, Suite 3100, Chicago, Illinois, 60602 (Attn. Mark S. Melickian (mmelickian@raineslaw.com)), and (iii) Husch Blackwell LLP, 120 South Riverside Plaza, Suite 2200, Chicago, Illinois, 60606 (Attn. Michael A. Brandess

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(Michael.brandess@huschblackwell.com)).

**PLEASE TAKE FURTHER NOTICE** that counterparties to contracts that may be assumed and assigned will receive a separate notice regarding cure amounts and adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE PURCHASE AND SALE AGREEMENT(S) WITH THE SUCCESSFUL BIDDER(S).**

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale Procedures, Auction Date, and Sale Hearing is subject to the full terms and conditions of the Motion, Bid Procedures Order, and Bid Procedures, which Bid Procedures Order shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Any party that has not received a copy of the Motion or the Bid Procedures Order that wishes to obtain a copy of the Motion or the Bid Procedures Order, including all exhibits thereto, may obtain such documents from the Debtors' notice and claims agent, Donlin, Recano & Company, Inc. at the following web address: https://www.donlinrecano.com/trinitas, or by calling the restructuring information center at 1 (800) 780-7386 (toll free) for U.S. and Canada-based parties or 1 (212) 771-1128 for International parties, or by submitting an inquiry via e-mail to tfinfo@drc.equiniti.com.

**PLEASE TAKE FURTHER NOTICE** that copies of the pleadings in these Chapter 11 Cases can be viewed and/or obtained by: (i) accessing the Court's website at http://www.canb.uscourts.gov, (ii) contacting the Office of the Clerk of the Court at 450 Golden Gate Avenue., 5th Floor, San Francisco, California 94102, or (iii) from the Debtors' notice and claims agent as indicated above. Note that a PACER password is needed to access documents on the Court's website.

Dated:  [DATE]                                   **KELLER BENVENUTTI KIM LLP**

By: */s/ DRAFT*
            Jane Kim

*Attorneys for Debtors and Debtors in Possession*

**Exhibit 3**

**(Cure Notice)**

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>TRINITAS ADVANGED<br>AGRICULTURE PARTNERS IV, LP *et al.*,[1]<br><br>               Debtors. | Case No. 24-50211 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS THAT MAY BE ASSUMED AND ASSIGNED**<br><br>Date:    June 14, 2024<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  **Tele/Videoconference<br>       Appearances Only**<br>       United States Bankruptcy Court<br>       450 Golden Gate Avenue<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

---

[1] The last four digits of Trinitas Advanced Agriculture Partners IV, LP's tax identification number are 3730. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/trinitas. The Debtors' service address is 2055 Woodside Road, Suite 195, Redwood City, CA 94061.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**PLEASE TAKE NOTICE** that on March 29, 2024, the Debtors filed the *Debtors' Motion for Orders (I)(A) Authorizing and Approving Bid Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, (C) Approving the Notice Procedures, (D) Authorizing Entry into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing ad Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, if Applicable* [Docket No. •] (the "Sale Motion"). The Debtors seek, among other things, to sell all, substantially all, or a portion of their property (the "Property") at an auction free and clear of all liens, claims, encumbrances and other interests, and to assume and assign certain leases and executory contracts in connection therewith, pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that on [DATE], the Bankruptcy Court entered an Order [Docket No. •] approving, among other things, the Bid Procedures set forth therein (the "Bid Procedures Order").[2] The Bid Procedures Order set the key dates and times related to the Sale of the Property.

**PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval of the sale (the "Sale") of the Property to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to Section 363 of the Bankruptcy Code, including the assumption by the Debtors and assignment to the Successful Bidder of certain executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code (the "Purchased Contracts").

