# IN RE TRINITAS ADVANTAGED AGRICULTURAL PARTNERS IV, LP, *ET AL.*

# LEAD CASE NO. 24-50211 (DM)

## GENERAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

On February 19, 2024 (the "Petition Date"), Trinitas Advantaged Agriculture Partners IV, LP, Trinitas Farming, LLC, Dixon East LLC; Turf Ranch LLC; Rasmussen LLC; Johl LLC; Chiala LLC; Hall Ranch LLC; Dinuba Ranch, LLC; Porterville LLC; Tule River Ranch, LLC; Jeffrey Ranch, LLC; Toor Ranch, LLC; Lamb Ranch, LLC; Fry Road, LLC; Adobe Ranch, LLC; Marcucci Ranch, LLC; Ratto Ranch, LLC; and Phelps Ranch, LLC, as debtors and debtors in possession (collectively, the "Debtors"), each commenced a case (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). The Debtors are authorized to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated under case number 24-50211 (DM) for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## OVERVIEW OF GENERAL NOTES

Each of the Debtors has herewith filed separate Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). These *General Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedules and Statements* (the "General Notes") relate to each of the Debtors' Schedules and Statements and set forth the basis upon which the Schedules and Statements are presented. **These General Notes pertain to, are incorporated by reference in, and comprise an integral part of the Schedules and Statements and should be referred to and considered in connection with any review of the Schedules and Statements**. The General Notes are in addition to any specific notes contained in any Debtor's Schedules or Statements. The General Notes are presented for each individual Debtor, however, each provision contained in the General Notes may not apply to all Debtors. Disclosure of information in one Schedule or Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule or Statement, exhibit, or continuation sheet. Nothing contained in the Schedules and Statements shall constitute a waiver of any rights or claims of the Debtors against any third party, or in or with respect to any aspect of these Chapter 11 Cases.

**The Schedules, Statements, and General Notes should not be relied upon by any person for information relating to the current or future financial conditions, events, or performance of any of the Debtors.**

The Schedules and Statements have been prepared, pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, by the Debtors' management with the assistance of their advisors and other professionals. The Schedules and Statements contain unaudited information, which is subject to further review and potential adjustment. Reasonable efforts have been made to provide

accurate and complete information herein based upon information that was available at the time of preparation; however, subsequent information or discovery thereof may result in material changes to the Schedules and Statements and inadvertent errors or omissions may exist. Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtors' rights with respect to the Chapter 11 Cases, including with respect to any issues involving substantive consolidation, recharacterization, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Debtors reserve all rights to amend, modify, or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability or classification, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the Schedules and Statements shall constitute an admission of any claims or a waiver of any of the Debtors' rights with respect to the Chapter 11 Cases, including with respect to any issues involving causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Schedules and Statements for each Debtor have been signed by Kirk Hoiberg, Principal of each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Hoiberg necessarily relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors and other professionals. Mr. Hoiberg has not (and could not have) personally verified the accuracy of each such statement and representation, including, without limitation, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

**Trinitas Advantaged Agriculture Partners IV, LP, et al.: Schedules and Statements General Notes**

1. <u>Net Book Value of Assets.</u> The Debtors do not have current market valuations for all of their assets. Accordingly, unless otherwise indicated herein, assets in the Schedules and Statements reflect net book values as of the end of the day on February 29, 2024, which the Debtor believes is a reasonable estimate for the Net Book Value of Assets as of the Petition Date. Net book values may vary, sometimes materially, from market values. Certain other assets may be listed as "unknown" amounts. Additionally, amounts ultimately realized may differ materially from net book value (or whatever value was ascribed). Certain depreciable assets with a net book value of

zero ($0) or less may also be included for completeness with an "unknown" value. The Debtors have not performed an analysis of impairment of fixed assets, goodwill, or other intangibles. The Debtors do not intend to amend these Schedules and Statements to reflect actual values.

2. Basis of Presentation. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements do not purport to represent financial statements prepared in accordance with United States Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile with the financial statements of each Debtor.

3. Amendment. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements. Despite these efforts, inadvertent errors or omissions may exist. The Debtors reserve all rights to, but are not required to, amend or supplement, or both, the Schedules and Statements from time to time as is necessary and appropriate.

4. Recharacterization. The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate assets, liabilities, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, due to the complexity and size of the Debtors' business and operations, the Debtors may have improperly characterized, classified, categorized, or designated certain items. The Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements as necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

5. Confidentiality. There may be instances in the Schedules and Statements where the Debtors have deemed it necessary and appropriate to redact or withhold from the public record information such as names, addresses, or amounts. Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of an individual.

