# Exhibit 1

**(Bid Procedures)**

# BID PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities as set forth in the Asset Purchase Agreement (the "Sale").

Trinitas Advantaged Agriculture Partners IV, LP together with certain of its affiliates who are debtors and debtors in possession (collectively, the "Debtors") in the chapter 11 cases proceeding in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Court") under the caption *In re Trinitas Advantaged Agriculture Partners IV, LP, et al.*, Case No. 24-50211 (DM) (the "Chapter 11 Cases"), have established the following procedures (the "Bid Procedures") to govern the sale of all, substantially all, or a portion of the Debtors' portfolio of almond ranches and operations (collectively, the "Property"), subject to Court approval:

a. Provisions Governing Qualifications of Bidders. Unless otherwise ordered by the Court, for cause shown, or as otherwise determined by the Debtors, in order to participate in the bidding process for all or some of the Property, prior to the Bid Deadline (as defined below), each person who wishes to participate in the bidding process for all or some of the Property (a "Potential Bidder") must deliver the following, **by electronic mail** to the Debtors as follows: (i) Trinitas Advantaged Agriculture Partners IV, LP, and the other Debtors, Attn: Ryon Paton, ryon.paton@trinitaspartners.com; (ii) Debtors' counsel: Keller Benvenutti Kim LLP, Attn: Jane Kim, Esq., and Jeremy V. Richards, Esq., jkim@kbkllp.com, jrichards@kbkllp.com; (iii) Debtors' financial advisors: Arch + Beam, Attn: Matthew English and Michael Bloom, menglish@arch-beam.com, mbloom@arch-beam.com; and (iv) Debtors' Broker, Graham & Associates, Attn: Bradley Bickers and Landon Fernandes, brad@gbbadvisors.com, landon@mdgre.com:

   (i) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors;

   (ii) an expression or indication of interest, letter of intent, or offer (all of which may be non-binding and revocable) that demonstrates, to the Debtors' satisfaction, a bona fide interest in purchasing the Property or a portion of the Property from the Debtors, at a price that meets a minimum threshold for such Property, or portion thereof, as indicated by the Debtors (in consultation with the Consultation Parties, as defined below);

   (iii) sufficient information, as determined by the Debtors (in consultation with the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee") and Rabo Agrifinance, LLC ("Rabo Ag," and together with the Creditors' Committee, the "Consultation Parties")), to demonstrate proof of financial wherewithal, including:

   (A) Disclosure of Identity. Fully disclose the identity of each Potential Bidder, including any principal or representative that will be bidding for the Property on behalf of the Potential Bidder or otherwise participating in connection with such bid, and the complete terms of any such participation, as well as any of Debtors' creditors or Insiders (as defined under 11 U.S.C. § 101) associated with the Potential Bidder;

- (B) <u>Proof of Financial Wherewithal</u>. Demonstration (to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties) of sufficient financial wherewithal to be able to close on a purchase of the Property, which may include:

    (1) current audited financial statements and latest unaudited financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Property, current audited financial statements and latest unaudited financial statements of the equity holders of the potential bidder who will guarantee the obligations of the potential bidder;

    (2) current financial bank statements, screenshot(s) of bank account balance(s), a letter from the bank of the potential bidder indicating the availability of the funds;

    (3) written evidence of a firm, irrevocable commitment for financing; and/or

    (4) such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtors and their financial advisors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale; and

  (iv) if the Potential Bidder is represented by a broker, the broker's retention agreement.

  A Potential Bidder that has executed a confidentiality agreement and has otherwise complied with the requirements described above, and that the Debtors determine in their reasonable business judgment, after consultation with their counsel, financial and other advisors, and the Consultation Parties, is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale of the Property (the "<u>Sale</u>"), will be deemed a "<u>Qualified Bidder</u>."