**PLEASE TAKE FURTHER NOTICE** that, within one (1) business day after the conclusion of the Auction, the Debtors will serve notice of the results of the Auction to all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to continue to receive notices related to the sale process, which notice will be made available at the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/trinitas. Any counterparty that wishes to receive such notice by email, must provide their email address to Keller Benvenutti Kim LLP, Attn: Colin Mitsuoka, by e-mailing cmitsuoka@kbkllp.com by **4:00 p.m.** (prevailing Pacific time) on **May 29, 2024**.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bid Procedures Order, the Debtors may seek to assume an executory contract or unexpired lease to which you may be a party. The Potential Purchased Contract(s)[3] are described on Exhibit A attached to this Notice. The amount shown on Exhibit A hereto as the "Cure Amount" is the amount, if any, which the Debtors assert is owed to cure any defaults existing under the Potential Purchased Contract.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

[3] "Potential Purchased Contracts" are those contracts and unexpired leases that the Debtors have designated as those that a purchaser of the Property may wish to have assumed and assigned to it. The Successful Bidder, however, may choose to exclude certain of the Debtors' contracts or unexpired leases from the list of Potential Purchased Contracts as part of their Qualifying Bid or until Closing, causing such contracts and unexpired leases not to be assumed or assigned by the Debtors.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Potential Purchased Contract(s) on <u>Exhibit A</u> to which you are a party, you must file, in writing with the Bankruptcy Court, an objection on or before **<u>May 23, 2024, at 4:00 p.m. (prevailing Pacific Time)</u>** and serve your objection on the Objection Notice Parties listed below so as to be received no later than such time. Any objection must set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Cure Notice, and set forth, with specificity, any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder. If a contract or lease is assumed and assigned pursuant to a Court order approving same, then unless you properly and timely file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount set forth herein, if any. Any counterparty to a Potential Purchased Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached <u>Exhibit A</u> for that Purchased Contract.

**PLEASE TAKE FURTHER NOTICE** that if you have any other objection to the Debtors' assumption and assignment of the Potential Purchased Contract to which you are a party, you also must file that objection in writing with the Bankruptcy Court no later than **<u>May 23, 2024, at 4:00 p.m. (prevailing Pacific Time)</u>** and serve your objection on the Objection Notice Parties listed below so as to be received no later than such time, <u>provided</u>, <u>however</u>, that any counterparty to a Potential Purchased Contract may raise an objection to the assumption and assignment of the Potential Purchased Contract solely with respect to such Successful Bidder's ability to provide adequate assurance of future performance under the Potential Purchased Contract at the Sale Hearing. Any counterparty to a Potential Purchased Contract who receives a Cure Notice and wishes to receive evidence of the Qualified Bidders' ability to provide adequate assurance of future performance under section 365 of the Bankruptcy Code may make such a request in writing (an "<u>Adequate Assurance Notice Request</u>") to Keller Benvenutti Kim LLP, Attn: Colin Mitsuoka, 425 Market Street, 24th Floor, San Francisco, California, 94105, or by e-mailing cmitsuoka@kbkllp.com **so as to be received by 4:00 p.m. (prevailing Pacific time) on May 16, 2024**. By no later than May 30, 2024, the Debtors shall send, by e-mail, the evidence submitted by the Qualified Bidders in their Qualified Bids of their ability to provide adequate assurance of future performance to any counterparty that has submitted a timely Adequate Assurance Notice Request.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file with the Bankruptcy Court to the Debtors' assumption and assignment of a Potential Purchased Contract, including to the Cure Amount, if any (an "<u>Assumption Objection</u>"), must be served so as to be received by the following parties by the applicable objection deadline (collectively, the "<u>Objection Notice Parties</u>"): (1) Debtors' counsel, Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., 425 Market Street, 26th Floor, San Francisco, California, 94105, jkim@kbkllp.com, jrichards@kbkllp.com; (2) counsel to Rabo Ag, Fennemore Dowling Aaron, 8080 N. Palm Avenue, 3rd Floor, Fresno, California, 93711 (Attn. J. Jackson Waste (jwaste@fennemorelaw.com), Don J. Pool (dpool@fennemorelaw.com), Jerome A. Grossman (jgrossman@fennemorelaw.com), and Anthony A. Austin (aaustin@fennemorelaw.com); (3) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, California, 94102, Attn: Trevor Fehr (Trevor.Fehr@usdoj.gov) and Paul Leahy (Paul.Leahy@usdoj.gov); and (4) counsel to the Creditors' Committee, (i) Raines Feldman Littrell LLP, 3200 Park Center Drive, Suite 250, Costa Mesa, California, 92626 (Attn. Robert S.