6. Cash Management System. The Debtors use a consolidated cash management system through which the Debtors collect substantially all receipts and pay liabilities and expenses. As a result, certain payments in the Schedules and Statements may have been made prepetition by one entity on behalf of another entity through the operation of the consolidated cash management system. The Debtors' prepetition cash management system is described in the *Motion of the Debtors Pursuant to 11 U.S.C §§ 105, 363, and 503(B) for Interim and Final Orders (I) Approving Continued Use of the Debtors' Cash Management System, Bank Accounts, and Business Forms; (II) Authorizing the Debtors to Open and Close Bank Accounts; and (III) Authorizing Banks to Honor Certain Prepetition Transfers* (the "Cash Management Motion") dated February 19, 2024 [Docket No. 10].

7. Currency. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

8. Liabilities. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on information and research that was conducted or available in

connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as they deem necessary or appropriate.

The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

9. Property and Equipment. Unless otherwise indicated, owned property and equipment are presented at net book value.

10. Executory Contracts and Unexpired Leases. The listing of a contract or lease in the Schedules shall not be deemed an admission that such contract is an executory contract or unexpired lease, or that it is necessarily a binding, valid, and enforceable agreement. The Debtors hereby expressly reserve the right to assert that any contract or lease listed on the Debtors' Schedules does not constitute an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.

11. Leases. The Debtors may lease real property, furniture, fixtures, and equipment from certain third-party lessors. Such leases are presented in the Schedules and Statements, subject to the reservation of rights set forth herein. The Debtors have not included in the Schedules and Statements the future obligations of any leases. Nothing herein or in the Schedules or Statements shall be construed as a concession, admission, or evidence as to the determination of the legal status of any leases (including whether any lease is a true lease or a financing agreement) identified in the Schedules or Statements, including whether such leases: (i) constitute an executory contract within the meaning of section 365 of the Bankruptcy Code or other applicable law; or (ii) have not expired or been terminated or otherwise are not current in full force and effect, and the Debtors reserve all of their rights.

12. Causes of Action. Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any claims, causes of action or avoidance actions they may have, and neither these General Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or avoidance actions or in any way prejudice or impair the assertion of such claims.

13. Taxes. Claims listed on the Debtors' Schedule E/F include claims owing to various taxing authorities to which the Debtors may potentially be liable. However, certain of such claims may be subject to ongoing audits and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the claims listed on Schedule E/F. Therefore, the Debtors have listed

estimated claim amounts, where possible, or alternatively listed such claims as unknown in amount and marked the claims as unliquidated, pending final resolution of ongoing audits or other outstanding issues. The Debtors reserve their rights to dispute or challenge whether such claims are entitled to priority.

14. Unknown Amounts. Claim amounts that could not readily be quantified by the Debtors are scheduled as "unknown." These may include claims for prepetition services for which the Debtors have not yet received invoices. The description of an amount as "unknown" is not intended to reflect upon the materiality of the amount.

17. Insiders. The listing of an individual as an insider is not intended to be and should not be construed as a legal characterization of that person as an insider and does not act as an admission of any fact, claim, right, or defense, and all such rights, claims and defenses are reserved. Further, the Debtors do not take any position concerning (a) the person's influence over the control of the Debtors, (b) the person's management responsibilities and functions, (c) the person's decision-making or corporate authority, or (d) whether the person could successfully argue that he or she is not an insider under applicable law, including federal securities law, or any theories of liability or for any other purpose.

19. Excluded Assets and Liabilities. The Debtors may have excluded from the Schedules certain of the following items, which may be included in their GAAP financial statements: intercompany receivables and payables, investments in subsidiaries, certain accrued liabilities, including, without limitation, accrued salaries, employee benefit accruals, and certain other accruals, capitalized interest, debt acquisition costs, restricted cash, goodwill, financial instruments, certain prepaid and other current assets considered to have no market value, certain contingent assets such as insurance recoveries, and deferred revenues and gains. Other non-material assets and liabilities may also have been excluded. The Debtors have reflected netted intercompany balances as of the end of the day on February 29, 2024, on Schedules A/B and E/F for the relevant debtor.

20. Intercompany Claims. Claims between the Debtors, as reflected in the applicable entities' balance sheet accounts, are not reported. The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as claims, interests, or not allowed at all.

22. Claim Description. Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on these Schedules and Statements on any grounds, including, without limitation, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken. Moreover, the Debtors reserve all of their rights to, but are not required to, amend, supplement, or otherwise modify their Schedules and Statements as necessary and appropriate, including modifying claims descriptions and designations.