  For the sake of clarity, the fact that a bidder has been deemed a "Qualified Bidder" does <u>not</u>, by itself, entitle such bidder to participate at the Auction. In order to participate in the Auction or any other overbidding process pursuant to these Bid Procedures, a Qualified Bidder must also submit, by the Bid Deadline, a Bid that is determined to be a Qualified Bid, as defined in, and in accordance with, these Bid Procedures.

b. <u>Bid Deadline</u>. A Qualified Bidder that desires to make a Bid (as defined below) will deliver written copies of its Bid **by electronic mail** to the Debtors and Debtors' counsel at the addresses set forth in (a) above, so as to be received not later than **May 17, 2024, at 4:00 p.m. (PT)** (as may be extended as set forth herein, the "<u>Bid Deadline</u>"). As soon as practicable after receipt of a Bid, but in no event more than 24 hours after receipt of a Bid, Debtors' counsel shall provide copies of the Bid and all related documents to counsel for each of the Consultation Parties. The Debtors, in consultation with the Consultation Parties, may extend the Bid Deadline to address any inadequacies in an otherwise sufficient Bid submitted by the Bid Deadline.

c. <u>Provisions Governing Qualified Bids</u>. An offer, solicitation, or proposal (each, a "<u>Bid</u>") that is submitted in writing by a Qualified Bidder and satisfies each of the following

requirements, as determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, shall constitute a "Qualified Bid":

(i) *Property*. Each Bid must state that the applicable Qualified Bidder offers to purchase all or a portion of the Property, upon the terms and conditions substantially as set forth in the form of either the Purchase and Sale Agreement and Joint Escrow Instructions or the Vacant Land Purchase Agreement and Joint Escrow Instructions, and addendum thereto, which will be provided by the Debtors and filed by the Debtors in the Chapter 11 Cases in advance of the hearing on these Bid Procedures (in either case, the "Form Purchase and Sale Agreement"), including without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure, or upon alternative terms and conditions that the Debtors, in consultation with the Consultation Parties, reasonably determine are no less favorable than the terms and conditions of the Form Purchase and Sale Agreement. Each Bid must specifically identify the particular property or properties to which it relates.

(ii) *Purchase Price; Minimum Bid*. Each Bid must clearly set forth the purchase price to be paid (the "Purchase Price") along with (a) the gross acreage of the Property being purchased (the "Gross Acreage"), (b) the purchase price per acre (the "Purchase Price Per Acre"), calculated by dividing the Purchase Price by the Gross Acreage, and (c) the purchase price allocated by ranch, to facilitate bid comparisons by the Debtors, the Consultation Parties, and each of their respective advisors. The Purchase Price shall include: (a) cash in an amount not less than any minimum bid amount previously identified by the Debtors for the Property or relevant portion thereof (the "Cash Consideration"); (b) all amounts that are necessary to cure any defaults owed under any contract or unexpired lease that the Qualified Bidder identifies in the Bid for assumption and assignment (the "Cure Amounts"); (c) estimated Cultural Costs (as defined in the Form Purchase and Sale Agreement to be paid at closing (with such actual accrued Cultural Costs with respect to the 2024 crops to be measured until the date of closing, unless Buyer identifies a different date for such measurement), in accordance with the "Cultural Cost Budget" shared by the Debtors in the data room maintained by the Debtors and their professionals; and (d) all other estimated prorations and other expenses to be paid by Buyer at closing. The Debtors reserve the right to set and/or adjust any minimum bid amounts with respect to the Property and any portion thereof at any time within their discretion (in consultation with the Consultation Parties) in order to maximize the value of the Assets.

(iii) *Closing Date*. Each Bid must require that the Sale close by the date that is fourteen (14) days after the entry of a Sale Order by the Bankruptcy Court, but in no event later than July 1, 2024.

(iv) *Binding and Irrevocable*. Each Bid must be unconditional and irrevocable, subject only to Bankruptcy Court approval, and include a letter, signed by an authorized representative of the Qualified Bidder who has authority to bind the Qualified Bidder, stating that the Qualified Bidder's Bid is irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) (x) with respect to the Successful Bidder only, 45 days after the Sale Hearing, subject to further extensions as may be agreed to

pursuant to the applicable purchase agreement, and (y) with respect to the Back-Up Bidder only, the Back-Up Bid Expiration Date (as defined below).