Marticello (rmarticello@raineslaw.com)), (ii) Raines Feldman Littrell LLP, 30 North LaSalle Street, Suite 3100, Chicago, Illinois, 60602 (Attn. Mark S. Melickian (mmelickian@raineslaw.com)), and (iii) Husch Blackwell LLP, 120 South Riverside Plaza, Suite 2200, Chicago, Illinois 60606 (Attn. Michael A. Brandess (Michael.brandess@huschblackwell.com)).

        **PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing (the "Sale Hearing") to approve the Sale and authorize the assumption and assignment of the Contracts will be held **on June 14, 2024, at 10:00 a.m. (prevailing Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). Pursuant to the *Procedures for Noticing and Conducting Hearings in the San Francisco Division of the United States Bankruptcy Court for the Northern District of California (effective September 1, 2023)*, **the hearing shall be conducted by video or teleconference, and the Courtroom will be closed.** The Bankruptcy Court's website provides information regarding how to arrange an appearance at a video or telephonic hearing. If you have questions about how to participate in a video or telephonic hearing, you may contact the court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website at www.canb.uscourts.gov. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

        **PLEASE TAKE FURTHER NOTICE** that the Successful Bidder(s) shall be responsible for paying the Cure Amount of any Purchased Contract that is assumed and assigned and for satisfying any requirements regarding adequate assurance of future performance that may be imposed under Sections 365(b) and (f) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in connection with the proposed assignment of any Purchased Contract. The Court shall make its determinations concerning adequate assurance of future performance under the Purchased Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Sale Hearing.

        **PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors and the counterparty cannot resolve an Assumption Objection, and the Court does not otherwise make a determination at the Sale Hearing regarding an Assumption Objection, such Purchased Contract will not be assumed and assigned until after the Court has made its determination with respect to the Assumption Objection.

        **PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in the Purchase Agreement with the Successful Bidder(s), pursuant to Section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Purchased Contracts.

        **PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtors or the Successful Bidder(s) to assume any Potential Purchased Contracts or Purchased Contracts or to pay any Cure Amount.

        **PLEASE TAKE FURTHER NOTICE** that any party that has not received a copy of the Motion or the Bid Procedures Order that wishes to obtain a copy of the Motion or the Bid Procedures Order, including all exhibits thereto, may obtain such documents from the Debtors' notice and claims agent, Donlin, Recano & Company, Inc. at the following web address:

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

https://www.donlinrecano.com/trinitas, or by calling the restructuring information center at 1 (800) 780-7386 (toll free) for U.S. and Canada-based parties or 1 (212) 771-1128 for International parties, or by submitting an inquiry via e-mail to tfinfo@drc.equiniti.com.

**PLEASE TAKE FURTHER NOTICE** THAT IF YOU DO NOT TIMELY FILE AND SERVE AN ASSUMPTION OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

ANY COUNTERPARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY ASSUMPTION OBJECTION TO THE CURE AMOUNT FOR SUCH PURCHASED CONTRACT AND/OR TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF SUCH PURCHASED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT, IF ANY, AND TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF THE PURCHASED CONTRACT TO THE SUCCESSFUL BIDDER.

Dated:  [DATE]                                    **KELLER BENVENUTTI KIM LLP**

By: */s/ DRAFT*
                  Jane Kim

*Attorneys for Debtors and Debtors in Possession*