23. <u>Debt Representatives.</u> Claims relating to the repayment of principal, interest, and other fees and expenses under agreements governing any syndicated credit facility where the identities of the lenders or other parties in interest are not known with certainty are scheduled listing the administrative agent under the applicable credit facility.

24. <u>Unliquidated Claim Amounts.</u> Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated." To the extent the Debtors are able to ascertain or estimate all or a portion of the claim amounts, they may have listed the known or estimated claim amount and marked the claims as unliquidated, pending final resolution of outstanding issues necessary to determine the total claim amount with certainty.

25. <u>Liabilities.</u> The Debtors have sought to allocate liabilities between prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve their right to, but are not required to, amend the Schedules and Statements as they deem appropriate to reflect this.

26. <u>Guarantees and Other Second Liability Claims.</u> The Debtors have used commercially reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "<u>Guarantees</u>") in their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where Guarantees have been identified, they have been included in the relevant Schedules D, E/F, G, and H for the affected Debtor or Debtors. Guarantees have generally been included in Schedules of the guarantor Debtor as "contingent" unless otherwise specified. While the Debtors have used commercially reasonable efforts to locate and identify Guarantees, it is possible that Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve all of their rights to, but are not required to, amend, supplement, or modify the Schedules if additional Guarantees are identified.

27. <u>Intellectual Property Rights.</u> Exclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have been sold, abandoned, or terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Accordingly, the Debtors reserve all of their rights as to the legal status of all intellectual property rights.

28. <u>Postpetition Agreements.</u> The Debtors have entered into and may continue to enter into certain postpetition agreements with creditors and other counterparties such as landlords and critical vendors with respect to the amounts of prepetition claims or cure amounts. The amounts listed in the Schedules and Statements represent amounts owed as of the Petition Date and are not intended to be a waiver or repudiation of any such postpetition agreement. The Debtors reserve all of their rights to, but are not required to, amend, supplement, or otherwise modify their Schedules and

Statements as necessary and appropriate to reflect such postpetition agreements, including modifying claims descriptions and designations.

29. <u>Totals.</u> All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "unliquidated." If there are unknown or unliquidated amounts, the actual totals may be materially different from the listed totals.

**Specific Disclosures with Respect to the Debtors' Schedules**

30. <u>Schedule A/B – Assets: Real and Personal Property.</u> All values as of the petition date are reported as net book values as of month-end February 29, 2024. Bank account balances are as of the end of the day on February 18, 2024. Details with respect to the Debtors' cash management system and bank accounts are provided in the Cash Management Motion. The net book values of leases do not include leasehold improvements on the subject properties that are scheduled separately. Pumps and wells are included as part of real property value.

Net operating losses are listed on the Schedules as they are recorded in the Debtors' books and records.

31. <u>Schedule D: Creditors Holding Secured Claims.</u> Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Certain claims may be listed on Schedule D as "unliquidated" because the value of the collateral securing such claims is unknown. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including without limitation, any intercompany agreement) related to such creditor's claim. In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the General Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements. Further, certain creditors may appear on both Schedules D, F, and G as certain creditor's claims may be characterized as a secured claim or a true lease. In so scheduling these creditors, the Debtors should not be deemed to have waived any of their rights and remedies as to the characterization of these claims.

32. <u>Schedule E/F: Creditors Who Have Unsecured Claims.</u> Listing a claim on Part 1 of Schedule E/F as priority does not constitute an admission by the Debtors of the claimant's legal rights or a waiver of the Debtors' right to recharacterize or reclassify the claim or contract. The Bankruptcy Court entered a number of first day orders granting authority to pay certain prepetition priority claims. Accordingly, only claims against Debtors for prepetition amounts as of the Petition Date that have not been paid have been included in Part 1 of Schedule E/F. The Debtors reserve

their rights to object to any listed claims on the ground that, among other things, they have already been satisfied.