(v) *Marked Agreement*. Each Bid must include a duly authorized and executed Purchase and Sale Agreement and Joint Escrow Instructions or Vacant Land Purchase Agreement and Joint Escrow Instructions, and addendum thereto, which agreement shall include, among other things, the Purchase Price for the Property expressed in U.S. Dollars, the Gross Acreage to be purchased, the Purchase Price Per Acre, and the purchase price allocated by ranch, and which must be accompanied by all exhibits and schedules thereto, as well as such additional ancillary agreements as may be required by the Qualified Bidder, with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the Form Purchase and Sale Agreement (collectively, a "Marked Agreement"), and the proposed order for approval of the Sale by the Court proposed by the Qualified Bidder ("Proposed Sale Order"). To be deemed a Qualified Bid, a Bid may not contain additional termination rights, covenants, financing or due diligence contingencies, shareholder, board of director or other internal approval contingencies, or closing conditions, other than as may be included in the Form Purchase and Sale Agreement (it being agreed and understood that such Bid shall modify the Form Purchase and Sale Agreement as needed to comply in all respects with the Bid Procedures Order, and will remove provisions that apply only to the stalking horse bidder, if any, such as the Bid Protections).

(vi) *As-Is, Where-Is*. Each Bid must include an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Property prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in the Marked Agreement; and (d) is not entitled to any expense reimbursement or break-up fee in connection with its bid unless expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline.

(vii) *Affirmative Statement*. Each Bid shall be accompanied by an affirmative statement that: (i) the Qualified Bidder submitting such Bid has acted in good faith consistent with section 363(m) of title 11 of the United States Code (the "Bankruptcy Code") and not in any manner prohibited by section 363(n) of the Bankruptcy Code; (ii) the Qualified Bidder submitting such Bid has and will continue to comply with the Bid Procedures and any Order approving the Bid Procedures; and (iii) the Qualified Bidder submitting such Bid waives any substantial contribution (administrative expense) claims under section 503(b) of the Bankruptcy Code related to the bidding for the Debtors' assets or otherwise participating in the Auction, except as expressly agreed to the contrary by the Debtors, in consultation with the Consultation Parties, prior to the Bid Deadline. Notwithstanding such affirmative statement, in order to obtain a good faith finding under section 363(m) of the Bankruptcy Code, a Qualified Bidder must comply with the Bankruptcy Court's Practices and Procedures, paragraph II.G.

(viii) *Authorization*. Each Bid must include evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transactions contemplated by the Marked Agreement and the Sale.

(ix) *Deposit*. Each Bid must be accompanied by a cash deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check, or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to five percent (5.0%) of the Purchase Price, which the Debtors shall hold in trust, to be dealt with as provided for under "Deposits" herein.

(x) *Executory Contracts*. Each Bid must identify with particularity which executory contracts or unexpired leases the Qualified Bidder wishes to assume, include an acknowledgment and representation that the Qualified Bidder will assume the Debtors' obligations under such executory contracts and unexpired leases, including all Cure Amounts, and identify with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing.

(xi) *Adequate Assurance*. Each Bid must include evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future under the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

(xii) *Consent to Jurisdiction*. Each Bid must state that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court.

(xiii) *Additional Information*. Each Bid must contain any other information reasonably requested by the Debtors.

(xiv) *Bid Deadline*. Each Bid must be received by the Bid Deadline.