Part 2 of Schedule E/F does not include certain deferred charges, deferred liabilities, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, they are reflected on the Debtors' books and records as required in accordance with GAAP. The claims listed in Part 2 of Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. While commercially reasonable efforts have been made, determining the date upon which each claim in Part 2 of Schedule E/F was incurred or arose would be, in certain cases, unduly burdensome and cost prohibitive and, therefore, the Debtors have not listed a date for each claim listed on Part 2 of Schedule E/F. Part 2 of Schedule E/F may contain information regarding potential, pending, and closed litigation involving the Debtors. In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined. However, to the extent that litigation involving a particular Debtor has been identified, such information is contained in the Schedule for that Debtor. The inclusion of any litigation in these Schedules and Statements does not constitute an admission by any Debtor of liability, the validity of any action, the availability of insurance coverage, or the amount or treatment of any claims, defenses, counterclaims, or cross-claims or the amount or treatment of any potential claim resulting from any current or future litigation. In addition, certain litigation or claims covered by insurance policies maintained by the Debtors may be excluded from Part 2 of Schedule E/F. The claims of individual creditors are generally listed at the amounts recorded on the Debtors' books and records and may not reflect credits or allowances due from the creditor. The Debtors reserve all of their rights concerning credits or allowances. The Bankruptcy Court entered First Day Orders granting authority to the Debtors to pay certain prepetition obligations in the ordinary course of business. Accordingly, only claims against the Debtors for prepetition amounts that have not been paid as of the Petition Date have been included in Part 2 of Schedule E/F. The Debtors reserve their rights to object to any listed claims on the ground that, among other things, they have already been satisfied. Additionally, Part 2 of Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

33. <u>Schedule G: Executory Contracts and Unexpired Leases.</u> While commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. The contracts, agreements, and leases listed on Schedule G may not have taken effect or be binding on any party and may have expired or been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed therein. Certain of the real property leases and contracts listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth on Schedule G. Nothing herein shall be construed as a concession or evidence that any of the contracts, agreements, or leases identified on Schedule G: (i) constitute an executory contract within the meaning of section 365 of the Bankruptcy Code or

other applicable law; or (ii) have not expired or been terminated or otherwise are not currently in full force and effect. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedule, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument. Certain of these contracts or leases may have been modified, amended, or supplemented by various documents, instruments, or agreements that may not be listed, but are nonetheless incorporated by this reference. Certain executory agreements may not have been memorialized in writing and could be subject to dispute. Schedule G generally does not include stand-alone equipment purchase orders. Schedule G does not include engagement agreements with retained professionals. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Such contracts, agreements, and leases are listed on Schedule G of each such Debtor.

34. <u>Schedule H: Co-Debtors.</u> The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Further, the Debtors believe that certain of the guarantees reflected on Schedule H may have expired or are no longer enforceable. Thus, the Debtors reserve their right to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or are unenforceable. Schedule H is furnished for informational purposes only to apprise parties in interest of co-debtor relationships of the Debtors as of the Petition Date and is derived from documents in the possession of the Debtors. It is not an admission or recognition that any co-debtor liability exists or existed.

**Specific Disclosures with Respect to the Debtors' Statements**

35. <u>Statement 3: Payments or Transfers within 90 Days of the Petition Date.</u> The dates identified in the date of payment column for payments made to creditors for goods or services, and other debts, within 90 days prior to the Petition Date relate to one of the following: (i) the date of a wire transfer; (ii) the date of an ACH payment; or (iii) the issuance date for a check or money order. Although the Debtors have attempted to remove unfunded and rejected payments, there may be items in process; therefore, certain payments reflected in response to Statement 3 may not have been paid, and those amounts may also appear as unsecured non-priority claims in Schedule E/F as amounts owed to the same entities. Credits taken against balances owed to third parties are included in response to Statement 3. Payments or transfers made within the 90 days prior to the Petition Date to non-employee directors and/or insiders are included in response to Statement 4, and not listed in response to Statement 3. Payments or transfers on account of payroll for employees are not included in response to Statement 3. Payments or transfers made within the 90 days before the Petition Date that relate to bankruptcy or restructuring related advice or services are included in response to Statement 11, and not listed in response to Statement 3. Payments or transfers made within the 90 days before the Petition Date to or for the benefit of an insider are also included in response to Statement 4, and in the response to Statement 30. Certain payments made by the Debtor were made through third party payment services, such as bill.com and Expensify. In such instances, the date of payment (as determined above) is the date of payment by the third-party payment agent, not the date the debtor transferred funds to the agent.

36. <u>Statement 4: Payments to or for the Benefit of Insiders.</u> Certain payments made by the Debtor were made through third party payment services, such as bill.com and Expensify. In such instances, the date of payment (as determined above) is the date of payment by the third-party payment agent, not the date the debtor transferred funds to the agent. The response to Statement 4 may also include payments identified in response to Statement 3 and Statement 30. In listing transfers or payments in response to Statement 4, the Debtors are not admitting or conceding that the transferees or beneficiaries are in fact insiders.