The Debtors will determine, in their reasonable business judgment, and in consultation with the Consultation Parties, whether to entertain Bids for the Property that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. The Debtors reserve the right, in consultation with the Consultation Parties, to continue to negotiate the terms of any Qualified Bid with the applicable Qualified Bidder after the Bid Deadline and prior to the Auction.

d. Stalking Horse. At any time prior to the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may enter into one or more Purchase and Sale Agreements, subject to higher and better bids, which will serve as the "stalking horse" bid for the Property or portions thereof (each, a "Stalking Horse Agreement"). In the event that the Debtors enter into one or more Stalking Horse Agreements, with respect to which the prospective purchaser is not an insider of the Debtors (such prospective purchaser, a "Stalking Horse Bidder," and such agreement, a "Non-Insider Stalking Horse Agreement"), the Debtors may seek approval at the Sale Hearing of a break-up fee and expense reimbursement of no more than three percent (3%) in the aggregate of the Cash Consideration of such Non-Insider Stalking Horse Agreement (together, the "Bid

Protections"), provided, however, that the Bid Protections are applicable to, and shall be calculated based on, only the Stalking Horse Agreement, and not any Subsequent Bids (as defined below) by the Stalking Horse Bidder. Promptly upon entering into a Stalking Horse Agreement, the Debtors shall notify all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to continue to receive notices related to the sale process, of the Debtors' entry into a Stalking Horse Agreement and provide them with a copy of such Stalking Horse Agreement.

e. Aggregate Bids. The Debtors may, in consultation with the Consultation Parties, aggregate separate bids from unaffiliated persons to create a "Qualified Bid" from a "Qualified Bidder," including at the Auction with respect to bids for separate portions of the Property, to determine the highest or otherwise best Qualified Bid(s); provided that all Qualified Bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

f. Evaluation of Competing Bids. A Qualified Bid, and the determination of the highest or otherwise best Qualified Bid(s), will be valued based upon several factors including, without limitation, items such as the Purchase Price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder) provided by such Bid, the claims likely to be created by such Bid in relation to other Bids, the counterparties to the transactions, the proposed revisions to the relevant transaction documents, the portions of the Property included in such Qualified Bid, the effect of the transactions on the estimated overall value to be received by the Debtors' estates for the Property, the effect of the transactions on the value of the ongoing businesses of the Debtors (including ongoing relationships with partners, customers, and suppliers), other factors affecting the speed, certainty, and value of the transactions (including any regulatory approvals required to close the transactions), the transition services required from the Debtors post-closing and any related restructuring costs, and the likelihood and timing of consummating such transactions, each as determined by the Debtors, in consultation with the Consultation Parties.

g. No/Insufficient Qualified Bids. If the Debtors (i) do not receive any Qualified Bids, or (ii) do not receive Qualified Bids for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, or such other lower threshold as agreed to by Rabo Ag, the Auction shall be cancelled, and the Debtors shall report the same to the Court.

h. One Qualified Bid. If the Debtors only receive one Qualified Bid and it is for at least twenty percent (20%), determined on the basis of Gross Acreage, of the Property, the Debtors may, after consultation with advisors for the Consultation Parties, promptly proceed to seek entry of the appropriate order approving the transaction with such bidder. In addition, if only one Qualified Bid is received and it is for at least twenty percent (20.0%), determined on the basis of Gross Acreage, of the Property, the Debtors reserve the right to request, in consultation with advisors for the Consultation Parties, that the Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

i. Auction Process. If the Debtors receive more than one Qualified Bid that, when aggregating all Qualified Bids, is for at least twenty percent (20.0%), determined on the basis of Gross Acreage, of the Property, or such other lower threshold as agreed to by Rabo Ag, the Debtors will conduct an auction or auctions (the "Auction") for the Property, which shall be transcribed or recorded on video, at **11:00 a.m. (Pacific time) on May 30, 2024** (the "Auction Date"), at the offices of Keller Benvenutti Kim LLP, located at 425 Market Street, 26th Floor, San Francisco, California 94105, or such other location, including by virtual meeting, as shall be timely communicated to all entities entitled to attend the

Auction, which Auction may be cancelled or adjourned by the Debtors, in consultation with the Consultation Parties. The Auction shall run in accordance with the following procedures:

- (i) The Debtors, the Consultation Parties, and any Qualified Bidder that has timely submitted a Qualified Bid, and each of their respective advisors, shall be permitted to attend the Auction, in person or by virtual meeting, whichever is appropriate at that time.