37. <u>Statement 6: Setoffs.</u> The Debtors routinely incur setoffs and net payments in the ordinary course of business. Such setoffs and nettings may occur in connection with a variety of ordinary and customary transactions or settlements and are done in accordance with the contractual arrangement or an agreed upon settlement, including, but not limited to, intercompany transactions, pricing discrepancies, refunds, negotiations, and/or other ordinary and customary billing disputes between the Debtors and their customers and/or suppliers. These normal setoffs and net payments are consistent with the ordinary course of business in the Debtors' industry and can be voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and nettings may have been accounted for when scheduling certain amounts, these ordinary course setoffs and nettings are not independently accounted for, and as such, have been excluded from the Statements.

38. <u>Statement 7: Legal Actions, Administrative Proceedings, Court Actions, Executions, Attachments, or Governmental Audits.</u> The Debtors have used reasonable efforts to report all legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the Debtors were involved in any capacity within one year prior to the Petition

Date. Reserves are included in the balance sheet for issues when a material negative outcome is probable and the amount is reasonably estimable.

As of the Petition Date, several matters were in the litigation and dispute resolution process. The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.

39. Statement 10: Certain Losses. The losses listed in response to Statement 10 may exclude those incurred in the ordinary course of business, those where the amount is *de minimis*, or where the loss is less than the amount of the insurance deductible. The property values reported in response to Statement 10 are based on the actual or estimated costs, including labor costs, to repair the property.

40. Statement 11: Payments Related to Bankruptcy. All disbursements listed in response to Statement 11 were initiated and disbursed by each specific Debtor entity but were for the benefit of all Debtors. To the extent any of the firms listed in response to Statement 11 performed both bankruptcy and non-bankruptcy related work, the Debtors have attempted to identify only the payments related to bankruptcy. However, certain payments listed in response to Statement 11 may be for both bankruptcy and non-bankruptcy services.

41. Statement 14: Previous Addresses. The Debtors' former corporate headquarters was located at 1473 East G Street, Suite B, Oakdale, CA 95361.

42. Statement 16: Personally Identifiable Information. To the best of their knowledge, The Debtors do not maintain or store any personally identifiable information, as defined in 11 USC § 101 (41A).

43. Statement 21: Property Held for Another Person. The adequate assurance deposit established pursuant to the *Final Order Pursuant to 11 U.S.C. Sections 105(a) and 366 Establishing Adequate Assurance Procedures with Respect to the Debtors' Utility Providers* [Docket No. 95] has been excluded from the response to Statement 21. The Debtors may temporarily store machinery and equipment belonging to third parties in the ordinary course of its business.

44. Statement 23: Other Transfers. The Debtors have excluded any de minimis asset sales made in the ordinary course of business.

45. Statement 26(d): Financial Statements. In the regular course of business, the Debtors have or may have provided consolidated financial information to banks, customers, landlords, and other various interested parties. While the Debtors have used best efforts in responding to question 26(d), the response may not include all such parties.

46. <u>Statement 28: Parties in Control.</u>  In responding to this question, the Debtors have included any limited partners having an interest in TAAP IV of 20% or more. In doing so, the Debtors are not conceding that any such party does in fact have or exercise any control over any of the Debtors.

47. <u>Statement 30: Payments, Distributions, or Withdrawals Credited or Given to Insiders.</u> Payments, distributions, and withdrawals credited or made to insiders listed in response to this Statement include: (i) transfers and payments to insiders made within 90 days of the Petition Date; and (ii) transfers and payments that benefited any insider made within one year of the Petition Date that would otherwise be included in response to Statement 4.

For purposes of the Schedules and Statements, the Debtors define insiders as (a) officers, directors, and anyone in control of a corporate debtor and their relatives and (b) affiliates of the Debtor and insiders of such affiliates. Individuals listed in the Statements as insiders have been included for informational purposes only. The Debtors do not take any position with respect to (i) such individual's influence over the control of the Debtors, (ii) the management responsibilities or functions of such individual, (iii) the decision-making or corporate authority of such individual, or (iv) whether such individual could successfully argue that he or she is not an insider under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. Thus, the Debtors reserve all rights to dispute whether someone identified is in fact an "insider" as defined in section 101(31) of the Bankruptcy Code. For more information regarding each Debtor's officers and directors, please refer to Statement 28 and Statement 29.

Statement 30 does not include unpaid interest on intercompany loans that accrued during the one-year period prior to the Petition Date, if any.

Amounts still owed to creditors will appear on the Schedules for each of the Debtors, as applicable.