- (ii) Only Qualified Bidders who timely submitted Qualified Bids will be entitled to make any subsequent Bids at the Auction.

- (iii) If the Qualified Bid of a Qualified Bidder relates only to a portion of the Property, the Debtors will have discretion, in consultation with the Consultation Parties, to consider whether to permit such Qualified Bidder to make subsequent Bids at the Auction for other or more portions of the Property than those that were in the Qualified Bidder's original Qualified Bid.

- (iv) The Debtors reserve the right, in consultation with the Consultation Parties, to conduct one or more Auctions for the Property as a whole, or in lots comprised of portions of the Property.

- (v) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale transactions.

- (vi) At least two (2) days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction; provided that in the event a Qualified Bidder elects not to participate in the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the Court's approval of the selection of the Successful Bidder and Back-Up Bidder, or, (ii) if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, the earlier of (x) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (y) 45 days after the Sale Hearing. At least one (1) day prior to the Auction, the Debtors will provide to all Qualified Bidders who have timely submitted a Qualified Bid and timely informed the Debtors that they intend to participate in the Auction a copy of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in their reasonable business judgment, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid"), along with the starting minimum bid increments for each lot to be offered for sale at Auction (the "Starting Bid Notice"), which starting minimum bid increments will be, at minimum, sufficient to pay any Bid Protections applicable to such lot unless there is sufficient reason for the minimum bid increment to be lower. The starting and subsequent minimum bid increments shall be determined by the Debtors in consultation with the Consultation Parties.

- (vii) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction, and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to

participate in the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(viii) The Debtors, after consultation with the Consultation Parties and each of their respective advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids or requiring that Qualified Bidders submit their final and best bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bid Procedures, the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"), the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each participating Qualified Bidder at the Auction.

(ix) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"), and (ii) the Debtors determine, in consultation with their advisors and the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estates over the Starting Bid or the Leading Bid, as the case may be, of at least the bid increment(s) for the lot(s) bid on as set forth in the Starting Bid Notice, provided that the Debtors shall retain the right, in consultation with their counsel, financial advisors, and other advisors, and the Consultation Parties, to modify the increment requirements at any time at or prior to the Auction after informing each participating Qualified Bidder. After the first round of bidding and between each subsequent round of bidding, the Debtors and the Consultation Parties shall announce the bid or combination of bids (and the value of such bid(s)) that they believe, in consultation with each of their respective advisors to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(x) For the avoidance of doubt, Rabo Ag will be permitted to credit bid up to the full amount of the Rabo Ag Debt at the Auction, subject to the Committee's right to challenge the nature, extent, validity, priority, perfection, or amount of the Rabo Ag Debt, and subject to § 363(k) of the Bankruptcy Code. (As used herein, the term "Rabo Ag Debt" shall mean and refer to all amounts due under that certain Superpriority Secured Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") together with all amounts due to any obligee in connection with the Prepetition Loans, as that term is defined in the DIP Credit Agreement.)

(xi) Each Bid made at the Auction shall be irrevocable until the Court approves the selection of the Successful Bidder (as defined below) and the Back-Up Bidder (as defined below), provided that if a Bid is selected as the Successful Bid or the Back-Up Bid (as defined below), it shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) 45 days after the Sale Hearing.

j. Reservation of Rights. Except as otherwise provided in the Bid Procedures or the Bid Procedures Order, the Debtors, after consultation with their advisors and the Consultation

Parties: (i) may determine after each round of bidding at the Auction which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (ii) may reject, at any time, any Bid that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and stakeholders; (iii) except as otherwise specifically set forth herein, may modify the Bid Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Property; (iv) may extend the deadlines set forth herein, including, without limitation, the Bid Deadline; and (v) may continue or cancel the Auction or Sale Hearing in open court without further notice.

k. <u>Selection of Successful Bid</u>. Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties and their respective advisors, will (i) review each Qualified Bid and evaluate each Qualified Bid as set forth in the section titled "Evaluation of Competing Bids" herein, (ii) identify the highest or otherwise best offer or offers for the Property or portions thereof received at the Auction (one or more such Bids, collectively the "<u>Successful Bid</u>" and the bidder(s) making such Bid, collectively, the "<u>Successful Bidder</u>"), and (iii) communicate to the Qualified Bidders the identity of the Successful Bidder, the Back-Up Bidder, if any, and the details of the Successful Bid and Back-Up Bid, if any. Within one (1) business day of the conclusion of the Auction, the Debtors will serve written notice of the results of the Auction to all Qualified Bidders, the Creditors' Committee, Rabo Ag, and all other parties who have timely elected to receive notices related to the sale process. The determination of the Successful Bid and Back-Up Bid by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction, shall be final, subject to approval by the Court. The Debtors' selection of and presentation to the Court of the Successful Bid and, if applicable, the Back-Up Bid will not constitute the Debtors' acceptance of either of such Bids, which acceptance will only occur upon the approval of such bids by the Court at the Sale Hearing.

l. <u>Sale Hearing</u>. The Debtors will seek entry of the Sale Order from the Court at the Sale Hearing to begin on or before June 14, 2024, (or at another date and time convenient to the Court) to, among other things, approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures. The Debtors reserve the right, in consultation with the Consultation Parties, to seek to continue or reschedule the Sale Hearing to a later date.

   (i) If the Debtors receive one or more additional Qualified Bid(s), then, at the Sale Hearing, the Debtors will seek approval of the Successful Bid, and, at the Debtors' election, the next highest or otherwise best Qualified Bid (the "<u>Back-Up Bid</u>" and, such bidder, the "<u>Back-Up Bidder</u>").

   (ii) The Debtors will sell the Property or portions thereof to the applicable Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Back-Up Bidder) upon the approval of such Successful Bid (or Back-Up Bid if applicable) by the Court at the Sale Hearing.

   (iii) The Debtors may, after consultation with the Consultation Parties, seek authorization to pay the broker(s) of the Successful Bidder(s) (the "<u>Successful Bidder's Broker</u>") a commission not to exceed one-and-a-half percent (1.5%) of the final Cash Consideration paid by the Successful Bidder(s) (the "<u>Commission</u>") upon the closing of the Sale to the Successful Bidder(s). The Debtors will pay the Commission from the proceeds of the Sale. Any proposed

Commission must be disclosed by a Qualified Bidder in its Qualified Bid prior to the Bid Deadline.

m. <u>Closing with Back-Up Bidders</u>. Following Court approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Back-Up Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid of such Back-Up Bidder without further order of the Court. The Back-Up Bid shall remain open until the earlier of (i) the forty-fifth (45th) calendar day following the conclusion of the Auction or (ii) the consummation of the Sale to the Successful Bidder (the "<u>Back-Up Bid Expiration Date</u>"). Any provision in the Back-Up Bid conditioning such bid on a closing prior to the Back-Up Bid Expiration Date shall be void. All the Qualified Bids other than the Successful Bid and the Back-Up Bid shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and the Back-Up Bid by the Court.

n. <u>Failure to Close</u>. If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall: (i) solely to the extent provided for in the applicable purchase agreement, retain the Successful Bidder's Deposit; (ii) solely to the extent provided for in the applicable purchase agreement, maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the Back-Up Bid, without the need for an additional hearing or Order of the Court.

o. <u>Deposits</u>. The Deposit of any Back-Up Bidder shall be retained by the Debtors until the Back-Up Bid Expiration Date and returned to the Back-Up Bidder within five (5) Business Days thereafter or, if the Back-Up Bid becomes the Successful Bid, shall be applied to the Purchase Price to be paid by the Back-Up Bidder in accordance with the terms of the Back-Up Bid. The Deposits of Qualified Bidders not selected as either the Successful Bidder or Back-Up Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Back-Up Bidder. The Deposit of the Successful Bidder will be dealt with in accordance with the terms of the Successful Bid.